

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | CASE NO. CR-1-02-054-1 |
| | : | |
| | : | (HONORABLE SUSAN J. DLOTT) |
| vs. | : | |
| | : | |
| **WALTER MEADE PUGH, JR.** | : | **GOVERNMENT'S RESPONSE TO MOTION TO SUPPRESS EVIDENCE** |
| | : | |

- - - - - - - - - - - - - - -

Now comes the United States of America, by and through counsel, Assistant United States Attorney Wende C. Cross, and for its response to defendant's Motion to Suppress evidence obtained in this case, states as follows:

## I. INTRODUCTION

Construed liberally, defendant's motion seeks an Order suppressing evidence obtained in the instant investigation as a result of searches conducted on the following pieces of property: 1) a 1988 Oldsmobile Cutlass owned by Bessie Pew, the defendant's sister; 2) a vehicle owned and operated by Kimberly Michelle Hinton; 3) a 1989 Cadillac Deville registered to Defendant; and 4) the residence of Cortez Renfro, located at 11979 Wincanton Drive, Cincinnati, Ohio. As grounds, defendant contends that the evidence obtained as a result of these searches was seized illegally and in violation of his constitutional rights. For reasons stated herein below, it is the position of the United States that defendant does not have standing to challenge the searches conducted in the investigation. Thus, his motion should be denied. Alternatively, defendant's motion is

1

without merit and should be denied.

## II. STATEMENT OF FACTS

On April 24, 2002, an armed robbery of the First National Bank of Southwestern Ohio, Hamilton, Ohio, occurred. It was determined from a review of the bank surveillance video that the perpetrators were 2 black males wearing latex gloves and carrying weapons. Immediately after the robbery, an investigation was commenced by law enforcement. During the course of the investigation, the defendant Walter Meade Pugh, Jr. and his son, Tyreese Dorran Pugh, were identified from bank surveillance photographs as suspects. In an attempt to locate and apprehend the defendant and his son, law enforcement followed several investigative leads.

On April 25, 2002, the defendant's sister, Bessie Pew[1] was interviewed. During the interview, Ms. Pew gave law enforcement consent to search her vehicle (a 1988 Oldsmobile Cutlass, maroom in color, bearing license plate number BC302N) without a search warrant. A copy of the Consent to Search Form is attached hereto as Gov't Exhibit No. 1. In the vehicle, officers found a torn latex glove on the floor near the driver's seat. Ms. Pew stated that she had loaned her vehicle to her brother, Walter M. Pugh, Jr., who had possession of it on the day of the bank robbery. She denied ownership of the latex glove. Ms. Pew's vehicle matched the description given by witnesses of the vehicle used by the bank robbers as a get-away car.

On May 2, 2002, law enforcement received an anonymous call wherein the caller stated that the suspects had been observed on that date riding in a Cadillac on Front

---

[1] Walter Pugh and Bessie Pew are siblings. However, each of them spells their last name differently.

Street in Hamilton, Ohio. A police radio broadcast was issued immediately and the defendant's vehicle, a maroon 1989 4-door Cadillac Sedan Deville, bearing Ohio license plate number BD64AF, was located. At the time, the vehicle was abandoned at the corner of Beckett Street and Garden Avenue in Hamilton, Ohio. The vehicle was impounded and towed to an impound lot. Later that same day, officers applied for and received authorization to conduct a search of the 1989 Cadillac Sedan Deville. A copy of said Search Warrant is attached hereto as Gov't Exhibit No. 2.

On May 3, 2002, while conducting surveillance in Cincinnati, Ohio, officers observed the defendant and two other people riding in a 200 Plymouth Neon, bearing Ohio license plate number CET4487, in Cincinnati, Ohio. Kimberly Michelle Hinton was the driver. Cortez Renfro was the front seat passenger and the defendant Walter M. Pugh was the back seat passenger. At the time, there were outstanding arrest warrants for both the defendant and the driver of the vehicle, Ms. Hinton. Law enforcement executed a traffic stop and both the defendant and Ms. Hinton were arrested. A search incident to their arrests was conducted of the vehicle. Additionally, Ms. Hinton gave law enforcement consent to search her vehicle. A copy of the Consent to Search Form is attached hereto as Gov't Exhibit No. 3. A Radio Shack Pro 75 scanner was found in the back seat where defendant was riding as a passenger.

