IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| United States of America | |
| Plaintiff | Case No. CR-1-02-054 |
| | District Judge Susan J. Dlott |
| v. | |
| | ORDER DENYING MOTION TO SUPPRESS |
| Walter M. Pugh, Jr. | |
| Tyreese D. Pugh | |
| Defendants | |

This matter comes before the Court on Defendant Walter M. Pugh, Jr.'s Motion for Suppression of Evidence. (Doc. #34.) The Court held an evidentiary hearing regarding this motion on August 21, 2002. At the hearing, the Court heard the testimony of Detective James Calhoun of the City of Hamilton Police Department and admitted into evidence four exhibits, copies of which were attached to the Government response to Defendant Walter Pugh's motion. (Doc. #36.) For the reasons set forth below, Defendant Walter Pugh's motion is **DENIED**.

I.   **ANALYSIS**

A grand jury indicted Defendants Walter M. Pugh, Jr. and Tyreese D. Pugh on charges connected to an armed robbery of the First National Bank of Southwestern Ohio in Hamilton, Ohio that occurred on April 24, 2002. (Doc. #10.) Defendant Walter Pugh, who is proceeding *pro se* in this case, has moved to suppress evidence that he argues was obtained in violation of the Fourth Amendment. As Defendant Walter Pugh's motion is not specific as to what searches he challenges,



the Court will address the validity of the four searches that led to the discovery of evidence against him:

1) the search of a 1988 Oldsmobile Cutlass owned by Defendant's sister, Bessie Pew, on April 25, 2002;

2) the May 2, 2002 search of a 1989 Cadillac Deville registered to Defendant;

3) the search of a 2000 Plymouth Neon owned and driven by Kimberly Hinton, and in which Defendant was a passenger, following a traffic stop on May 3, 2002; and

4) the search of the residence of Cortez Renfro on May 3, 2002.

**A.   The 1988 Oldsmobile Cutlass**

On April 25, 2002, Bessie Pew contacted the police because she believed that her car had been used in the commission of a bank robbery the day before. During her interview at the police station, she told police that she had loaned her 1988 Oldsmobile Cutlass to Defendant Walter Pugh the previous day, and that he had returned it to her later that afternoon. While at the station, she also signed a form consenting to a search of the vehicle by police. During the search, the police found a torn latex glove in the Cutlass.

The Government argues: 1) that Defendant Walter Pugh has no standing to challenge the search of Ms. Pew's car; and 2) that Ms. Pew validly consented to the search. As to the first argument, "in order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable." Minnesota v. Carter, 525 U.S. 83, 88 (1998). The Court will assume, though he has not so testified or presented any evidence to so prove, that Defendant Walter Pugh had a subjective expectation of privacy in his sister's car. The Court must then determine whether Defendant Walter Pugh's subjective expectation was reasonable. To do so, the Court looks at a number of factors, including: 1) his proprietary or possessory interest in the Cutlass; 2) his right to exclude others from

2

the car; and 3) whether he took normal precautions to preserve his privacy. See United States v. King, 227 F.3d 732, 744 (6th Cir. 2000).

Defendant Walter Pugh did not own the Cutlass, nor did he have possession of it at the time of the search. Likewise, at that time he had no right to exclude others from it. Defendant Walter Pugh also took no precautions to preserve his privacy with respect to items he may have left in the car. Having returned the car to his sister, he must reasonably have expected that she, and anyone she allowed, would have access to the car and its contents. Consequently, the Court finds that even if Defendant Walter Pugh had a subjective expectation of privacy with respect to whatever items he left in the 1988 Oldsmobile Cutlass, that expectation was not reasonable.

Even if Defendant Walter Pugh does have standing, the search was constitutional if Ms. Pew's consent was voluntary. See Ohio v. Robinette, 519 U.S. 33, 40 (1996). "[V]oluntariness is a question of fact to be determined from all the circumstances." Id. The United States presented evidence at the hearing to indicate that Ms. Pew voluntarily consented to the search, and Defendant Walter Pugh adduced no evidence to the contrary. Ms. Pew's consent therefore provides an alternate basis for denying this portion of Defendant Walter Pugh's motion.

**B.     Defendant's 1989 Cadillac Seville**

On May 2, 2002, the police received an anonymous tip that Defendant had been seen riding in a Cadillac on Front Street in Hamilton, Ohio. The Cadillac, a 1989 Deville registered to Defendant Walter Pugh, was soon located at the corner of Beckett Street and Garden Avenue in Hamilton. The vehicle was unoccupied. In order to secure the car while they obtained a search warrant, police impounded and towed the car, without searching it, to an impound lot. Less than four hours later, the police obtained a warrant to search the vehicle. During their search of the car,

3

the police discovered a walkie-talkie, a parking pass for a hotel in Atlanta, Georgia, an empty box of cigars, a video rental receipt, and a bag containing ammunition for a shotgun and a handgun.

