UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Criminal No. CR-1-02-054 |
| Plaintiff, | : | |
| | : | UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO PREVENT USE OF STUN BELT |
| v. | : | |
| WALTER MEADE PUGH, JR. | : | |
| Defendant. | : | Honorable Susan J. Dlott |

---

On August 21, 2002, this Court ordered that Defendant Walter M. Pugh, Jr. wear a stun belt during trial in this matter. Defendant Walter Pugh now objects to this order and on August 30, 2002, filed a motion requesting the court rescind it. The Court's order, however, was justified by both the facts and the case law and should not be reversed.

The undersigned assistants have conferred with Supervisory Deputy United States Marshal Chris Riley regarding this matter. Mr. Riley has reviewed this matter in arranging for security for the trial and has concluded that the defendant is dangerous and poses a significant threat of violence to trial participants and of escape. He believes that there is a compelling interest in having the defendant wear a stun belt during his criminal trial to protect courtroom security. A declaration of Mr. Riley is attached hereto.

Moreover, as demonstrated below, the proper use of a stun belt during the upcoming criminal trial will not prejudice the defendant. A stun belt allows the potentially violent defendant to remain in court during his trial and to provide his own defense.

Moreover, a stun belt is reliable, effective, and safe. If it is not activated, it has no physical effect on a defendant at all. Even if activated, stun belts are non-injurious to the wearer. Further, under United States Marshals Service policy, any such activation will only occur if the wearer attempts to escape or cause injury to someone else—actions that would warrant the use of the belt's non-lethal force.

For these reasons, nearly every court that has consider the use of stun belts as a means of ensuring courtroom security against potentially violent defendants has permitted their use. *See United States v. Clayton Lee Wagner*, CR-1-02-07 (S.D. Ohio 2002); *see also United States v. McKissick*, 204 F.3d 1282, 1299 (10th Cir. 2000); *United States v. Brooks*, 125 F.3d 484, 502 (7th Cir.1997); *United States v. Edelin*, 175 F. Supp. 2d 1 (D.C. 2001). This Court's decision in this case concerning courtroom security should be no different than its decision in *Wagner*. As in the *Wagner* case, this Court should deny the defendant's motion and enter an order requiring the defendant to wear a stun belt during the upcoming trial.

Criminal defendants can pose a serious threat to courtroom security. As the case law amply demonstrates, the stress of a criminal proceeding, combined with the adversary nature of the process and the potential for conviction and punishment, can cause a defendant to lash out at the presiding judge, jurors, clerks, counsel, and others. *See King v. Rowland*, 977 F.2d 1354 (9th Cir. 1992) (defendant attacked counsel in court even though defendant in leg irons); *Hamilton v. Vasquez*, 17 F.3d 1149, 1154 (9th Cir.) (describing defendant's attacks on counsel and deputies), *cert. denied*, 512 U.S. 1229 (1994); *see also Spain v. Rushen*, 883 F.2d 731 (9th Cir. 1989) (Noonan, J., dissenting)

("[w]hat could be done in a prison could be done in a courtroom by a prisoner . . . ill-disposed to the system . . .").

Conversely, it is beyond dispute that a court has a compelling interest in maintaining the security of its courtroom. *See, e.g., Holbrook v. Flynn*, 475 U.S. 560 (1986) (interest in maintaining control over defendants who had been denied bail outweighed defendants' interest in avoiding any prejudice caused by the jury's seeing four security officers seated in front row of spectator section during trial); *Hamilton v. Vasquez*, 17 F.3d 1149, 1155 (9th Cir.) (interest in maintaining courtroom security justified use of shackles on defendant, outweighing defendant's due process rights), *cert. denied*, 512 U.S. 1220 (1994); *McMorris v. Alioto*, 567 F.2d 897 (9th Cir. 1978) (interest in protecting courtroom security justifies magnetometer searches of entrants). "It is the court that is responsible for the security of the courtroom, and it decides, first, whether any special security is needed, and second, on the most appropriate security safeguards under the particular circumstances." *United States v. Whitehorn*, 710 F. Supp. 803, 840 (D.D.C), *rev'd on other grounds, U.S. v. Rosenberg*, 888 F.2d 1406 (D.C. Cir. 1989); *see also Edelin*, 175 F. Supp. 2d 1-8.

In evaluating courtroom security measures, this Court must balance those security needs against the defendant's Sixth Amendment rights to a fair trial and the presumption of innocence. As the Supreme Court has instructed, "every practice tending to single out the accused from everyone else in the courtroom" need not be "struck down." *Holbrook v. Flynn*, 475 U.S. 560, 567 (1986). Rather, "when the proceedings present legitimate security concerns to which the presiding judge must respond," the defendant's constitutional rights must give way. *Id.*; *United States v. Childress*, 58 F.3d 693, 705 (D.C.

