

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**FILED**

SEP 3 2002

KENNETH J. MURPHY, Clerk
CINCINNATI, OHIO

| | |
|---|---|
| United States of America | Case No. CR-1-02-054 |
| v. | District Judge Susan J. Dlott |
| Walter M. Pugh, Jr. | ORDER |
| Defendant | |

Defendant Walter M. Pugh, Jr. stands accused by the United States in a five-count indictment charging him with conspiracy to rob a bank, bank robbery, and using, carrying and brandishing a firearm during a crime of violence. He requests that the Court not allow the United States Marshals Service ("USMS") to require him to wear either shackles or a security device known as a stun belt during his trial. For the following reasons, the Court **DENIES** Defendant's Motion.

**I. PHYSICAL RESTRAINT OF A CRIMINAL DEFENDANT DURING TRIAL**

Every criminal defendant is entitled to a fair and impartial trial. The physical restraint of a criminal defendant during trial implicates this right in two ways. First, it may compromise the defendant's physical indicia of innocence. Second, it may distract, confuse, or embarrass the defendant and thereby undermine his ability to defend himself. A court nevertheless retains discretion to ensure that criminal trials proceed without the dangers of escape or violence.

48

Case 1:02-cr-00054-DB    Document 48    Filed 09/03/2002    Page 2 of 7

Recognizing these principles, the Sixth Circuit has instructed district courts to inquire into four issues in determining whether and how to restrain physically a criminal defendant during trial.[1] First, is there factual support in the record concerning the record of the defendant, his desperate situation, his temperament and personal characteristics? Second, are the physical facilities of the courtroom and courthouse such that less restrictive means of security are available? Third, does the physical condition of the defendant reduce or eliminate the likelihood of escape or violence? Fourth, "does the trial court have available less prejudicial but adequate means of security, i.e., guards?" Kennedy v. Cardwell, 487 F.2d 101, 111 (6th Cir. 1973).

## II. ANALYSIS

In this case, there is a substantial risk that the Defendant could behave violently. In 1984 the Defendant was charged with aggravated murder and was convicted of involuntary manslaughter and felonious assault, for which he served over 15 years of incarceration. He also has a history of convictions on assault charges. Thus, the Defendant has demonstrated a history of violence.

The Defendant also poses a substantial risk of escape. He faces charges for which he could receive a significant prison term if convicted. Thus, he has a rational incentive to escape.

The Court also finds that the Defendant appears to be healthy and middle-aged. He does not appear decrepit or disabled in any way. His physical condition does not, therefore, reduce or eliminate the likelihood that he will try to escape or behave violently.

---

[1] The Sixth Circuit developed this framework for district court review of habeas corpus petitions in which the petitioner objects to his restraint during trial in state court. The framework seems equally applicable to trials conducted by the district court. Cf. United States v. Edelin, 175 F. Supp. 2d 1, 3-4 (D.D.C. 2001) (applying framework to determine restraint of criminal defendant on trial in district court).

2

The stun belt is a device worn under one's clothing and operated by a remote device. If activated, the stun belt delivers an electric shock to its wearer. This shock is normally sufficient to incapacitate the person wearing the belt.

The Court finds that use of the stun belt is the least restrictive and least prejudicial means of ensuring that this trial proceeds without undue danger of violence or escape. First, because it is worn under the Defendant's clothing, it is the physical restraint least likely to compromise the Defendant's physical indicia of innocence; unlike leg or arm irons, the jury will not hear or see the stun belt. Similarly, a trained Deputy U.S. Marshal can operate the stun belt from a distance in the courtroom so that it is unnecessary to have a large number of guards in the Defendant's immediate proximity. A large number of guards surrounding the Defendant might also compromise his physical indicia of innocence. Second, Deputy U.S. Marshal Chris Riley has declared that his "office would not be able to increase the number of Deputy U.S. Marshals assigned to this matter to a level that would obviate the need for a stun belt during the trial." (Decl. of Chris Riley ¶ 7, attached as Exhibit A to United States' Response to Defendant's Motion to Prevent Use of Stun Belt). Therefore, the trial court does not have available less prejudicial but adequate means of security. Nor are the courtroom's facilities equipped in a way that would eliminate the risk of escape or violence.

While Mr. Walter Pugh is representing himself in this case, he should not be concerned that use of the stun belt will distract him in acting as his own counsel. Each Deputy Marshal who operates the belt's remote activation has completed a training program; the USMS has a specific and clear policy, which the USMS will read to the Defendant, governing the circumstances under which the belt may be activated; the USMS policy instructs Deputy Marshals to warn the Defendant if possible prior to activation of the belt; a safety guard prevents accidental trigger of the stun belt; and

stun belts have been used without any malfunction or activation in this courthouse. (See id. ¶¶ 8-10, 12-15.)

## III. CONCLUSION

For the foregoing reasons, the Defendant's Motion to Challenge Court's Decision to Make Defendant Wear a Stun Belt or Ankle Shackles During Court Proceeding and Trial is hereby **DENIED**. The Defendant Walter Pugh shall wear a stun belt, but not any leg or arm irons, during trial.

IT IS SO ORDERED.

Susan J. Dlott
United States District Judge