1        UNITED STATES DISTRICT COURT

2            SOUTHERN DISTRICT OF OHIO

3                WESTERN DIVISION
                    - - -

4

UNITED STATES OF AMERICA,    :  CRIMINAL ACTION CR-1-02-054
5                            :
            Plaintiff,       :  Cincinnati, Ohio
6                            :  Tuesday, September 3, 2002
        -vs-                 :
7                            :
WALTER PUGH, JR, and         :  Day 1 of jury trial
8    TYREESE PUGH,           :
                             :
9            Defendants.     :  9:30 a.m.

10                   - - -

11                  VOLUME I

12           TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE SUSAN J. DLOTT, JUDGE,
13                  AND JURY

14                   - - -

15   For the Plaintiff:    Wende Cross, Esq.
                          Amul Thapar, Esq.
16                        Asst. U.S. Attorney
                          Atrium II, Suite 400
17                        221 East Fourth Street
                          Cincinnati, Ohio  45202
18
     For the Defendant:    Pro Se
19    (Walter Pugh, Jr.)
                          J. Robert Andrews, Esq.
20    (Legal advisor)      Schuh & Goldberg
                          2662 Madison Road
21                        Cincinnati, Ohio  45208

22    (Tyreese Pugh)       Edward J. Felson, Esq.
                          Felson & Felson
23                        CBLD Center, Suite 1650
                          36 East Seventh Street
24                        Cincinnati, Ohio  45202.
     Law Clerk:  Mike Rich
25   Courtroom Deputy:  Steve Snyder
     Court Reporter:  Betty Schwab

```
1                          I N D E X

2    Jury voir dire:                              15

3    United States opening stagement:           117

4    Defendant T. Pugh's opening statement:     121

5    Defendant W. Pugh's opening statement:     124

6

7    WITNESS FOR THE GOVERNMENT:   DIRECT   CROSS    RD     RC

8    JAMES CONNAUGHTON
         (by Mr. Thapar)           126                162
9        (by Mr. Felson)                    137              164
         (by Mr. W. Pugh)                   158
10

11   GOVERNMENT EXHIBITS:          ADMITTED:
         No. 1.1                   128
12       No. 1.2                   129
         No. 1.3                   129
13       No. 1.4                   130
         Nos. 1.5, 1.6, 1.7, 1.8   131
14       No. 2                     132

15

16

17

18

19

20

21

22

23

24

25
```

|    |                                                             |
|----|-------------------------------------------------------------|
| 1  | PROCEEDINGS                                                  |
| 2  | THE COURTROOM DEPUTY:  Case is CR-1-03-54,                   |
| 3  | defendants one and two, United States of America v. Walter  |
| 4  | Pugh and Tyreese Pugh.                                       |
| 5  | THE COURT:  Good morning to everyone.  I just               |
| 6  | want to do some housekeeping things before we get started.  |
| 7  | Why don't I have everybody enter their appearance           |
| 8  | for the record?  We'll start with the government.           |
| 9  | MS. CROSS:  Good morning, Your Honor.  Wende                 |
| 10 | Cross for the United States.  At counsel table is my        |
| 11 | co-counsel, Mr. Amul Thapar, and also Special Agent Terry   |
| 12 | Moran of the FBI.                                            |
| 13 | THE COURT:  Thank you.  Mr. Felson?                          |
| 14 | MR. FELSON:  Ed Felson for Tyreese Pugh.                     |
| 15 | DEFENDANT W. PUGH:  Walter Pugh for Walter Pugh.            |
| 16 | MR. ANDREWS:  J. Robert Andrews as standby                  |
| 17 | counsel for Mr. Pugh.                                        |
| 18 | THE COURT:  And seated with you, Mr. Felson, is             |
| 19 | your client, Tyreese Pugh?                                   |
| 20 | MR. FELSON:  That is correct.                                |
| 21 | THE COURT:  All right.  Let's see.  We have got a           |
| 22 | pot pourri of things here.  I guess the first thing we       |
| 23 | probably ought to talk about are voir dire questions for     |
| 24 | the jury.  We received from Mr. Walter Pugh this morning     |
| 25 | some -- I don't know.                                        |

1               Are those additional?  Were those additional voir

2   dire questions?  I can't remember.  No.  That's the first

3   set that you have submitted to us, Mr. Walter?

4               DEFENDANT W. PUGH:  Yes, ma'am.

5               THE COURT:  While the jury is not here, I'm going

6   to refer to you by your first names, and I don't mean any

7   disrespect.  It's just easier to differentiate you, if you

8   don't mind, if I call one of you Walter and the other

9   Tyreese.

10              DEFENDANT W. PUGH:  That would be fine with me.

11              THE COURT:  Is that all right with you, Tyreese?

12              DEFENDANT T. PUGH:  (Nodding affirmatively.)

13              THE COURT:  I received proposed questions from

14   Walter this morning.

15              Mike, either I misplaced it or I don't have it,

16   the list.

17              Let me go over these with you just to make sure

18   we understand them, because I like to incorporate, to the

19   extent I can, what is requested.  Your question number two:

20   Do you believe a person is innocent until proven guilty?

21   I'm going to use that.  I'm going to use your number three

22   and four.  Let's see.

23              I think we have reworded them just a little bit.

24   For number three, you had asked me to say:  Do you believe

25   that all law enforcement officers always tell the truth

1   under oath? And that's been modified to say: Does anyone

2   believe that law enforcement officers always tell the truth

3   under oath? Number four, you had: If perjury is proven on

4   a law enforcement officer who is under oath, should their

5   testimony be accepted? And we have reworded it just a

6   little bit. If you believe a law enforcement officer has

7   lied under oath, would you still accept his testimony as

8   true?

9           Your questions one and five, Walter, the first

10  question: Can you relate to the facts? I'm not sure what

11  you're trying to ask there. Can you explain that to me a

12  little more so I can get the sense of what you're trying to

13  find out?

14          DEFENDANT W. PUGH: In their dealings just on the

15  facts to the case, specifically facts to the case.

16          THE COURT: So are you asking them: Can you

17  understand the facts?

18          DEFENDANT W. PUGH: Yes, ma'am.

19          THE COURT: In other words, are you saying: When

20  you hear the testimony of witnesses, will you be able to

21  figure out the facts from what they're saying?

22          DEFENDANT W. PUGH: Yes, ma'am.

23          THE COURT: All right. I'm trying to think of an

24  artful way to and where I put it.

25          And then, Walter, your fifth question: Do you

```
 1   believe that all government decisions are correct?
 2             DEFENDANT W. PUGH:  Yes, ma'am.
 3             THE COURT:  Which government decisions are you
 4   talking about?  It's just too broad.  I don't think they're
 5   going to understand what you're asking.
 6             DEFENDANT W. PUGH:  This government, the United
 7   States attorney.
 8             THE COURT:  Which decisions?
 9             DEFENDANT W. PUGH:  As far as this case in
10   particular.  As far as this case, Judge.
11             THE COURT:  You mean in terms of charging you?
12             DEFENDANT W. PUGH:  Yes, ma'am.
13             THE COURT:  I think that one might be a little
14   misleading, because the charge is actually brought by the
15   grand jury.  It's by a vote and return of a grand jury that
16   an indictment is brought.  All that the U.S. Attorney's
17   Office does is present it to the grand jury.
18             DEFENDANT W. PUGH:  It's their decision to send
19   it to the grand jury, when, in fact, they knew that Walter
20   Pugh, Jr., that we don't get the law.  But other than that,
21   like, I'm thinking in reference, Judge, to them, concerning
22   them charging me with this charge, they are the ones who
23   took the charge from the FBI -- from the City of Hamilton.
24   The City of Hamilton was the first one to file the
25   complaint.  Then the government took it from the City of
```

1    Hamilton.

2            THE COURT:  All right.  I think -- let me see if

3    this will work.  What if I ask them, and I may have this in

4    the questions already.  I think what you're getting at is

5    that, just because a person has been indicted doesn't mean

6    that they're guilty of anything; the government has to

7    prove that beyond a reasonable doubt.  I would be glad to

8    ask that question.  And then I would say to the prospective

9    panel:  Do you all understand that an indictment is simply

10   a charge; it's no evidence of anything?  And you have to

11   find only from what you hear in the courtroom whether or

12   not the defendants are innocent or guilty.