Upon the arrests of the defendant and Ms. Hinton, the defendant stated that his son, Tyreese Dorran Pugh, was inside of Cortez Renfro's home, located at 11979 Wincanton Drive, Cincinnati, Ohio. Accordingly, Mr. Renfro was interviewed and confirmed that Tyreese Dorran Pugh was, in fact, inside of his home. Mr. Renfro gave law enforcement officers consent to search his home. A copy of the Consent Form is attached hereto as

Gov't Exhibit No. 4. Inside the residence, officers found, among other things, personal items belonging to defendant Walter M. Pugh, Jr. Among the defendant's personal items were loaded 2 revolvers.

### III. DISCUSSION

#### A. Defendant Lacks Standing to Contest the Search of Vehicles Owned and Operated by Bessie Pew and Kimberly Michelle Hinton.

The defendant lacks standing to assert any Fourth Amendment protections in the vehicles owned and/or operated by Bessie Pew and Kimberly Michelle Hinton that contained evidence which forms the basis for the charges contained in the indictment. Because Fourth Amendment rights are personal, a defendant challenging the admission of evidence must show a legitimate expectation of privacy in the place searched or the thing seized. Rakas v. Illinois, 439 U.S. 128 (1978); Katz v. United States, 389 U.S. 347 (1967); Minnesota v. Carter, 525 U.S. 83 (1998); see also Minnesota v. Olson, 495 U.S. 91 (1990); United States v. Kincaide, 145 F.3d 771 (6th Cir. 1998).

A determination of whether a legitimate expectation of privacy exists involves a two-part inquiry: first, whether the individual, by his conduct, has exhibited an actual, subjective expectation of privacy; and second, whether the individual's expectation of privacy is one that society is prepared to recognize as reasonable. Rakas v. Illinois, 439 U.S. 128 (1978); Minnesota v. Carter, 525 U.S. 83 (1998); Bond v. United States, 729 U.S. 334 (2000). Therefore, it is the position of the United States that the Court need not consider any of defendant's arguments unless he has demonstrated that he has standing to do so.

It well settled that "legitimation of expectations of privacy by law must have a source

4

outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." United States v. King, 227 F.3d 732, 744 (6th Cir. 2000) (*citing* Rakas v. Illinois, 439 U.S. at 143 n.12 (1978)). "The courts have considered a number of factors in identifying those expectations which qualify for Fourth Amendment protection." Id. Among the factors are: 1) the person's proprietary or possessory interest in the place to be searched or item to be seized; 2) whether the defendant has the right to exclude others from the place in question; 3) whether the defendant had taken normal precautions to maintain his privacy; 4) whether the defendant has exhibited a subjective expectation that the area would remain free from governmental intrusion; and 5) whether he was legitimately on the premises. United States v. King, 227 F.3d at 744 (*citing* Mancusi v. DeForte, 392 U.S. 364, 368(1968); *other citations omitted*)).

**1. Bessie Pew's Vehicle**

In this case, defendant Walter M. Pugh, Jr. had no proprietary or possessory interest in the vehicle owned by Bessie Pew. A few weeks prior to the bank robbery, Pew loaned her 1988 Oldsmobile Cutlass to defendant. The defendant returned the vehicle to Ms. Pew on April 24, 2002, after the robbery had taken place, and fled to Georgia. Thereafter, Ms. Pew resumed exclusive custody and control over the vehicle. On April 25, 2002, she gave law enforcement officers consent to search her vehicle.

Similarly, on the day the search of the vehicle was conducted, defendant had no right to exclude others from the vehicle. Moreover, there is no evidence that defendant had taken any normal precautions to maintain any privacy in the vehicle once he returned it to

its true owner. Accordingly, it cannot be said that defendant exhibited an actual, subjective expectation of privacy in the vehicle or its contents.