Under the Fourth Amendment, probable cause is a prerequisite to the issuance of a search warrant. See United States v. Mick, 263 F.3d 553, 562 (6th Cir. 2001). In determining whether probable cause exists, a court issuing a search warrant must find that "'there was a fair probability' that evidence or fruits of illegal activity [we]re likely to be found at the place to be searched." Id. (quoting Illinois v. Gates, 462 U.S. 213, 246 (1983)). This determination is to be made by looking at the "totality of the circumstances." Gates, 462 U.S. at 230. Reviewing courts are to give "great deference" to a court's decision to issue a search warrant. Mick, 263 F.3d at 562.

Here, the application for the warrant stated: 1) the bank robbery described above had occurred; 2) the robbers photographed by bank surveillance cameras were identified as Defendants Walter and Tyreese Pugh; 3) the robbers fled in a car whose description matched a car registered to Defendant Walter Pugh's sister, Bessie Pew; 4) the car to be searched was registered to Defendant Walter Pugh; and 5) the police had received an anonymous call indicating that both Defendants and Tyreese Pugh's girlfriend Stephanie Luster were seen driving the Cadillac that same day. The police also orally informed the court issuing the warrant that it was Bessie Pew who had identified Defendants from the surveillance camera photographs. The Court finds that these facts were sufficient to establish probable cause and that the warrant was justly issued.

This finding is sufficient to deny Defendant's motion to suppress. However, the Court will nevertheless address three additional arguments that Defendant Walter Pugh appears to raise with respect to the search of the Cadillac. First, Defendant Walter Pugh quotes, without further argument, the United States Supreme Court's seminal holding in Marron v. United States:

4

> The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.

275 U.S. 192, 196 (1927).  The Court's holding here is consistent with Marron and its progeny. These cases elaborate upon the requirement under the Fourth Amendment that "items to be seized pursuant to a search warrant must be described with particularity." United States v. Blair, 214 F.3d 690, 697 (6th Cir. 2000). The test of the sufficiency of a warrant's particularity is a practical one and requires consideration of the facts known to police at the time, as well as the nature of the alleged crime. See United States v. Ford, 184 F.3d 566, 575 (6th Cir. 1999). Here, the warrant listed with a very high level of particularity the items relating to the bank robbery for which the police were to search.[1] In fact, the Court finds it difficult to see how the police could have been more specific in describing the objects of the warrant. Consequently, Defendant Walter Pugh's first argument is without merit.

Second, Defendant Walter Pugh contends that the police unlawfully seized items not listed in the search warrant. Under the plain view doctrine, police may seize evidence of a crime inadvertently discovered in plain view during the execution of a valid search warrant. Coolidge v. New Hampshire, 403 U.S. 443, 465 (1971). As explained above, a valid search warrant authorized

---

[1] Specifically, the warrant permitted police to search for:
> Latex gloves, a shotgun with an extended magazine, a long barrel revolver, ammo for a handgun or shotgun, a black or dark colored ball cap, a black or dark colored shirt with light colored piping along the neckline and a light colored logo on it, a light and dark colored checkered shirt, a black or dark colored skull cap, cash, a brown rectangular trash can, documentation of a plan to rob a bank including but not limited to photographs, maps, or written plans, [and a] money wrapping band.

(Doc. #36 exh. 2.)

5

the police to search the Cadillac. The other items discovered inside, such as the empty box of cigars and the hotel parking pass, were discovered in the course of that search. Therefore, even though the additional items were not listed in the warrant, they were properly seized.

Third, Defendant Walter Pugh appears to contend that the police violated the Fourth Amendment when they failed to properly inventory all the property they seized pursuant to the warrant. Such an error, he apparently argues, would require the suppression of that evidence not properly inventoried. This argument is factually correct, but legally wrong. Defendant Walter Pugh did in fact adduce testimony at the hearing that police seized a video rental receipt from his car and may have seized the vehicle registration. Furthermore, he correctly noted that neither item is listed on the "Inventory of Property Taken" attached to the search warrant. (See doc. #36 exh. 2.) However, the Sixth Circuit has held that the improper inventory of seized property has "no relation at all to the command of the Fourth Amendment which bars unreasonable searches and seizures." United States v. Clark, No. 90-6476, 1991 WL 93089, at **4 (6th Cir. June 3, 1991).[2] Consequently, suppression of evidence is not the appropriate remedy for this error. See id. (explaining the remedies other than suppression that exist for the improper inventory of seized property).