Cir. 1995); *United States v. Edmond*, 52 F.3d 1080, 1090 (D.C. Cir. 1995) ("[T]he right to a presumption of innocence . . . is [not] a constitutional absolute; . . . at times, [it] must yield to the legitimate demands of trial administration and courtroom security so long as steps are taken to ensure that the defendant receives a fair trial").

Accordingly, this Court must determine if there is a "need" for special security, "consider whether the measures adopted . . . are appropriate to that end," and determine "whether there are other less burdensome alternatives . . . available." *Whitehorn*, 710 F. Supp. at 835, 838-39; *see also Edelin*, 175 F. Supp. 2d 1-8. As demonstrated below, an analysis of those factors plainly militates in favor of using stun belts in this case.[1]

The use of the stun belt was considered by this Court in *Wagner* and the district court in the District of Columbia in *United States v. Edelin*, 175 F. Supp. 2d 1 (D.C. 2001). Both courts held that the REACT belt did not pose an undue threat to the health of the defendants, that the belts are not subject to malfunction, and that there have been a very small number of accidental activations of the belt. *Wagner* at 3; *Edelin*, 175 F. Supp. at 3. "In fact, the United States Marshals Service has no record of any activation of a stun

---

[1] This Court's determination will be subject to an abuse of discretion standard of review on appeal. *Childress*, 58 F.3d at 704-705. As the D.C. Circuit has instructed:

> Like the decision to empanel an anonymous jury, the trial court's choice of courtroom security procedures requires a subtle reading of the immediate atmosphere and a prediction of potential risks—judgments nearly impossible for appellate courts to second-guess after the fact. For that reason, the balancing of the competing concerns for the presumption of innocence and for the integrity of the courtroom and its proceedings is best left to the sound discretion of the trial judge.

*Id.* (*citing United States v. Scarfo*, 850 F.2d 1015, 1024 (3d Cir. 1988), and *United States v. Nicholson*, 846 F.2d 277, 279 (5th Cir.1988)).

belt, accidental or otherwise, while worn by a prisoner or detainee." *Edelin*, 175 F. Supp at 3; *see also Wagner* at 4 ("[S]tun belts have been used without any malfunction or activation in this courthouse.").

In determining that there was a need for increased courtroom security in the *Wagner* and *Edelin* case, the courts relied on a number of factors. *See United States v. Edelin*, 175 F. Supp.2d 1, 5-7 (2001).[2] As demonstrated below, these factors make a compelling case for increased courtroom security during the upcoming trial.

As set out in the Indictment, the defendant in this case was charged by the Grand Jury with committing a bank robbery with firearms. Defendant Pugh faces a 34 year sentence an Armed Career Criminal. In the past, Defendant Pugh has been convicted of manslaughter, aggravated burglary, and felonious assault. Given the seriousness of the crimes alleged and severity of the potential sentence this defendant faces, the threat of any

---

[2] As the court held in *Edelin*, "lack of inappropriate conduct by the defendants within the courtroom should not be the deciding factor as to whether a stun belt should be used as a security measure." *Edelin*, 175 F. Supp. 2d at 3. Similarly, many cases have upheld the use of handcuffs or shackles on criminal defendants who had only threatened harm to others or whom the court predicted had a potential risk of harming trial participants. *See, e.g., Jones v. Meyer*, 899 F.2d 883, 884 (9th Cir.1990) (defendant threatened physical injury to a co-defendant, the bailiff and his own counsel); *United States v. Samuel*, 433 F.2d 663, 664 (4th Cir.1970) (court had reason to believe that defendant and co-defendant posed threat to a government informer who was to testify at trial; there was also reason to suspect that if such an attempt were made, assistance might be forthcoming from persons who were purportedly solely spectators in the courtroom); *United States v. Baker*, 10 F.3d 1374, 1401-02 (9th Cir.1993) (defendants threatened government witnesses during pretrial proceeding and while in custody several of the defendants conspired to kill a government witness and discussed the murder of the FBI agent in charge of the case); *United States v. Thompson*, 432 F.2d 997, 998 (4th Cir.1970) (the judge had information that if the defendants were not restrained that they might, aided by spectators, attack another inmate, who, in the role of informer, appeared as a witness against them). Accordingly, this Court need not wait until it actually witnesses the defendant harming someone before it takes action to ensure the security of its courtroom during trial.

new charges is unlikely to deter the defendant from engaging in violent conduct during the trial and there is a strong incentive for him to escape. *Edelin*, 175 F. Supp. 2d at 6; Riley Dec. at ¶¶ 5-8. Thus, this factor weighs strongly in favor of increased courtroom security in this case.