13           DEFENDANT W. PUGH:  Accepted.

14           THE COURT:  All right.  Mike, did you get that?

15   Can you somehow or, Aly, reword that?

16           All right.  With regard to the other proposed

17   voir dire instructions, I have incorporated the

18   government's.

19           And I'm trying to remember, did we get some from

20   you as well, Mr. Felson?

21           MR. FELSON:  Yes, ma'am.

22           THE COURT:  I have incorporated those already.

23   What I could do, I could either distribute a set to you now

24   of what I'm going to ask, because it's kind of hard to go

25   back and figure out what I incorporated, or I could just

```
 1   let you object at the end of the voir dire.  Why don't we
 2   do that?  If there is anything that you feel I have left
 3   out that you think is important, when I have completed the
 4   initial round of voir dire, before we then take the
 5   prospective panel members individually, I'll ask you if
 6   there is anything additional that you want the Court to ask
 7   the prospective panel in voir dire.  How is that?
 8             MS. CROSS:  That would be fine, Judge.
 9             However we did receive Walter Pugh's proposed
10   voir dire questions, but we did not receive Tyreese Pugh's
11   proposed voir dire questions.
12             MR. FELSON:  I apologize.  We filed them, and I
13   thought we sent them down there.
14             MR. ANDREWS:  We received them.
15             MS. CROSS:  We did not receive them.
16             THE COURT:  I'm trying to recall how long they
17   are.  Have you got a set?  Are there any exhibits from the
18   defendants, or do I only have the government's exhibits
19   right now?
20             MS. CROSS:  We have it, Your Honor.
21             THE COURT:  Okay.  Great.  Okay.
22             Okay.  We have got some exhibits from Walter, and
23   we have just one set.  So, they're making additional sets
24   of that.
25             Mr. Felson, do we have any exhibits from Tyreese
```

```
 1   at this point?
 2              MR. FELSON:  Not any new ones.
 3              THE COURT:  You have given us nothing in addition
 4   to what we have from the motion to suppress in other words?
 5              MR. FELSON:  Wait a minute.  I filed Defendant
 6   Tyreese's proposed voir dire instructions.
 7              THE COURT:  I'm now talking about exhibits.
 8              MR. FELSON:  Exhibits, no.  I'm sorry.  The
 9   exhibits, only exhibits we have are Dr. Fulero's CV, and
10   that's it.  He's really our only witness.
11              THE COURT:  Do we have a copy of that?
12              MR. FELSON:  Sure.  It's been filed.
13              THE COURT:  It's been filed.  And that's going to
14   be an exhibit of yours?
15              MR. FELSON:  Right.
16              THE COURT:  We will get it marked, Steve, as an
17   exhibit and get some copies of that.
18              All right.  Next, let me deal with the motion on
19   the stun belt.  I need to borrow my notebook back for that.
20   All right.  The Court received a motion that was filed on
21   August 30th from Defendant Walter Pugh captioned "Motion to
22   Challenge Court's Decision to Make Defendant Wear a Stun
23   Belt or Ankle Shackles During Court Proceedings and Trial."
24   And the Court also received the United States' response to
25   the defendant's motion to prevent use of a stun belt, which
```

```
 1   was filed today, and attached to that was a declaration of
 2   Chris Riley, the supervisory deputy United States Marshal.
 3            Is there anything further on that motion before
 4   the Court rules on it?
 5            MR. FELSON:  First of all, Tyreese Pugh is not
 6   joining in on that motion.
 7            THE COURT:  So it's just Walter Pugh's motion.
 8            Anything further on that before the Court rules?
 9            DEFENDANT W. PUGH:  No, ma'am.
10            THE COURT:  Then the Court has prepared an order
11   in response to your motion and the government's response.
12   And the Court is going to deny the motion.  Rather than
13   read the Court's order, which is about four pages long,
14   into the record, I'm going to have Mr. Snyder -- can you
15   distribute copies to the parties right now?  Aly's got
16   them.
17            (Mr. Snyder distributing documents to parties.)
18            THE COURT:  Okay.  I think that pretty much takes
19   care of everything.  Is there anything else we need to
20   discuss before we bring the prospective panel in?
21            MS. CROSS:  Your Honor, just a couple things on
22   behalf of the United States.  First of all, Your Honor, I
23   just wanted to advise the Court that Special Agent Terry
24   Moran may be walking from counsel table periodically to
25   make sure our witnesses are prepared before we call them.
```

| | |
|---|---|
| 1 | THE COURT: That's fine. I have no problem with |
| 2 | anybody, of course, except for the defendants, anybody |
| 3 | getting up from counsel table during the course of the |
| 4 | proceedings and going out. That's fine with me. You don't |
| 5 | have to ask permission or anything. |
| 6 | MS. CROSS: Your Honor, for the record, we have |
| 7 | provided Jencks material and Giglio information on the |
| 8 | witnesses yesterday of the witnesses that we intend to call |
| 9 | today. We made the request on the record for reverse |
| 10 | Jencks and Giglio when the defendants' case, they get ready |
| 11 | to present their case. |
| 12 | Your Honor, after the United States rests and |
| 13 | prior to the defendants putting on their defenses, the |
| 14 | United States would ask for a preliminary ruling as to the |
| 15 | use of prior convictions to impeach the defendants should |
| 16 | they testify. |
| 17 | THE COURT: All right. |
| 18 | MS. CROSS: And then, finally, Your Honor, |
| 19 | regarding the handling of exhibits during the course of the |
| 20 | trial, how would you like -- you explained to us during the |
| 21 | pretrial conference how you wanted us to do that. We did |
| 22 | have a question regarding photographs. There will be |
| 23 | several photographs introduced where the bank tellers will |
| 24 | discuss where they were standing during the course of the |
| 25 | bank robbery. The jury will not be able to see that during |

1  the course of their testifying.

2  THE COURT: Okay. Mr. Snyder brought this up

3  with me in chambers this morning, that it sounds like

4  everyone wants to use the visualizer. Is that correct?

5  Nobody has any objection?

6  Do you know what a visualizer is? It's like an

7  overhead projector. What it is, it's a camera that takes a

8  picture of a document or object and projects it up on a

9  screen. So once I allow a document to come in evidence,

10  while the witness is looking at the document or object, it

11  can be projected up on the screen so the jury can see it at

12  the same time. It presents the testimony a little better.

13  In the old days when I first started as a trial

14  lawyer when we didn't have copying machines like we do now,

15  we would have to stop the proceedings, and they would pass

16  photographs to each one of the jurors. So you would have

17  to sit there while 12 different people looked at it. Now

18  we have got a little more modern with our technology, and

19  we can project it up on a screen and show it to everybody

20  at the same time.

21  Does anybody want to use the visualizer?

22  MS. CROSS: The United States would like to.

23  THE COURT: All right. Mr. Felson and Mr. Pugh

24  or Mr. Andrews, Walter Pugh, if you need any instructions

25  in how to use it, Mr. Snyder will be glad to do that after

```
1   we impanel the jury this morning.
2           Okay.  Stipulations.  What -- I just want to make
3   sure we're all on the same page about stipulations.  Does
4   somebody have stipulations for me here?  Why don't I have
5   the government tell me?  Let's start with the government.
6   Tell me how many stipulations you think we have and what
7   they are, and then I'll see if the defendants agree with
8   that.
9           MS. CROSS:  Your Honor, we have a total of three
10  stipulations.  Two stipulations refer to the FDIC.
11          THE COURT:  Are those marked as exhibits?
12          MS. CROSS:  Yes, they are.  3-A, which has Walter
13  Pugh's signature on the stipulation to the FDIC elements,
14  and 3-B, which is Tyreese Pugh's signature to the
15  stipulation regarding the FDIC elements.
16          THE COURT:  Wait a minute.  For some reason, in
17  my book I have only got 3-A.
18          MS. CROSS:  Mr. Snyder, I believe, has 3-B.
19          THE COURT:  I only have 3-A in mine.
20          THE COURTROOM DEPUTY:  I have the copies of 3-B.
21          MS. CROSS:  They were just signed this morning,
22  Your Honor.
23          THE COURT:  Okay.  Great.  All right.  And the
24  third stipulation, Ms. Cross?
25          MS. CROSS:  The third stipulation is Exhibit 21,
```

```
 1   and that's Mr. Tyreese Pugh's stipulation regarding his
 2   prior conviction.
 3               THE COURT:  Mr. Felson or Walter, anything
 4   regarding stipulations that we missed?
 5               MR. FELSON:  Not from me.
 6               THE COURT:  When do you want the stipulations
 7   read to the jury?  Do you want them put in the jury
 8   instructions?  How do you want them used?
 9               MS. CROSS:  Your Honor, it is my practice and I'm
10   more comfortable if it's read into the record at some point
11   in our case in chief.
12               THE COURT:  I'll tell you what.  Why don't you
13   just prompt me whenever you want it read, and I'll read it
14   then.
15               Anything I'm forgetting housekeeping-wise?
16               MR. FELSON:  Judge, one thing -- Judge, let me
17   make this point.  Dr. Fulero, my one witness, indicates he
18   is testifying on Wednesday in another matter.  He's free to
19   testify anytime Friday, but I'm not exactly sure.  I'm
20   assuming Friday sounds about right, but I just wanted to
21   let you know that's when he's free.  And maybe you want to
22   hopefully assist, help me out as much as you can to get him
23   in here on Friday.  If something happens and maybe Thursday
24   would be more appropriate, tell me as early as you can, and
25   I'll try to get him in early.
```