Assuming, arguendo, that defendant could establish a subjective expectation of privacy in Ms. Pew's vehicle, which the government denies, it is the position of the United States that defendant abandoned any such interest when he returned the vehicle to Ms. Pew. It is well established that abandonment removes any right to contest the subsequent search of the item abandoned. United States v. Knox, 839 F.2d 285 (6th Cir. 1988) (abandonment negates any privacy interest and Fourth Amendment rights).

### 2. Kimberly Michelle Hinton's Vehicle

Applying the same analysis as above, it is clear that defendant did not exhibit an actual, subjective expectation of privacy in the vehicle operated by Kimberly Michelle Hinton. On May 3, 2002, defendant was merely a back seat passenger in the vehicle operated by Ms. Hinton. At the time, both the defendant and Ms. Hinton had outstanding warrants for their arrests. Upon stopping the vehicle and placing them both into police custody, law enforcement conducted a search of the vehicle's passenger compartment.

Under the Fourth Amendment, a search absent a warrant is per se unreasonable, absent a few delineated exceptions. Katz v. United States, 389 U.S. 347 (1967). A search conducted incident to a lawful arrest is one such exception. Chimel v. California, 395 U.S. 752 (1969). In New York v. Belton, 452 U.S. 454 (1981), the Supreme Court held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." The officer may also search the contents of any containers found within that passenger compartment. Id. at 460.

In the present case, law enforcement's ability to constitutionally search Ms. Hinton's vehicle existed only if they could have lawfully arrested anyone in the vehicle. Because there existed an outstanding misdemeanor warrant for Ms. Hinton and an outstanding felony warrant for defendant, law enforcement lawfully arrested them both. Accordingly, the officers' search of Ms. Hinton's vehicle incident to the arrests was permissible. Thus, any evidence seized int the car (i.e., a Radio Shack Pro 75 scanner found in the back seat where defendant was seated) was lawfully seized. *See also* United States v. Hudgins, 52 F.3d 115 (6th Cir. 1995) (officers may search the automobile regardless of whether the defendant exited the vehicle prior to the arrest).

Notwithstanding this, Ms. Hinton gave consent to search the contents of her vehicle.

### B.    Officers Executed A Valid Search Warrant on the 1989 Cadillac Deville Registered to Defendant.

During the course of the instant investigation, law enforcement located an abandoned 1989 Cadillac Deville in Hamilton, Ohio, which was registered to defendant Walter M. Pugh, Jr. Accordingly, law enforcement officers had the vehicle impounded. Later that same day, officers of the Hamilton Police Department applied for and received authorization to conduct a search of the vehicle. A copy of the Search Warrant & Affidavit are attached hereto as Gov't Exhibit No. 2. During the execution of the search warrant, officers found the following items:

      1) one Black bag containing 12 gauge shotgun shells, .22 caliber ammunition, and .223 caliber ammunition;

      2) a Motorola Walkie Talkie;

      3) a Travelodge Hotel parking pass from Atlanta, Georgia; and

   4) Empty box of Black & Mild cigars.

The Fourth Amendment guarantees that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. CONST. amend. IV. "Probable cause is defined as ' reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion,' United States v. Bennett, 905 F.2d 931, 934 (6th Cir. 1990), that 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. King, 227 F.3d 732, 738 (6th Cir. 2000)(citing Illinois v. Gates, 462 U.S. 213, 238 (1983)). Accordingly, an issuing judge must apply a "totality of the circumstances" test to issues concerning probable cause. This test requires the issuing judge to "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying the hearsay information," probable cause exists. Illinois v. Gates, 462 U.S. at 238.

A review of the affidavit supporting the application for the search warrant clearly shows that it set forth sufficient probable cause to support the finding of the Butler County Common Pleas Court Judge that a search warrant was warranted for the 1989 Cadillac Deville registered to the defendant. Id. It is well established that an affidavit supporting the request for a warrant must show a "' substantial basis for ... conclud[ing]' that a search would uncover evidence of wrongdoing ..." Id. at 236; United States v. Mick, 263 F.3d 553, 562 (6th Cir. 2001). The Fourth Amendment requires no more. Accordingly, it is submitted that when reviewing the affidavit under a totality of the circumstances, it is clear that the it provided a substantial basis for the issuing judge to believe that there was a fair

probability that contraband or evidence of a crime would be found in the defendant's vehicle. Thus, the search warrant was properly issued and could be relied upon in good faith by the officers who executed it.