## C. The 2000 Plymouth Neon

On May 3, 2002, police conducting surveillance of a house in which they believed Defendants were located observed Defendant Walter Pugh and another man get picked up there in a late-model Plymouth Neon. Defendant Walter Pugh was the back-seat passenger in the car. The police stopped the vehicle and arrested the driver of the car, Defendant Walter Pugh, and the other

---

[2] The Court does note with some concern, however, that the failure by police to correctly inventory all property seized pursuant to a search warrant may implicate due process concerns. See City of West Covina v. Perkins, 525 U.S. 234, 246-47 (1999) (Thomas, J., dissenting).

6

passenger. Both the driver, Kimberly Hinton, and Defendant Walter Pugh had outstanding warrants. Ms. Hinton claimed ownership of the vehicle and signed a form consenting to its search. Pursuant to Ms. Hinton's consent and incident to the arrests, the police searched the vehicle. Police found a Radio Shack Pro 75 police scanner in the back seat of the Neon.

The Government makes three arguments with respect to this search: 1) Defendant has no standing to challenge the search; 2) the search was valid as a search incident to arrest; and 3) Ms. Hinton validly consented to a search of the car. Applying the standing analysis set forth above, the Court finds that any subjective expectation of privacy that Defendant Walter Pugh had in the contents of the car was not reasonable. He did not own the car. He could not exclude others from it. He had not attempted to protect his privacy interest in any item that he owned in the car. He therefore has no standing to challenge the search. Cf. Rakas v. Illinois, 439 U.S. 128 (1979) (holding that defendant who asserted no possessory or proprietary interest in either the vehicle searched or the evidence seized could not challenge the Fourth Amendment validity of the search).

Even if Defendant Walter Pugh does have standing, the search was constitutional if it was conducted incident to the lawful arrest of Ms. Hinton or Defendant. See New York v. Belton, 453 U.S. 454, 460 (1981) ("[W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile."). The Court finds that the arrests of Ms. Hinton and Defendant Walter Pugh were lawfully made pursuant to the outstanding warrants. Consequently, the arrests provide an alternate justification for the search.

Finally, if Ms. Hinton voluntarily consented to the search, the search was also lawful on that basis. See Robinette, 519 U.S. at 40. The consent to search form indicates that Ms. Hinton signed it voluntarily, and Defendant Walter Pugh presented no evidence otherwise.

### D.     The Renfro Residence

After his arrest on May 3, 2002, Defendant Walter Pugh informed the police that Defendant Tyreese Pugh was at the residence of Cortez Renfro, the other passenger in Ms. Hinton's car. Mr. Renfro signed a form consenting to the search of his home by police. Inside the home, police located Defendant Tyreese Pugh and found two revolvers, as well as personal items belonging to Defendant Walter Pugh.

The Government makes two arguments regarding this search: 1) Defendant has no standing to challenge it; and 2) Mr. Renfro validly consented to the search. Following the standing analysis described above, the Court finds that Defendant Walter Pugh does not have standing to challenge the search. While overnight guests may have standing to challenge a search under the Fourth Amendment, see Minnesota v. Olson, 495 U.S. 91 (1990), there is no indication that Defendant in fact was staying at Mr. Renfro's residence for any extended period of time. Likewise, there is no evidence that he had the right to exclude others from Mr. Renfro's residence or that he took any steps to preserve his privacy with respect to his personal items in the residence.

Nonetheless, even if Defendant has standing, the search was constitutional because Mr. Renfro voluntarily gave his consent for police to search the residence. See Robinette, 519 U.S. at 40. Defendant Walter Pugh argues, however, that Mr. Renfro could not validly consent to a search of Defendant Walter Pugh's personal belongings in the residence. "Generally, consent to search a space includes consent to search containers within that space where a reasonable officer would construe the consent to extend to the container." United States v. Melgar, 227 F.3d 1038, 1041 (7th Cir. 2000) (citing Florida v. Jimeno, 500 U.S. 248 (1991)). Here, the police would have had no reason to believe that Defendant Walter Pugh's personal items were off-limits pursuant to Mr. Renfro's consent. They were not hidden, kept in a sealed or locked container, or marked in any way

to indicate that they were private or that they belonged only to Defendant Walter Pugh. Consequently, a reasonable police officer would have construed Mr. Renfro's consent to extend to the items that turned out to be Defendant Walter Pugh's personal belongings. See United States v. Cork, No. 00-5099, 2001 WL 1069814, at **7 (6th Cir. Sept. 6, 2001) (no special consent required to search unmarked, unsealed shoebox under bed). Compare with United States v. Fultz, 146 F.3d 1102 (5th Cir. 1998) (consent to search did not extend to sealed boxes in garage where person providing consent expressly disclaimed right of access to them).

## II. CONCLUSION

For the reasons set forth above, Defendant Walter M. Pugh, Jr.'s Motion for Suppression of Evidence is **DENIED**. (Doc. #34.)

IT IS SO ORDERED.

*[signature]*
Susan J. Dlott
United States District Judge