As in the *Edelin* case, the defendant has previously been convicted of a gun charge, and other violent crimes. *Edelin*, 175 F. Supp. 2d at 6. Thus, these factors also weigh strongly in favor of increased courtroom security in this case.

Further, as in the *Edelin* case, Supervisory Deputy U.S. Marshal Chris Riley believes that defendant Walter M. Pugh presents a substantial risk of escape and a substantial threat of violence to Deputy Marshals, Court personnel, witnesses, jurors, and the public. Riley Dec. at ¶¶ 5-8; *Edelin*, 175 F. Supp. 2d at 6-7 (court relying, in part, on the "knowledge and experience," and recommendation of the United States Marshal in making its security decision); *see also Whitehorn*, 710 F. Supp. at 832, 840 (same); *cf. United States v. Brooks*, 125 F.3d 484, 502 (7th Cir. 1997) (decision regarding courtroom security is the District Court's responsibility; it "may not delegate [its] discretion to another party"). Plainly, then, there is a compelling interest in increasing security during the upcoming trial in this matter.

Next this Court should consider whether the security measure proposed—in this case, a stun belt—is an appropriate means to achieve the compelling interest in increased security in this case. *Whitehorn*, 710 F. Supp. at 835-38; *Edelin*, 175 F. Supp. 2d at 7-8. The belt will act as a deterrent to misconduct by the defendant. It will not be visible to the jury or impede the defendant's movement during trial. The belt will reduce the number of

Deputy U.S. Marshals in the courtroom. The belt will not interfere with defendant's availability to confer with his Legal Advisor during trial. Riley Dec. at PP 10-11.

The belt would only be activated if the defendant tampers with the belt, fails to comply with a Deputy's verbal order to halt movement, attempts to escape, takes any action which indicates he is attempting to inflict bodily harm to another person, or intentionally attempts to avoid constant visual contact with a Deputy. The belt is also equipped with an audible warning device to warn the defendant to stop what he is doing before the belt is activated. Riley Dec. at 11-12.

The United States Marshals Service must take appropriate measures to ensure that defendant Meade does not use his self-representation as a means of escape during his trial which is scheduled for the week of September 3, 2002. The stun belt is such an appropriate measure based upon all of the circumstances of this case.

## Conclusion

For the foregoing reasons, defendant Pugh's Motion to Prevent Use of Stun Belt should be denied.

Respectfully submitted,

Gregory G. Lockhart
United States Attorney


Wende C. Cross
Amul R. Thapar
Assistant U.S. Attorneys
400 Atrium Two
221 East Fourth Street
Cincinnati, Ohio 45202-4166
(513) 684-3711
FAX (513) 684-6385

## Certificate of Service

This is to certify that one copy of the foregoing United States' Response to Defendant's Motion To Prevent Use of Stun Belt was hand delivered to both defendant Walter Meade Pugh, Jr. and J. Robert Andrews, Esq., Legal Advisor, on September 3, 2002.

*Wende C. Cross*
Wende C. Cross
Assistant U.S. Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Criminal No. CR-1-02-054 |
| Plaintiff, | : | |
| | : | **DECLARATION OF** |
| v. | : | **CHRIS RILEY,** |
| | : | **SUPERVISORY DEPUTY** |
| WALTER MEADE PUGH, JR. | : | **U.S. MARSHAL** |
| Defendant. | : | Judge Susan J. Dlott |

---

I, SUPERVISORY DEPUTY U.S. MARSHAL CHRIS RILEY, declare based on my personal knowledge except for those matters and information that I am informed and believe to be true:

1. I am currently the Supervisory Deputy U.S. Marshal for the Southern District of Ohio in Cincinnati and have held this position since April 1995. During my tenure with the U.S. Marshals Service my duties have included, among others, responsibility for oversight of court security in the United States District Court, including courtroom security. Accordingly, I have assessed, planned, coordinated, implemented, and supervised the security arrangements for the highest security level criminal trials and other court proceedings in this District, the Southern District of

-1-



Florida, and the Southern District of Texas. I am well aware of the possible risks posed by certain prisoners and detainees to Deputy U.S. Marshals and to the safety and security of the Court and its personnel, jurors, witnesses, and the public.

2. After full review of the relevant considerations and United States Marshals Service policy, I believe that it is necessary that Walter Meade Pugh, Jr. (the "defendant") wear a stun belt during his upcoming criminal trial in order to maintain the security of the courtroom.

3. United States Marshals Service policy allows the placement of a stun belt on a prisoner or detainee during trial only if he or she poses "a substantial escape risk or risk of injury or death to the deputy or others." For the following reasons, I have concluded that that standard is met here with regard to defendant Walter Meade Pugh, Jr..