1           THE COURT:  I don't have any problem with taking

2    him out of order, as long as we're not, you know, as long

3    as it seems a fair flow to the case.  And that might be

4    something you might want to talk to the U.S. Attorney's

5    Office about.

6           What I will do with you at the end of each day is

7    figure out where we are and how many more witnesses the

8    government has and what it intends to cover the next day so

9    we can all have a sense of where we are timing-wise.

10           If there is anything else I can do to assist in

11    that regard, don't hesitate to let the Court know.

12           What do we need to do now to bring in the panel?

13           THE COURTROOM DEPUTY:  Just recess the Court for

14    a few minutes and call them in.

15           THE COURT:  All right.  We're going to recess

16    then for a short period of time so that we can get the

17    prospective panel members in here.

18           (Recess at 10 o'clock a.m.)

19                        AFTER RECESS

20           (Prospective jury panel present.)

21           THE COURTROOM DEPUTY:  The case is CR-1-02-54,

22    United States of America v. Walter Pugh and Tyreese Pugh.

23           THE COURT:  Good morning to everyone.

24           First, can everyone hear me?  If at any point in

25    time you have any problems hearing me, just hold up your

1    hand and let me know, and we'll do something about it.

2              I want to welcome all of you here and thank you

3    for coming this morning.  I realize that being here may

4    present some degree of inconvenience for all of you, but I

5    assure you that your presence is of the utmost importance

6    for the proceedings that are to begin here today.

7              As you have just heard, I am Susan Dlott, one of

8    the judges of this court, and at this time I would like to

9    introduce to you the other personnel of the court who are

10   here with me in the courtroom.

11             To my left here is Steve Snyder, my courtroom

12   deputy.  He administers the oath to prospective jurors, to

13   those selected to serve on the jury, and to witnesses.  He

14   takes custody of exhibits during the course of the trial,

15   and he opens, recesses and adjourns the court.

16             Right down here in front of me is my court

17   reporter, Betty Schwab, who takes down every word spoken

18   during the course of the proceedings by stenotype machine.

19             My two law clerks, Mike Rich and Aly Stang, will

20   assist me with necessary legal research.  In a few minutes,

21   I'm going to introduce to you the other persons seated at

22   the counsel tables in front of the bench.

23             You're here today as prospective jurors in the

24   case of United States of America versus Walter M. Pugh, Jr.

25   and Tyreese D. Pugh.  This case is expected to take about

1   four days to try. Court generally starts at nine a.m., and
2   we try to end sometime between 4:30 and five p.m. We take
3   a lunch break generally from about noon to 1:30, and we
4   have two 15-minute breaks, one in the morning and one in
5   the afternoon.

6           The defendants, Walter Pugh, Jr., and Tyreese
7   Pugh, are charged in this case in a five-count indictment.
8   Count one charges both defendants with conspiring to take
9   by force or violence money belonging to a bank whose
10  deposits were then insured by the Federal Deposit Insurance
11  Corporation and, in committing such offense, were
12  assaulting or putting in jeopardy the life of another
13  person by use of a dangerous weapon.

14          Count two charges both defendants with taking by
15  force or violence money belonging to a bank whose deposits
16  were then insured by the Federal Deposit Insurance
17  Corporation and, in committing such offense, were
18  assaulting or putting in jeopardy the life of another
19  person by use of a dangerous weapon.

20          Court three charges Defendant Walter M. Pugh, Jr.
21  with knowingly using, carrying and brandishing a firearm
22  during a crime of violence for which he may be prosecuted
23  in a court of the United States.

24          Count four charges Defendant Tyreese D. Pugh with
25  knowingly using, carrying and brandishing a firearm during

1   a crime of violence for which he may be prosecuted in a
2   court of the United States.

3          And count five charges the defendant Tyreese D.
4   Pugh with knowing possession in and affecting commerce with
5   a firearm while he was a convicted felon.

6          Both defendants have pled not guilty to all of
7   these charges.

8          I'm now going to explain to you the process known
9   as voir dire by which we will determine which 14 of you
10  will be chosen to sit as jurors in this case.  Those of you
11  who are chosen as jurors will have an indispensable and
12  unique function to perform.  You will be carrying out a
13  mandate of the United States Constitution which states that
14  any person accused of a crime is entitled to a fair trial
15  by an impartial jury.  Thus, under our Constitution, it
16  will be up to you to decide the outcome of this case.  Not
17  only is your presence here a necessity, but also an
18  opportunity for you as citizens to participate in a
19  function of the government of this country that is
20  fundamental to our democratic process.

21         The process of voir dire requires the Court to
22  ask you questions to determine whether you should
23  participate as a juror in this case or whether it would be
24  better to excuse you from service in this particular case.
25         Although the words "voir dire" literally mean to

```
1    see and to say, they have come to mean to speak the truth.
2    And that is what exactly what you must do in response to
3    the questions posed by the Court.  You must speak the
4    truth.  If giving answers to some of the questions in open
5    court makes you uncomfortable, the courtroom deputy,
6    Mr. Snyder, and I will note your juror number and the
7    question, and you can answer the question a little later in
8    private.
9                Before we begin voir dire, I want to introduce to
10   you the parties you will be seeing in this case.
11   Representing the United States today are Wendy C. Cross and
12   Amul Thapar, who are both assistant United States
13   attorneys.  At counsel table with Ms. Cross and Mr. Thapar
14   is Terry Moran who is a special agent with the Federal
15   Bureau of Investigation.
16               One of the defendants in this case is Tyreese
17   Pugh.
18               Mr. Pugh, would you stand?
19               And representing Defendant Tyreese Pugh is
20   attorney Edward Felson.
21               The other defendant in this case is Walter Pugh,
22   Jr.  Mr. Walter Pugh is representing himself.
23               At counsel table with him is his attorney
24   advisor, J. Robert Andrews.
25               Thank you, gentlemen.
```

1        At this time, I'm going to ask the courtroom
2    deputy to administer the oath to the prospective jurors.
3    This oath is simply to make certain that your answers to
4    our questions are complete and truthful.  Would all
5    prospective jurors please rise and take the oath on voir
6    dire?

7        (Oath administered to the prospective jurors by
8    the courtroom deputy.)

9        THE COURT:  Now that you have been sworn in,
10   we're about to begin the voir dire, the process by which
11   the jury will be chosen.  The process is simple enough.  I
12   will ask you questions to make sure you have no bias or
13   prejudice for or against either side.  As I told you, some
14   of the questions may be a little personal.  Please do not
15   take offense at such questions.  It may be necessary to
16   inquire into areas about which you're sensitive in order to
17   determine your ability to be fair and impartial.

18       Remember that "voir dire" means to speak the
19   truth.  If your answer to a question indicates that you
20   might have a bias, please do not hesitate to answer that
21   question truthfully.  Your own desire to participate in
22   this case cannot outweigh the fact that the fairness and
23   impartiality of each juror is crucial to a fair trial.

24       The questions will be addressed to everyone.
25   After I have questioned, we will take a recess while the

1  parties confer with me.  Mr. Snyder will then announce the

2  numbers of you who will be excused.  If you're not chosen

3  for this jury, you must understand that it is not a

4  reflection on your character, your integrity or your

5  fitness to serve.  Each side is afforded an opportunity to

6  excuse jurors for any reason or for no reason at all.  So,

7  if you are excused, please do not feel slighted or

8  offended.