### IV. The Defendant Lacks Standing To Contest the Search of Cortez Renfro's Residence.

Subsequent to the traffic stop and arrest of the defendant and Ms. Hinton on May 3, 2002, officers entered and searched the residence of Cortez Renfro, located at 11979 Wincanton Drive, Cincinnati, Ohio. Mr. Renfro was also a passenger in the Hinton vehicle at the time of defendant's arrest and gave consent for officers to gain entry and conduct a search of his home. A copy of a Consent to Search form is attached hereto as Gov't Exhibit No. 3. Thus, a search warrant was not necessary.

Notwithstanding this, it is the position of the United States that defendant Walter M. Pugh, Jr., a mere guest at the Renfro home, had no expectation of privacy in the residence, and therefore, lacks standing to challenge the officers' entry and subsequent search.

The "Fourth Amendment protects people, not places." Katz v. United States, 389 U.S. 347, 351 (1967). Thus, a defendant claiming that a search violated his rights under the Fourth Amendment must prove that he had a legitimate expectation of privacy in the place that was searched. See United States v. Sangineto-Miranda, 859 F.2d 1501, 1510 (6th Cir. 1988). Although an overnight guest may be able to establish a legitimate expectation of privacy in the home of his host, a temporary visitor to a residence may not claim such protection. Minnesota v. Olson, 495 U.S. 91 (1990); Minnesota v. Carter, 525

U.S. 83 (1998). In determining whether an individual has a legitimate expectation of privacy, Courts consider the nature of the individual's ties to the property. Id.

Defendant Pugh, like the defendants in Minnesota v. Carter, can present no evidence that he had been in the Renfro residence for any extended period of time or for any purpose that would give rise to his having a legitimate expectation of privacy in that residence. To the contrary, defendant Pugh and his son, Tyreese Dorran Pugh, had only been in the residence for a few hours before their arrests on May 3, 2002. Defendant did not have a key. He did not have unfettered access to the residence. He did not have the ability to admit and exclude others. Moreover, defendant Pugh had no familial ties or other relationship with the owner and occupant of the residence, Cortez Renfro, as contemplated by Carter. 525 U.S. at 90. From these facts, it is clear that defendant Walter M. Pugh, Jr. did not maintain a legitimate expectation of privacy in the Renfro home. Accordingly, the search of the residence did not implicate his Fourth Amendment rights. Therefore, defendant Pugh lacks standing to bring a Fourth Amendment challenge to the legality of law enforcement's entry into and search of the residence.

WHEREFORE, for the reasons stated herein above, the United States respectfully requests that defendant's motion to suppress evidence seized in this case be denied.

Respectfully submitted,

GREGORY G. LOCKHART
United States Attorney

*Wende C. Cross*
WENDE C. CROSS (0061531)
Assistant United States Attorney
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202
(513) 684-3711

## CERTIFICATE OF SERVICE

It is hereby certified that a copy of the foregoing was mailed on this 30th day of July, 2002, to Walter Meade Pugh, Jr., Pro Se, 900 Sycamore Street, Hamilton County Justice Center, Cincinnati, Ohio 45202, and J. Robert Andrews, 2662 Madison Road, Cincinnati, Ohio 45208.

*Wende C. Cross*
WENDE C. CROSS (0061531)
Assistant United States Attorney

# CONSENT TO SEARCH FORM (DP-31)

I, __Bessie Pew_____, having been informed of my constitutional right not to have a search made of the premises hereinafter mentioned without a search warrant, and of my right to refuse consent to such a search, hereby authorize __Det. J. Colhoun_____ and other officers of the Hamilton Police Department to conduct a complete search of my residence/(vehicle) located at:

__88 Olds Cutlass BC 302 N__
__331 S. Front st.__

These officers are authorized by me to take any letters, any papers, any materials, or any other property from my residence/vehicle.

This written permission is being given by me to the above named officers voluntarily and without any threats or promises of any kind.