4. First, the defendant in this case is charged with Armed Bank Robbery.

5. Second, defendant has prior criminal convictions involving the use of weapons, murder and felonious assault. He faces a substantial term of imprisonment if convicted in this case. Given his prior criminal history involving the physical aggression and the possible sentence from charges now pending against the defendant, I believe there is a strong incentive for him to attempt to flee during trial.

6. For these reasons, to allow the defendant to appear in court during the course of his criminal trial without wearing a stun belt creates a potentially extremely dangerous situation that poses a safety risk to Deputy U.S. Marshals, to the Court and its personnel, and to jurors, witnesses, and the general public. The wearing of a stun belt will deter the defendant from physical violence and escape attempts. On the other hand, the wearing of stun belt will not prejudice the defendant. The belt will not be visible to the jury and will not impede defendant's normal physical movements during trial. Further, the use of a stun belt will reduce the number of Deputy U.S. Marshals that will be required to be present at trial, thus avoiding any prejudice to defendant and allowing the U.S. Marshals Service to pursue its many ongoing security needs in the District Court. Accordingly, I strongly urge the Court to order the defendant to wear a stun belt during his criminal trial and during their transport to and from the courtroom and cellblock.

7. In making my decision to recommend the use of a stun belt, I have considered other alternatives to address the substantial security concerns discussed above. In my judgment, no other alternative will provide the same level of courtroom security without significantly increasing the risk of prejudice to the defendant's right to a fair trial: Substantially increasing the number of Deputy U.S. Marshals to address the security concerns in this matter would be less satisfactory

than the use of a stun belt as such an increased police presence in the courtroom may result in prejudice to the defendant if observed negatively by the jury. Further, if there is a violent episode during the trial, the use of physical force by a Deputy U.S. Marshal, unlike the use of a stun belt, may result in a serious physical injury to the defendant or the Deputy U.S. Marshal. In any event, given the already strained resources of the U.S. Marshals Service, my office would not be able to increase the number of Deputy U.S. Marshals assigned to this matter to a level that would obviate the need for a stun belt during the trial.

8.  It is extremely unlikely that a defendant's mere desire to communicate with his Legal Advisor, to object to a ruling by the court, or to engage in any other verbal expression of his dissatisfaction with the proceedings, would be misconstrued by a Deputy U.S. Marshal as threatening courtroom security and requiring the activation of the defendant's stun belt. Pursuant to the United States Marshals Service policy, each Deputy U.S. Marshal who will operate a stun belt during the trial in this matter has successfully completed a training program by certified training instructors regarding the use and activation of these devices. Further, according to United States Marshals Service's policy, a stun belt may only be activated by a Deputy U.S. Marshal after a precise and deliberate action by the criminal defendant. Specifically a stun belt may be activated only if the defendant (1) tampers with the

belt; (2) fails to comply with a Deputy's verbal orders to halt movement; (3) attempts to escape custody; (4) takes any action which indicates that he or she is attempting to inflict bodily harm to another person; or (5) intentionally attempts to avoid constant visual contact by the Deputy.

9.  Further, Deputy U.S. Marshals are instructed that, if possible, they should attempt lesser measures prior to activation of the belt. Indeed, each stun belt is equipped with a warning device that can be used to warn the wearer with an audible tone prior to activation of the belt. Deputy U.S. Marshals are instructed that, if possible, they should audibly warn, or "tone," the belt wearer before activating the belt so as to provide the wearer with an opportunity to cease and desist.

10. According to United States Marshals Service Policy, prior to applying a stun belt, the Deputy U.S. Marshal will advise the defendant that the belt will be activated under the circumstances listed above. This notification is accomplished by reading the Notification of Electronic Restraint Belt Use (Form USM-536) aloud to the defendant or by allowing the defendant to read the form.

11. Pursuant to United States Marshals Service's policy, before placement of the stun belt in this case, an inquiry will be made with the medical officer at the facilities where the defendant is being detained to assess whether he has any pre-

existing medical conditions that would preclude use of stun belts, *e.g.*, heart condition.

12. None of my Deputy U.S. Marshals has ever activated a stun belt, whether intentionally or accidentally, while the belt was being worn by a prisoner or detainee.

13. Stun belts have a record of safe, reliable, and effective use in this courthouse. A stun belt was used last summer in this Courthouse for a state prisoner in a civil rights trial.

14. The belts used by the United States Marshals Service in Cincinnati are equipped with a plastic guard over the activation trigger switch that lessens the possibility of a Deputy U.S. Marshal accidentally activating a belt by unknowingly brushing against an object and depressing the activator switch.

15. No stun belt used by my office has ever been activated by an interfering, unwanted radio signal or by any technical malfunction.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this day of 3rd day of September, 2002.

_____
Chris Riley
Supervisory Deputy U.S. Marshal
Cincinnati, Ohio