9            Once we have seated 14 jurors, we will have our

10  jury, and these 14 people will be sworn in to jury duty.

11            As I have just told you, the government is

12  represented by Wendy C. Cross and Amul Thapar, assistant

13  United States attorneys who work at the United States

14  Attorney's Office in Cincinnati.  Seated at counsel table

15  with Ms. Cross and Mr. Thapar is Terry Moran, a special

16  agent with the Federal Bureau of Investigation.

17            Does any panel member know Ms. Cross, Mr. Thapar

18  or Mr. Moran?

19            Does any prospective juror know anyone who works

20  for the United States Attorney's Office in Cincinnati or

21  the Cincinnati Office of the Federal Bureau of

22  Investigation, called the FBI?

23            Yes, sir.  Could I have your juror number?

24            A PROSPECTIVE JUROR:  043.

25            THE COURT:  What I'm going to ask you to do when

1    you answer these questions is to stand.  It might feel like

2    we're back in elementary school, but it makes it easier for

3    me to see you and to hear you and for everybody else, and

4    especially for my court reporter to get down what you say.

5              You're 34?

6              A PROSPECTIVE JUROR:  No.  I'm 043.

7              THE COURT:  043, okay.  I transposed it.  Let's

8    see.  You're in the second row.  Okay.  Yes, sir?  Who do

9    you know?

10             A PROSPECTIVE JUROR:  I have a nephew in the FBI.

11             THE COURT:  In the Cincinnati office?

12             A PROSPECTIVE JUROR:  Cincinnati.

13             THE COURT:  And have you ever met Mr. Moran

14   before?

15             A PROSPECTIVE JUROR:  No, I haven't.

16             THE COURT:  How long has your nephew been in the

17   FBI office in Cincinnati?

18             A PROSPECTIVE JUROR:  He's recently been promoted

19   to the Terrorist Task Force.  I really don't know how long.

20   I just found out.

21             THE COURT:  How long has he been an agent?

22             A PROSPECTIVE JUROR:  How long has he been an

23   agent?

24             THE COURT:  Yes.

25             A PROSPECTIVE JUROR:  I'd say not long, less than

```
1    a year.
2              THE COURT:  Okay.  You have heard that this case
3    involves the FBI.  Would the fact that your nephew is an
4    FBI agent in any way make it difficult for you to hear and
5    consider the evidence and render a fair and impartial
6    verdict?
7              A PROSPECTIVE JUROR:  No, Your Honor.
8              THE COURT:  Do you feel you'll be biased or
9    prejudiced in any way for some witnesses from the FBI who
10   testify?
11             A PROSPECTIVE JUROR:  No, I don't.
12             THE COURT:  Okay.  Thank you, sir.
13             Anyone else in response to that question?
14             All right.  And I apologize if it takes a little
15   bit of time in between questions, but I'm just writing down
16   some of the responses.
17             At the next table is the first defendant or one
18   of the defendants in this case, Tyreese Pugh.  And seated
19   with him at counsel table is his attorney, Edward Felson.
20   Mr. Felson practices law with Stephen R. Felson.  Also
21   seated at that table is the other defendant in this case,
22   Walter Pugh, Jr.  And seated with him at counsel table is
23   J. Robert Andrews, his legal advisor, who is a partner in
24   the law firm of Schuh and Goldberg, LLP.
25             Does any prospective juror know either defendant,
```

```
 1  Mr. Felson or Mr. Andrews?
 2              Does any prospective juror know anyone who works
 3  for Edward Felson, Stephen Felson or the law firm of Schuh
 4  and Goldberg?
 5              Okay.  Yes, ma'am?  Could I have your number?
 6              A PROSPECTIVE JUROR:  39.
 7              THE COURT:  Okay.  Yes?
 8              A PROSPECTIVE JUROR:  I know Steve Felson.
 9              THE COURT:  You know Steve Felson?
10              A PROSPECTIVE JUROR:  (Nodding affirmatively.)
11              THE COURT:  As you may have guessed, Steve Felson
12  and Edward Felson are brothers.
13              A PROSPECTIVE JUROR:  I know.
14              THE COURT:  How well do you know him?
15              A PROSPECTIVE JUROR:  He was ahead of me in high
16  school.  I knew him in high school.
17              THE COURT:  He was ahead's of you in high school?
18              A PROSPECTIVE JUROR:  I know him.
19              THE COURT:  Would the fact that you know the
20  brother of one of the attorneys in this case have any
21  effect on your ability to render a fair and impartial
22  verdict?
23              A PROSPECTIVE JUROR:  No, Your Honor.
24              THE COURT:  Okay.  Thank you.
25              Yes, ma'am?
```

```
1                    A PROSPECTIVE JUROR: 046.

2                    THE COURT: Yes, ma'am?

3                    A PROSPECTIVE JUROR: Which Goldberg is that?

4                    THE COURT: That's a good question. I don't

5       know. Let me ask Mr. Andrews.

6                    MR. ANDREWS: Richard Goldberg.

7                    A PROSPECTIVE JUROR: Yes. Richard, his wife is

8       my cousin.

9                    THE COURT: Okay. Do you know Mr. Andrews?

10                   A PROSPECTIVE JUROR: No.

11                   THE COURT: Okay. Would the fact that he's in a

12      law firm with a relative of yours have any effect on your

13      ability to render an impartial verdict in this case?

14                   A PROSPECTIVE JUROR: No.

15                   THE COURT: Thank you, ma'am.

16                   Anyone else?

17                   The following persons may be called as witnesses

18      in this case. James Connaughton, Donna Caudell, Jenny

19      Tettenhorst, Pam Philpot, Robert Wolfe, James Calhoun,

20      Robert Payne, Bessie Pew, Stephanie Luster, Matthew

21      Wittich, James Cifuentes, Jim Colwell, Gwen Gregory,

22      Shanell Holston and Soloman Fulero.

23                   Is any prospective juror related to any of the

24      individuals I have just named?

25                   Is any prospective juror personally acquainted
```

1    with any of these persons, or do you have any knowledge of
2    them directly or indirectly through your social, business
3    or professional lives?

4         All right.  The indictment sets forth the
5    following charges against the defendants, that both
6    defendants conspired to take by force and violence on or
7    about April 24, 2002, monies belonging to the First
8    National Bank of Southwestern Ohio located in Hamilton,
9    Ohio, whose deposits were then insured by the Federal
10   Deposit Insurance Corporation and, in committing such
11   offense, assaulting or putting in jeopardy the life of
12   another person by use of a dangerous weapon.

13        It also charges that both defendants took by
14   force or violence on or about April 24, 2002, monies
15   belonging to the First National Bank of Southwestern Ohio,
16   which is located in Hamilton, Ohio, and whose deposits were
17   then insured by the Federal Deposit Insurance Corporation
18   and, in committing such offense, assaulting or putting in
19   jeopardy the life of another person by use of a dangerous
20   weapon.