__B. Pew_____
Signature

__4-25-02_____
Date

WITNESSES

__Det. J_____ 20_____



The undersigned, being duly sworn, says that he/she believes and has good cause to believe that certain articles, bodies, and/or substances, to wit:

Latex gloves, a shotgun with an extended magazine, a long barrel revolver, ammo for a handgun or shotgun, a black or dark colored ball cap, a black or dark colored shirt with light colored piping along the neckline and a light colored logo on it, a light and dark colored checkered shirt, a black or dark colored skull cap, cash, a brown rectangular trash can, documentation of a plan to rob a bank including but not limited to photographs, maps, or written plans, money wrapping bands

are present upon the person and/or premises located within the territorial jurisdiction of the Butler County Common Pleas Court, Butler County, Ohio, and described as follows:

A maroon 4door Cadillac Sedan Deville bearing Ohio license plate BD64AF and also with a VIN of 1G6CD5155K42805711 which is currently located at House's towing facility on Benninghofen Avenue in Hamilton, Ohio.

**Contrary to the following Laws and Ordinances:**

2911.01A1 O.R.C. titled Aggravated Robbery
2913.02 O.R.C. titled Theft

**Affiant's belief is based on the following facts:**

On 04/24/2002 the 1st National Bank of S. W. Ohio was robbed by 2 male blacks wearing the above described clothing and carrying the above described weapons. They wore what appears to be latex gloves during the robbery. They fled the bank in a maroon Olds Cutlass Sierra 4 door. When they fled, the cash was in a trash can that was taken from the bank. There were good pictures from the surveillance cameras, and the 2 male blacks in the pictures have been identified as Walter Pugh Jr. and his son Tyreese Pugh. The above listed Cadillac is registered to Walter Pugh Jr. Walter's sister Bessie had the car until the day of the bank robbery when Walter came to her work and told her he needed his car. Walter had been driving Bessie's car which is a 1988 Olds Cutlass. That is the same type and color of vehicle the bank robbers fled in. Hamilton Police have been looking for the Cadillac since the day of the robbery. Detective Collins received an anonymous call today telling him that Walter, Tyreese, and Tyreese's girlfriend Stephanie Luster were observed in the Cadillac today on Front Street in Hamilton. A radio broadcast was put out, and within 5 minutes of that broadcast, the Cadillac was located abandoned at the corner of Beckett St. and Garden Avenue in Hamilton. The vehicle was impounded to House's tow yard. We seek permission to search for evidence and fruits of the above listed crime.

Affiant requests that a Warrant be issued forthwith to permit the search of the above person or premises and says there is __NO__ urgent necessity for the search to be made at night.

Sworn to before me and subscribed in my presence this __2nd__ of __May__, __2002__.

I CERTIFY THE WITHIN TO BE A
TRUE COPY OF THE ORIGINAL FILED
___ OF ___ 20__
CINDY CARPENTER
Butler County Clerk of Courts
_____ Deputy

Judge of the Common Pleas Court

To: Detective Jim Calhoun 203 _____ or any other Hamilton Police Officer:

*[Stamp: In Common Pleas Court, BUTLER COUNTY, OHIO, MAY 09 2002, CINDY CARPENTER, CLERK OF COURTS]*

For probable cause shown and supported by the affidavit in the attached page, such affidavit is incorporated herein and made a part of this Warrant by reference thereto, you are hereby commanded in the name of the Common Pleas Court, Butler County, Ohio to enter and search within three days the premises and/or persons described below,

**Description and location of place/person to be searched:**

A maroon 4door Cadillac Sedan Deville bearing Ohio license plate BD64AF and also with a VIN of 1G6CD5155K42805711 which is currently located at House's towing facility on Benninghofen Avenue in Hamilton, Ohio.

_____

_____, for the articles, bodies, and/or substances alleged to be present in said affidavit, and to bring a written inventory of said articles, bodies, and/or substances, together with any person named therein to be seized, before the Judge of The Common Pleas Court, and to make return of this warrant according to law to said Judge.

Signed this __2nd__ day of __May__, __2002__ .