21        It also charges that Defendant Walter M. Pugh,
22   Jr., knowingly used, carried and brandished a firearm
23   during a crime of violence for which he may be prosecuted
24   in a court of the United States and that Defendant Tyreese
25   D. Pugh knowingly used, carried and brandished a firearm

```
 1   during a crime of violence for which he may be prosecuted
 2   in a court of the United States and, finally, that
 3   Defendant Tyreese D. Pugh knowingly possessed in and
 4   affecting commerce a firearm while he was a convicted
 5   felon.
 6             And, again, I want to emphasize that the
 7   defendants have both pled not guilty to all the counts
 8   against them.
 9             Does any prospective juror have prior knowledge
10   or information about the offenses the defendants are
11   charged with?  And this includes anything that you might
12   have heard from personal contacts or from the media.
13   Anybody know anything about this case?
14             Does any prospective juror maintain an account or
15   have a financial interest in the First National Bank of
16   Southwestern Ohio which is located in Hamilton, Ohio?
17             Okay.  I see a couple hands.  I think first hand
18   is maybe the gentleman in the second row.
19             Could I have your number, sir?
20             A PROSPECTIVE JUROR:  056.
21             THE COURT:  I'm sorry?
22             A PROSPECTIVE JUROR:  056.
23             THE COURT:  I can't hear.
24             A PROSPECTIVE JUROR:  56.
25             THE COURT:  Yes.  Could you tell me, do you have
```

```
1    a bank account there?
2                 A PROSPECTIVE JUROR:  Checking account.
3                 THE COURT:  A checking account?
4                 A PROSPECTIVE JUROR:  Yes.
5                 THE COURT:  Okay.  And anything else that you
6    have at that bank?
7                 A PROSPECTIVE JUROR:  No.
8                 THE COURT:  Do you live in Hamilton?
9                 A PROSPECTIVE JUROR:  I used to.
10                THE COURT:  I'm sorry?
11                A PROSPECTIVE JUROR:  I used to.  I'm in Mt.
12   Healthy now.
13                THE COURT:  Where do you live now?
14                A PROSPECTIVE JUROR:  Mt. Healthy.
15                THE COURT:  As you have heard me mention, and
16   I'll ask this question to everyone who has any connection
17   to the bank, you have heard that the bank that was --
18   experienced the bank robbery in this case is the First
19   National Bank of Southwestern Ohio.  Would the fact that
20   you have an account there in any way affect your ability to
21   be a fair and impartial juror in this case?
22                A PROSPECTIVE JUROR:  No.
23                THE COURT:  Thank you, sir.
24                I saw a few more hands.  Yes, ma'am?
25                A PROSPECTIVE JUROR:  015.
```

```
1                    THE COURT:  Yes?
2                    A PROSPECTIVE JUROR:  I have personal checking
3    and then a business line of credit there.
4                    THE COURT:  Okay.  And do you live in Hamilton?
5                    A PROSPECTIVE JUROR:  Actually, I live in the
6    township.
7                    THE COURT:  Is that close to Hamilton?
8                    A PROSPECTIVE JUROR:  Yes.  It's fairly close,
9    yes.
10                   THE COURT:  Same question for you.  As I
11   mentioned, this case involves the First National Bank of
12   Southwestern Ohio.  Would the fact that you have a banking
13   relationship with them in any way affect your ability to be
14   a fair and impartial juror in this case?
15                   A PROSPECTIVE JUROR:  (Shaking head negatively.)
16                   THE COURT:  Thank you, ma'am.
17                   I'm sorry.  I missed you.
18                   A PROSPECTIVE JUROR:  I didn't raise my hand.
19                   THE COURT:  Could you give your number first?
20                   A PROSPECTIVE JUROR:  004.
21                   THE COURT:  Hang on just one second.  It takes me
22   a little while to find everybody by numbers.  Okay.  Got
23   you.
24                   A PROSPECTIVE JUROR:  Referring to an earlier
25   question.
```

```
 1                    THE COURT:  Um-hum.
 2                    A PROSPECTIVE JUROR:  Upon reflection, I think I
 3    may know one of the prospective witnesses.
 4                    THE COURT:  Okay.  Do you remember which witness
 5    it was?  Do you want me to go over the list again?
 6                    A PROSPECTIVE JUROR:  James Cifuentes.
 7                    THE COURT:  And how do you know him?
 8                    A PROSPECTIVE JUROR:  I just remember the name.
 9    I think he may have been a former student of mine.
10                    THE COURT:  And he is expected to be a witness
11    here.  Would the fact that you -- let me back up.  Is that
12    the only relationship that you had with him is as a
13    student?
14                    A PROSPECTIVE JUROR:  Yes, ma'am.
15                    THE COURT:  May I ask you, where do you teach, or
16    where did you teach when you had Mr. Cifuentes?
17                    A PROSPECTIVE JUROR:  Shall I reveal that actual
18    location?
19                    THE COURT:  Why don't you just tell me is it a
20    high school, college?
21                    A PROSPECTIVE JUROR:  High school.
22                    THE COURT:  And how long ago would it have been
23    that you taught him?
24                    A PROSPECTIVE JUROR:  I just, you know, remember
25    the name.  So it was years ago.  I'll guess maybe 15.  It's
```

```
 1   a guess.  I've been doing this a long time.
 2               THE COURT:  Assuming it's the same James
 3   Cifuentes, would the fact that you knew him in your
 4   professional life in the past have any ability to -- I'm
 5   sorry -- have any effect on your ability to render a fair
 6   and impartial verdict in this case?
 7               A PROSPECTIVE JUROR:  No, it would not.
 8               THE COURT:  Can you put aside the fact that you
 9   may know Mr. Cifuentes and decide this case solely on the
10   evidence that will be presented in the courtroom and the
11   instructions that I will give you?
12               A PROSPECTIVE JUROR:  Yes, I can.
13               THE COURT:  Thank you, sir.
14               Anyone else?  Yes, sir?
15               A PROSPECTIVE JUROR:  I'm juror 037.
16               THE COURT:  Okay.
17               A PROSPECTIVE JUROR:  On your last question about
18   I have a savings account at First National.
19               THE COURT:  Okay.  Do you live in Hamilton?
20               A PROSPECTIVE JUROR:  Yes.
21               THE COURT:  Okay.  And same question to you.
22   Would the fact that you have a banking relationship with
23   the bank in any way affect your ability to be a fair and
24   impartial juror in this case?
25               A PROSPECTIVE JUROR:  No, I don't think so.
```

```
1                    THE COURT:  Thank you.

2                    Anyone else?  I think I saw one more hand.

3               Yes, sir?

4                    A PROSPECTIVE JUROR:  019.  I have a savings and

5    checking account at First National, and I also have

6    accounts for my children.

7                    THE COURT:  Okay.  And same question to you.

8    Would anything about that fact affect your ability to be a

9    fair and impartial juror in this case?

10                   A PROSPECTIVE JUROR:  No, Your Honor.

11                   THE COURT:  Thank you, sir.  Anybody else?

12                   And, by the way, what that one juror did, he

13   remembered a question I previously asked, and that jogged

14   his memory, and that took a few moments.  That's very

15   natural.  So if I ask you a question and it all of a sudden

16   dawns on you that you might answer that positively, don't

17   hesitate to raise your hand and let me know.  That's real

18   common.  I'm asking you about things you have done in the

19   past and they may not be at the top of your recollection.

20                   Okay.  Does any prospective juror have any

21   personal interest -- yes, sir?

22                   A PROSPECTIVE JUROR:  Me again.

23                   THE COURT:  Give me your number once more.

24                   A PROSPECTIVE JUROR:  004.  I have also

25   remembered something else.  I have power of attorney for my
```

1    mother, and she has an account at First National of
2    Southwestern Ohio.
3             THE COURT:  Okay.  Same question.  Would anything
4    about that affect your ability to be a fair and impartial
5    juror in this case?
6             A PROSPECTIVE JUROR:  No, not at all.
7             THE COURT:  Okay.  Thank you very much.
8             Does any prospective juror have any personal
9    interest of any kind in this case or in the defendants, or
10   do you know anyone who may have a special interest?
11            If any prospective juror here has served as a
12   juror before in federal or state court, either in a civil
13   or criminal case and regardless of the outcome of that
14   case, would anything about your prior experience as a juror
15   have any effect or influence on your ability to serve as a
16   fair and impartial juror in this case?  In other words, if
17   you have served as a juror in another case and you had a
18   bad experience that would prevent you from being a fair and
19   impartial juror here, I would like to hear about it.
20            Okay.  Has any prospective juror been involved in
21   a criminal proceeding in any capacity, for example, as a
22   witness or a charged party?
23            Yes, ma'am.  Your number?
24            A PROSPECTIVE JUROR:  002.
25            THE COURT:  Yes?

```
1              A PROSPECTIVE JUROR:  I was a plaintiff, although
2    I did not testify, in a --
3              THE COURT:  Would this have been a civil case?
4    Was it about money?
5              A PROSPECTIVE JUROR:  No.  It was a robbery.  I'm
6    not sure if it went to the federal level, but a $6,000 home
7    robbery case.
8              THE COURT:  All right.  Did you end up being a
9    witness?
10             A PROSPECTIVE JUROR:  No.
11             THE COURT:  Okay.  And I take it your home was
12   robbed.
13             A PROSPECTIVE JUROR:  Correct.
14             THE COURT:  And would anything about that
15   experience or the experience that you had with the criminal
16   justice system as a result of that affect your ability to
17   be a fair and impartial juror in this case?
18             A PROSPECTIVE JUROR:  No, it would not.
19             THE COURT:  Thank you, ma'am.
20             Anyone else?
21             Has any member of your immediate family ever been
22   convicted of a serious crime?
23             Yes, sir?
24             A PROSPECTIVE JUROR:  022.
25             THE COURT:  Yes, sir?
```

```
1              A PROSPECTIVE JUROR:  My brother was in the
2    federal penitentiary at Manchester, Kentucky, for armed
3    robbery and kidnap.
4              THE COURT:  Okay.  And as you heard, the charges
5    in this case are robbery as well.  Would anything about the
6    fact that the defendants in this case are charged with a
7    crime similar to the crime that your brother was convicted
8    of prevent you from being a fair and impartial juror?
9              A PROSPECTIVE JUROR:  No, Your Honor.
10             THE COURT:  Do you feel that you could decide
11   this case solely on the evidence that is presented here in
12   the courtroom and the instructions I give you?
13             A PROSPECTIVE JUROR:  Yes, Your Honor.
14             THE COURT:  Okay.  Thank you, sir.
15             Anyone else?  Sorry I missed some hands.  Okay.
16             A PROSPECTIVE JUROR:  023.
17             THE COURT:  Yes?
18             A PROSPECTIVE JUROR:  I have two brothers in jail
19   on robbery.
20             THE COURT:  Okay.  And do you know -- do you know
21   is it federal or state prison?
22             A PROSPECTIVE JUROR:  No.
23             THE COURT:  Okay.
24             A PROSPECTIVE JUROR:  I think from, like, robbing
25   somebody in a car or whatever.
```