5 P.M

_____　　　_____
I CERTIFY THE WITHIN TO BE A　　　　Judge of The Common Pleas Court
TRUE COPY OF THE ORIGINAL FILED
___MAY 05___ 20_02_
CINDY CARPENTER
Butler County Clerk of Courts
_____ Deputy

State of Ohio
Butler County
Case 1:02-cr-00054-DB   Document 36   Filed 07/30/2002   Page 15 of 18

Return of Search Warrant
and
Inventory of Property Taken

This warrant is returned this  6TH  day of  May , 2002 .
Search was made as directed in the foregoing warrant and the following described objects were found:

(1) Black Bag Containing 12 Gage Shotgun shells, .22 Ammo, And .223 Cal. Ammo on Front seat of car.

(1) Motorola Walkie Talkie - under Passenger Front seat
(1) Travelodge Hotel Parking Pass from Atlanta GA. - Glove Box
(1) Empty Box from Blacks mild cigars - Front Floor

FILED in Common Pleas Court
BUTLER COUNTY, OHIO
MAY 09 2002
CINDY CARPENTER
CLERK OF COURTS

_____
Signature of Officer making Search

_____
Signature of Witness

The undersigned officer, does swear that the above is a true and complete inventory of the property taken pursuant to the warrant.

I CERTIFY THE WITHIN TO BE A
TRUE COPY OF THE ORIGINAL FILED
MAY 09 2002
CINDY CARPENTER
Butler County Clerk of Courts
_____ Deputy

_____
Signature of Officer making return

Sworn to before me and subscribed in my presence this  9th  day of  MAY , ____.

_____
Title  Judge/Clerk

_____
Judge/Clerk Court of Common Pleas

CITY OF HAMILTON
POLICE DEPARTMENT

# VEHICLE IMPOUNDMENT REPORT

DP-04 (Rev. 5/98)

## PART I: TO BE COMPLETED BY FIELD OFFICER

| DATE | TIME | REPORT NUMBER | AREA | SECTION |
|---|---|---|---|---|
| 05/02/02 | 1510 | 23011 | | |

| LICENSE NUMBER | STATE | EXPIRATION DATE | TYPE | VIN | STOLEN FILE CHECK |
|---|---|---|---|---|---|
| BD64AF | OH | 07/22/02 | | 1G6CD5155K4280571 | ☒ NO ☐ YES |

| VEHICLE YEAR | MAKE | MODEL | STYLE | COLOR | TOWED BY | STORED OFF-SITE AT |
|---|---|---|---|---|---|---|
| 1989 | Cadillac | Sedan Deville | 4DR | Red / | House's | |

| VEHICLE TOWED FROM | REASON TOWED |
|---|---|
| Beckett / Garden | Per 207 |

MISCELLANEOUS:

HOLD? ☐ NO ☒ YES  IF YES, REASON: Per 207

| OPERATOR NAME | ADDRESS | PHONE |
|---|---|---|
| | | |

| OWNER NAME | ADDRESS | PHONE |
|---|---|---|
| Pugh Walter Jr. | 433 Knightsbridge Hamilton, OH 45011 | |

| SEX | RACE | DATE OF BIRTH | HEIGHT | WEIGHT | HAIR COLOR | EYE COLOR | SOCIAL SECURITY NUMBER |
|---|---|---|---|---|---|---|---|
| M | B | 07/22/57 | 5'09 | 185 | Blk | Bro | 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 |

OWNER NOTIFIED? IF YES, BY: ☐ NO ☐ YES  See 207
☐ IN PERSON ☐ TELEPHONE ☐ NOTE IN MAILBOX
DATE:  TIME:  IF NO, WHY NOT?

SIGNATURES:
Fred House — WRECKER OPERATOR
B. Glynn 172 — IMPOUNDING OFFICER / ID#
— SUPERVISOR / ID#

## PART II: TO BE COMPLETED BY DESK OFFICER

| RELEASED TO | ADDRESS | PHONE |
|---|---|---|
| | | |

| DATE RELEASED | TIME | PROOF OF OWNERSHIP | IDENTIFICATION USED |
|---|---|---|---|
| | | ☐ REGISTRATION ☐ TITLE ☐ OTHER | ☐ O/L ☐ OTHER |