|    |                                                               |
|----|---------------------------------------------------------------|
| 1  | THE COURT: Same question that I asked that                    |
| 2  | gentleman. Would the fact that your brothers were charged     |
| 3  | with a crime similar to the crime that these defendants are   |
| 4  | charged with have any effect on your ability to render a      |
| 5  | fair and impartial verdict in this case?                      |
| 6  | A PROSPECTIVE JUROR: No, Your Honor.                          |
| 7  | THE COURT: Can you put aside any feelings that                |
| 8  | you may have about that and decide this case solely on the    |
| 9  | evidence that you hear here in the courtroom and the          |
| 10 | instructions that I give you?                                 |
| 11 | A PROSPECTIVE JUROR: Yes.                                     |
| 12 | THE COURT: Thank you, ma'am.                                  |
| 13 | Yes, sir?                                                     |
| 14 | A PROSPECTIVE JUROR: 027.                                     |
| 15 | THE COURT: Yes, sir?                                          |
| 16 | A PROSPECTIVE JUROR: I have a younger brother                 |
| 17 | that was convicted of possession and sale of hashish about    |
| 18 | 20 years ago.                                                 |
| 19 | THE COURT: Okay. And anything about that brush               |
| 20 | with the criminal justice system affect your ability to       |
| 21 | render a fair and impartial verdict in this case?             |
| 22 | A PROSPECTIVE JUROR: I don't think so.                        |
| 23 | THE COURT: Do you feel that you can decide this               |
| 24 | case solely on the evidence that is presented here in the     |
| 25 | courtroom and the instructions that I give you?               |

```
1                  A PROSPECTIVE JUROR:  Yes.
2                  THE COURT:  Thank you, sir.
3                  I see a hand way in the back.
4                  A PROSPECTIVE JUROR:  053.
5                  THE COURT:  Hang on one second.  Let me just find
6     you.  Okay?
7                  A PROSPECTIVE JUROR:  My father is in prison.
8                  THE COURT:  Your father?
9                  A PROSPECTIVE JUROR:  Yes.
10                 THE COURT:  Do you know what it's for?
11                 A PROSPECTIVE JUROR:  A form of embezzlement.
12                 THE COURT:  All right.  And same question to you.
13    As a result of that experience with the criminal justice
14    system, do you feel that would affect your ability in any
15    way to be a fair and impartial juror in this case?  Is that
16    a "no"?
17                 A PROSPECTIVE JUROR:  No.
18                 THE COURT:  Could you decide this case solely on
19    the evidence that is presented here in the courtroom and
20    the instructions that I give you?
21                 A PROSPECTIVE JUROR:  Yes.
22                 THE COURT:  Do you know if that charge was
23    federal or state?
24                 A PROSPECTIVE JUROR:  I believe it's state.
25                 THE COURT:  Okay.  Thank you very much.
```

```
 1                  Anybody else?
 2                  All right.  Are you or is any member of your
 3   immediate family a member of a law enforcement agency, for
 4   example, police department, county sheriff, state highway
 5   patrol, military police or any other federal law
 6   enforcement agency, either at the present time or in the
 7   past?  Okay.
 8                  A PROSPECTIVE JUROR:  022.
 9                  THE COURT:  Number?
10                  A PROSPECTIVE JUROR:  022.
11                  THE COURT:  Yes, sir?
12                  A PROSPECTIVE JUROR:  My cousin is a policeman in
13   the city of Springfield.
14                  THE COURT:  Springfield?
15                  A PROSPECTIVE JUROR:  Yes.
16                  THE COURT:  Ohio?
17                  A PROSPECTIVE JUROR:  Correct.
18                  THE COURT:  And I'm going to ask everybody again
19   the same question.  Would -- well, let me back up.  Are you
20   close with the cousin?  Do you discuss business with him at
21   all?
22                  A PROSPECTIVE JUROR:  No.
23                  THE COURT:  Okay.  Would anything about the fact
24   that your cousin is involved in law enforcement, since this
25   matter is a criminal case, affect your ability to render a
```

```
 1   fair and impartial verdict?
 2              A PROSPECTIVE JUROR:  No, Your Honor.
 3              THE COURT:  Okay.  Thank you, sir.
 4              I know I saw a few more hands.  Yes, sir, in the
 5   first row there?
 6              A PROSPECTIVE JUROR:  037.  My father-in-law and
 7   brother-in-law are on the Hamilton Police Department.
 8              THE COURT:  Okay.  Hamilton, Ohio?
 9              A PROSPECTIVE JUROR:  Yes.
10              THE COURT:  And that's your father and
11   brother-in-law?
12              A PROSPECTIVE JUROR:  (Nodding affirmatively.)
13              THE COURT:  There will be testimony in this case
14   that this case was investigated, along with the FBI, by the
15   Hamilton Police Department, and I believe that at least one
16   of the witnesses that's testifying is going to be an
17   officer or detective from the Hamilton Police Department.
18   Would anything about the fact that this case was
19   investigated by and that some of the witnesses will be part
20   of the Hamilton Police Department affect your ability to be
21   a fair and impartial juror?
22              A PROSPECTIVE JUROR:  Yes.  I think it could.
23              THE COURT:  Okay.  Thank you, sir.  I appreciate
24   your candor.
25              Okay.  Anybody else?  I'm sorry I missed people
```

```
 1    here.  I missed somebody in the box.  Let me go to the box,
 2    and then I'll go back to the first row.
 3                A PROSPECTIVE JUROR:  017.  My husband was a
 4    military police in the army in the late '50s.
 5                THE COURT:  Okay.  Have you discussed his
 6    experiences with him?
 7                A PROSPECTIVE JUROR:  Never.
 8                THE COURT:  Was that before you met him?
 9                A PROSPECTIVE JUROR:  Yes.
10                THE COURT:  Okay.  So would anything about that
11    fact affect your ability to be a fair and impartial juror
12    in this case?
13                A PROSPECTIVE JUROR:  No.
14                THE COURT:  Thank you.
15                The lady in the blue in the first row.
16                A PROSPECTIVE JUROR:  044.  My father was a
17    police officer with Union Township.
18                THE COURT:  I'm sorry?
19                A PROSPECTIVE JUROR:  With Union Township.
20                THE COURT:  Union Township.  Is he still a police
21    officer?
22                A PROSPECTIVE JUROR:  No.  He actually passed
23    away when I way a kid, so I don't know anything about it.
24                THE COURT:  Would anything about that fact that
25    your father was in law enforcement affect your ability to
```

```
 1   be a fair and impartial juror?
 2              A PROSPECTIVE JUROR:  No.
 3              THE COURT:  Thank you.
 4              Another couple hands.  Let's take the second row
 5   there.  Yes, sir?
 6              A PROSPECTIVE JUROR:  043.  I have a nephew in
 7   the Covington Police Force.  I have a cousin who was an
 8   ex-CID officer, and my nephew that I mentioned that was --
 9              THE COURT:  In the FBI.  Okay.  Anything about
10   the fact that you have got these relatives in law
11   enforcement and this is a criminal case, would anything
12   about any of those facts affect your ability to be a fair
13   an impartial juror in this case?
14              A PROSPECTIVE JUROR:  No, Your Honor.
15              THE COURT:  Do you feel you could decide this
16   case solely on the evidence that is presented here in the
17   courtroom and the instructions on the law that I give you?
18              A PROSPECTIVE JUROR:  Yes, Your Honor.
19              THE COURT:  Thank you, sir.
20              Yes, sir?
21              A PROSPECTIVE JUROR:  033.
22              THE COURT:  Yes, sir?
23              A PROSPECTIVE JUROR:  My brother was a police
24   officer for Lemon Township.
25              THE COURT:  For which township?
```

```
 1              A PROSPECTIVE JUROR:  Lemon Township outside the
 2    Middletown city limits.
 3              THE COURT:  Is he still a police officer?
 4              A PROSPECTIVE JUROR:  No.  That was about six
 5    years ago.  He's with Cincinnati.  I don't know what he has
 6    to do with them.  I never see him.
 7              THE COURT:  So I take it the two of you are not
 8    real close?
 9              A PROSPECTIVE JUROR:  No.
10              THE COURT:  In other words, you wouldn't be
11    discussing business with him?
12              A PROSPECTIVE JUROR:  No.
13              THE COURT:  Would anything about the fact that
14    your brother is involved in law enforcement affect your
15    ability to be a fair and impartial juror in this case?
16              A PROSPECTIVE JUROR:  No, I don't think it would.
17              THE COURT:  Could you decide this case solely on
18    the evidence that is presented here in the courtroom and
19    the instructions I give you?
20              A PROSPECTIVE JUROR:  I think so.
21              THE COURT:  Any hesitation about that?
22              A PROSPECTIVE JUROR:  No, ma'am.
23              THE COURT:  Okay.  Thank you, sir.
24              Yes, in the first row?  I'm sorry.  I keep
25    missing people everywhere.
```

```
1                    A PROSPECTIVE JUROR:  020.

2                    THE COURT:  Yes, ma'am?

3                    A PROSPECTIVE JUROR:  My ex-husband was a police

4       officer and probation officer.

5                    THE COURT:  And where was that?

6                    A PROSPECTIVE JUROR:  In -- can I say?

7                    THE COURT:  In what county?

8                    A PROSPECTIVE JUROR:  Probation officer for the

9       state.

10                   THE COURT:  A state probation officer?

11                   A PROSPECTIVE JUROR:  Um-hum.

12                   THE COURT:  And what was the other thing?

13                   A PROSPECTIVE JUROR:  Police officer, and he

14      moved up to the probation office.

15                   THE COURT:  Okay.  And were you familiar with the

16      work he did, with the day-to-day work?

17                   A PROSPECTIVE JUROR:  Um-hum.

18                   THE COURT:  As you may have heard me mention,

19      there will be some law enforcement people who will be

20      testifying.  Would anything about the fact that your

21      ex-husband was involved in law enforcement affect your

22      ability to render a fair and impartial verdict in this

23      case?

24                   A PROSPECTIVE JUROR:  No.

25                   THE COURT:  Do you feel that you could decide
```