SIGNATURE OF PERSON OBTAINING RELEASE  RELEASING OFFICER  ID#

STAFF SERVICES DIVISION REVIEW  DATE  REMARKS

## PART III: TO BE COMPLETED BY AUTO STORAGE OFFICER

| 1st NOTIFICATION | REMARKS | | TITLE REQUESTED FOR | ESTIMATED RESALE VALUE |
|---|---|---|---|---|
| | | ☐ ENTERED | ☐ SALVAGE ☐ RESALE | $ |
| 2nd NOTIFICATION | REMARKS | ☐ PHOTOGRAPH | DATE  REMARKS | |
| 3rd NOTIFICATION | REMARKS | ☐ NCIC CHECK ☐ LIEN CHECK | DATE  REMARKS | |

## PART IV: TO BE TAKEN TO WRECKER SERVICE - PLEASE RELEASE BELOW DESCRIBED VEHICLE:

| LICENSE NUMBER | VIN | MAKE | MODEL | STYLE |
|---|---|---|---|---|
| | | | | |

RELEASE AUTHORIZED BY  DATE  TIME
HAMILTON POLICE

SPECIAL INSTRUCTIONS TO TOW COMPANY:

TO OWNER: YOUR VEHICLE IS LOCATED AT...
☐ HOUSE'S TOWING (867-0455) 1950 BENNINGHOFEN AVE.
☐ MARCELL'S GARAGE (867-8889) 1831 BENDER AVE.
☐ PAUL'S TOWING (896-5222) 507 NORTH B ST.
☐ OTHER:

## CONSENT TO SEARCH (AUTOMOBILE)

I, __Kimberly Hinton__, HAVING BEEN INFORMED OF MY CONSTITUTIONAL RIGHTS NOT TO HAVE A SEARCH MADE OF MY AUTOMOBILE (HERE AND AFTER MENTIONED) WITHOUT A SEARCH WARRANT AND OF MY RIGHTS TO REFUSE TO CONSENT TO SUCH A SEARCH, HEREBY AUTHORIZE __Det. Jim Calhoun, Agent Terry Moran, or any other officer__ WHO ARE POLICE OFFICERS OF THE HAMILTON ~~COUNTY SHERIFF'S DEPARTMENT~~ Butler, ~~HAMILTON~~ COUNTY, OHIO, AND __KH Police Dept or FBI__

(OFFICERS FROM OTHER COUNTIES, IF NEEDED) TO MAKE AND CONDUCT A COMPLETE SEARCH OF MY AUTOMOBILE, A __2000 Plymouth Neon  Lic # CET4487    KH__
(YEAR, MAKE AND DESCRIPTION OF AUTOMOBILE), LOCATED AT _____

THESE POLICE OFFICERS ARE AUTHORIZED BY ME TO TAKE FROM MY AUTOMOBILE ANY LETTERS, PAPERS, MATERIALS OR OTHER PROPERTY WHICH THEY MAY SO DESIRE.

THIS WRITTEN PERMISSION IS BEING GIVEN BY ME TO THE ABOVE NAMED POLICE OFFICERS VOLUNTARILY AND WITHOUT THREAT OR PROMISES OF ANY KIND.

SIGNED: + __Kimberly Hinton__
DATE: __5/3/02__

WITNESS: __Det Seh-zo HPD__
DEPARTMENT: __Hamilton Police Dept__

WITNESS: _____
DEPARTMENT: _____



HAMILTON COUNTY, OHIO SHERIFF'S DEPARTMENT

CONSENT TO SEARCH WITHOUT A WARRANT

I, _Cortez Renfro_, having been informed of my constitutional right not to have a search made of the premises hereinafter mentioned without a search warrant and of my right to refuse to consent to such a search, hereby authorize members of the Hamilton County, Ohio Sheriff's Department and/or its agents to conduct a search of _11979 Wincanton Drive_.

These officers are authorized by me to take from my _residence_,

of which I am the lawful occupant, any letters, papers, materials, or other property which is contraband, or may be used as evidence in a criminal or civil proceeding.

This written permission is being given by me to members of the Hamilton County, Ohio Sheriff's Department and/or its agents voluntarily and without threats or promises of any kind.

_[signature]_
SIGNATURE

_11979 Wincanton Drive_
ADDRESS

WITNESSES:
_Sgt Matthew Guy_

(REV. 1-93)