1   this case solely on the evidence that is presented here in

2   the courtroom and the instructions that I give you?

3               A PROSPECTIVE JUROR:  Yes.

4               THE COURT:  Thank you, ma'am.  I think a couple

5   more hands.  Yes, ma'am?

6               A PROSPECTIVE JUROR:  015.

7               THE COURT:  Okay.  Yes?

8               A PROSPECTIVE JUROR:  My husband I guess was a

9   police officer before I knew him in college.

10              THE COURT:  Would anything about that fact affect

11   your ability to be a fair and impartial juror in this case?

12              A PROSPECTIVE JUROR:  No.

13              THE COURT:  Couple more hands.  Yes, sir?

14              A PROSPECTIVE JUROR:  034.  This is going back to

15   the question you asked before about family members being --

16              THE COURT:  Keep your voice up a little bit.

17              A PROSPECTIVE JUROR:  This is going back to a

18   question you asked before about convicted family members.

19   I have an uncle that was convicted of selling drugs in

20   California.

21              THE COURT:  Okay.

22              A PROSPECTIVE JUROR:  It wouldn't affect my

23   ability.

24              THE COURT:  Thank you.

25              A PROSPECTIVE JUROR:  And I also, my grandfather

```
 1   was a police officer before I was born.  Same answer, it
 2   wouldn't affect me.
 3                THE COURT:  Great.  Thanks a lot.
 4                Yes, ma'am, in the red?
 5                A PROSPECTIVE JUROR:  031.
 6                THE COURT:  Yes?
 7                A PROSPECTIVE JUROR:  My brother is a sheriff.
 8   L.A. County sheriff in California.
 9                THE COURT:  And same question, would anything
10   about the fact that --
11                A PROSPECTIVE JUROR:  No.
12                THE COURT:  -- a relative's in law enforcement
13   affect your ability to be a fair juror?
14                A PROSPECTIVE JUROR:  No.
15                A PROSPECTIVE JUROR:  060.  My nephew is
16   currently a detective with the police department.
17                THE COURT:  Which one?
18                A PROSPECTIVE JUROR:  It's in Hillsboro, Ohio,
19   Highland County.
20                THE COURT:  Okay.  And do you discuss his
21   day-to-day work with him?
22                A PROSPECTIVE JUROR:  Sometimes.
23                THE COURT:  All right.  And as a result of that
24   connection to law enforcement, do you feel that would in
25   any way affect you're ability to be a fair and impartial
```

```
 1    juror in this case?
 2                A PROSPECTIVE JUROR:  No, Your Honor.
 3                THE COURT:  Yes, ma'am?
 4                A PROSPECTIVE JUROR:  Would it matter if your
 5    cousin's father is a police officer?
 6                THE COURT:  No.  That's okay.  We've got to draw
 7    the line somewhere, I think just with immediate family.
 8    Thank you for asking, though.
 9                Does any panel member have any particular
10    feelings such as anger or ill-will about police officers in
11    general?
12                Has any panel member had a prior bad experience
13    with local police, the Federal Bureau of Investigation or
14    federal government agencies such as the Veterans
15    Administration or the Social Security Administration?
16                Does anyone believe that the testimony of a
17    police officer is more credible than the testimony of
18    someone who is not a police officer?
19                Does anyone think that police officers never make
20    mistakes?
21                Does anyone believe that law enforcement officers
22    always tell the truth under oath?
23                A PROSPECTIVE JUROR:  Could you repeat that,
24    please?
25                THE COURT:  Sure.  Does anyone believe that law
```

1    enforcement officers always tell the truth under oath?

2           If you believe a law enforcement officer has lied

3    under oath, would you still accept his testimony as true?

4           Okay.  Do you understand that it's permissible

5    for the police and other law enforcement agencies to use

6    confidential informants in investigating criminal activity?

7           You may also hear evidence that a conversation

8    involving Defendant Walter Pugh was recorded without his

9    knowledge.  Does anyone believe it is wrong to secretly

10   tape record a person's conversations without that person's

11   knowledge in order to gather evidence of criminal activity?

12          Let me restate that, because that was a long

13   question.  You're going to hear evidence that there is a

14   conversation involving Defendant Walter Pugh that was

15   recorded without his knowledge.  Does anyone believe it is

16   wrong to secretly tape record a person's conversations

17   without that person's knowledge in order to gather evidence

18   of criminal activities?

19          Okay.  Does anyone feel that a tape recording

20   that has not been altered or tampered with cannot be

21   believable evidence?

22          A PROSPECTIVE JUROR:  Your Honor, that had a

23   double negative in it.  Could you repeat that?

24          THE COURT:  You're absolutely right.  We tried to

25   reword this because I guess what we were trying to do was

1   not have everybody raise their hand, but let me try it

2   another way.

3            Does everyone agree that a tape recording that

4   has been altered or tampered with cannot be believable

5   evidence?  Does everybody agree with that?

6            ALL PROSPECTIVE JURORS:  Yes.

7            THE COURT:  Does anyone then feel that a tape

8   recording, and here's the double negative again, that a

9   tape recording that has not been altered or tampered with

10  cannot be believable evidence?  In other words, would

11  anybody have a problem believing a tape recording that had

12  not been altered or tampered with?  Anybody got a problem

13  with that?

14           Okay.  Did that help?

15           A PROSPECTIVE JUROR:  Thank you.

16           THE COURT:  The physical evidence in this case

17  may include various firearms, including a 12-gauge shotgun.

18  Will seeing a firearm in the courtroom cause anyone any

19  apprehension or make anyone feel uneasy about being a juror

20  in this case?  And I promise you it will be unloaded and

21  only be handled by people qualified to do that.

22           Yes, sir?

23           A PROSPECTIVE JUROR:  Yes, I am.

24           THE COURT:  Can I have your number?

25           A PROSPECTIVE JUROR:  022.  After my brother went

```
 1    to the penitentiary for his crime, I don't even like to be
 2    around them.
 3              THE COURT:  Okay.  Do you feel that strongly
 4    about it that you feel that just being in the same room --
 5              A PROSPECTIVE JUROR:  It gives me an anxiety
 6    attack.
 7              THE COURT:  Okay.  Thank you, sir.
 8              Anyone else?
 9              It's quarter after 11.  I have got probably about
10    20 more minutes of questions.  I think we will take --
11    let's take a ten-minute break, and if you will all be back
12    in here promptly at 11:25, we will get this done before
13    noon I promise you.  And then you will have a short recess.
14    We will select the jury, and you will all be out of here
15    that aren't going to serve on the jury, you should all be
16    out of here by about one, 1:30 at the absolute latest.  And
17    the rest of you who are selected for the jury will then
18    have a lunch break.
19              Let's take a ten-minute break.
20              (Recess at 11:15 a.m.)
21                        AFTER RECESS
22              THE COURT:  All right.  Is anyone -- is any
23    prospective juror a member of the National Rifle
24    Association?  I see a couple hands.
25              Yes, sir?  I should know your numbers by now, but
```

```
1    I don't remember.
2                  A PROSPECTIVE JUROR:  037.
3                  THE COURT:  Yes, sir?
4                  A PROSPECTIVE JUROR:  I'm a --
5                  THE COURT:  Are you a member of NRA?
6                  A PROSPECTIVE JUROR:  Yes, ma'am.
7                  THE COURT:  How long have you been a member?
8                  A PROSPECTIVE JUROR:  Probably about ten years.
9                  THE COURT:  As you have heard, this case involves
10   a charge regarding a firearm.  Would anything about the
11   fact that you're a member of the National Rifle Association
12   and that this case involves a firearm affect your ability
13   to be a fair and impartial juror?
14                 A PROSPECTIVE JUROR:  No.
15                 THE COURT:  Do you feel you can decide this case
16   on the evidence as presented here in the courtroom and the
17   instructions I give you?
18                 A PROSPECTIVE JUROR:  Yes.
19                 THE COURT:  Thank you, sir.
20                 I saw one more hand.  Yes, sir?
21                 A PROSPECTIVE JUROR:  043.
22                 THE COURT:  I know you're here somewhere.  Okay.
23   Yes, sir?
24                 A PROSPECTIVE JUROR:  I've been a member for
25   about three years.
```

```
1                    THE COURT: All right. Same question to you.

2                    A PROSPECTIVE JUROR: No, Your Honor.

3                    THE COURT: Okay. Anyone else?

4              All right. Does anyone believe that all

5     citizens, including felons, should be permitted to possess

6     any type of gun regardless of whether it is legal under

7     federal law?

8                    A PROSPECTIVE JUROR: Would you repeat that,

9     please?

10                   THE COURT: Sure. That is a confusing question.

11    I'm sorry.

12             Does anyone believe that all citizens, including

13    felons, should be permitted to possess any type of gun

14    regardless of whether it is legal or not?

15             I know if I've got the teacher confused, you

16    know, I'm confused too. Let me give this one more try.

17             Does anyone believe that citizens ought to have a

18    right to possess any kind of gun at all regardless of

19    whether or not there are laws against it? Does anyone

20    believe that should be allowed? Did that pass muster?

21                   Okay. Yes?

22                   A PROSPECTIVE JUROR: If it shouldn't be allowed,

23    if it's illegal, then I believe that it shouldn't be

24    allowed.

25                   THE COURT: That's what I'm asking. Does anybody
```

1   disagree with what that juror just said?

2          Thank you I appreciate your assistance here.

3          Federal law says that it is illegal for a felon

4   to possess a firearm.  Does anyone think that this federal

5   law should be changed?  That's more of an opinion-type

6   question.

7          All right.  Do you understand that, if you do not

8   like what one of the attorneys in this case does, you may

9   not hold that against his or her client?  Everybody agree

10  with that?

11         If you -- I'm sorry.  Let me ask another question

12  first.

13         Do you feel that you will be able to determine

14  the facts in this case from the testimony that's presented

15  here?  Anybody think they would have a problem with that?

16         If you were a defendant in a criminal case, would

17  you want yourself as a juror?

18         Okay.  If you were a defendant in a criminal

19  case, is there anyone who would not want themselves as a

20  juror?  In other words, if you were the defendant, anybody

21  who wouldn't want themselves to be a juror?

22         Okay.  Do you understand that the defendant has

23  an absolute right not to take the witness stand and that

24  you may not hold that defendant's decision not to testify

25  against him?  Everybody agree that a defendant has an

1    absolute right not to testify?

2           Okay. Do all of you understand that a person is

3    innocent until proven guilty, that, even though there is an

4    indictment in this case, that's simply a charge, that

5    defendants walk into this courtroom believed to be innocent

6    and they remain -- that they remain innocent until the

7    government proves the charges beyond a reasonable doubt?

8    Everybody agree with that?

9           Do you understand that, just because a person has

10   been indicted, the indictment is no evidence of guilt and

11   the government bears the burden of proving each defendant

12   guilty beyond a reasonable doubt?

13          Do you understand that you may not speak to any

14   of the attorneys involved in this case during the trial?

15   And I'll give you some more instructions on that later, but

16   that's just so that no one questions your impartiality.

17   You're not permitted to talk to any of the attorneys or the

18   parties or the witnesses until the trial is over.

19          Have any of you ever felt that you have been

20   wrongly accused of a crime?

21          Does any panel member have any feeling, thought,

22   inclination, premonition, prejudice, religious belief or

23   persuasion or bias which might influence or interfere with

24   your full and impartial consideration and which might

25   influence you either in favor of or against either the

```
 1   defendants or the government?
 2              Okay.  Let me start with the gentleman there.
 3              A PROSPECTIVE JUROR:  001.
 4              THE COURT:  Yes?
 5              A PROSPECTIVE JUROR:  At the expense or
 6   possibility of being chastised, I do not understand the
 7   federal court system where a panel member has to lose over
 8   a thousand dollars to serve on a jury.  I do not understand
 9   that system that requires that.  There should be a system
10   where all companies, businesses, should have to give the
11   employee --
12              THE COURT:  All right, sir.  I can't change the
13   system.
14              A PROSPECTIVE JUROR:  I don't understand that,
15   but I just want it to be known that I don't appreciate
16   losing a thousand dollars.
17              THE COURT:  I understand it.  Let me ask you this
18   question.  Would the fact that you're apparently very
19   unhappy about that, is that going to overshadow your
20   ability to be a fair and impartial juror in this case?
21              A PROSPECTIVE JUROR:  I will have to overcome my
22   anger, yes.
23              THE COURT:  I appreciate your candor.
24              Anyone else?
25              A PROSPECTIVE JUROR:  060.  My spouse has spent
```

1   over 20 years working in a financial institution, and we
2   have had robberies in our town bank, robberies, and I have
3   a definite viewpoint about that because of my spouse being
4   endangered.
5              THE COURT:  Okay.  You're 060?
6              A PROSPECTIVE JUROR:  060.
7              THE COURT:  Okay.
8              A PROSPECTIVE JUROR:  Having a spouse that's been
9   employed for over 20 years in a financial institution, and,
10  you know, it sort of puts a different light on it.
11             THE COURT:  Okay.  Do you feel, as a result of
12  that fact, that you may not be able to decide the case
13  solely on the evidence that's presented here in court?
14             A PROSPECTIVE JUROR:  I will have trouble being
15  totally objective.
16             THE COURT:  Thank you, sir.  I appreciate your
17  candor as well.
18             Okay.  Are there any other hands to that
19  question?
20             A PROSPECTIVE JUROR:  033.
21             THE COURT:  Yes, sir?
22             A PROSPECTIVE JUROR:  I would like to speak to
23  you in private.
24             THE COURT:  Okay.  All right.  I will put that
25  down, and we will talk to you in a little bit.  Thank you.