1   either one and does not say that one is any better evidence

2   than the other.  You should consider all the evidence, both

3   direct and circumstantial, and give it whatever weight you

4   believe it deserves.

5           Credibility of witnesses.  Another part of your

6   job as jurors is to decide how credible or believable each

7   witness was.  This is your job, not mine.  It is up to you

8   to decide if a witness' testimony was believable and how

9   much weight you think it deserves.  You are free to believe

10  everything that a witness said or only part of it or none

11  of it at all.  But you should act reasonably and carefully

12  in making these decisions.

13          Let me suggest some things for you to consider in

14  evaluating each witness' testimony.

15          Ask yourself if the witness was able to clearly

16  see or hear the events.  Sometimes, even an honest witness

17  may not have been able to clearly see or hear what was

18  happening and may make a mistake.

19          Ask yourself how good the witness' memory seemed

20  to be.  Did the witness seem able to accurately remember

21  what happened?

22          Ask yourself if there was anything else that may

23  have interfered with the witness' ability to perceive or

24  remember the events.

25          Ask yourself how the witness acted while

1    testifying.  Did the witness appear honest, or did the
2    witness appear to be lying?

3            Ask yourself if the witness had any relationship
4    to the government or either of the defendants or anything
5    to gain or lose from the case that might influence the
6    witness' testimony.

7            Ask yourself if the witness had any bias,
8    prejudice or reason for testifying that might cause the
9    witness to lie or to slant testimony in favor of one side
10   or the other.

11           Ask yourself if the witness testified
12   inconsistently while on the witness stand or if the witness
13   said or did something or failed to say or do something at
14   any other time that is inconsistent with what the witness
15   said while testifying.  If you believe that the witness was
16   inconsistent, ask yourself if this makes the witness'
17   testimony less believable.  Sometimes it may.  Other times,
18   it may not.  Consider whether the inconsistency was about
19   something important or about some unimportant detail.
20   Ask yourself if it seemed like an innocent mistake or if it
21   seemed deliberate.

22           And ask yourself how believable the witness'
23   testimony is in light of all the other evidence.  Was the
24   witness' testimony supported or contradicted by other
25   evidence that you found believable?  If you believe that a

1  witness' testimony was contradicted by other evidence,

2  remember that people sometimes forget things and that even

3  two honest people who witnessed the same event may not

4  describe it exactly the same way.

5          These are only some of the things you may

6  consider in deciding how believable each witness was.  You

7  may also consider other things that you think shed some

8  light on the witness' believability.  Use your common sense

9  and your everyday experience in dealing with other people

10 and then decide what testimony you believe and how much

11 weight you think it deserves.

12         Number of witnesses.  One more point about the

13 witnesses.  Sometimes jurors wonder if the number of

14 witnesses who testified makes any difference.

15         Do not make any decisions based only on the

16 number of witnesses who testified.  What is more important

17 is how believable the witnesses were and how much weight

18 you think their testimony deserves.  Concentrate on that,

19 not the number of witnesses.

20         Separate consideration, multiple defendants

21 charged with different crimes.  The defendants have been

22 charged with different crimes.  I will explain to you in

23 more detail shortly which defendant has been charged with

24 which crimes, but, before I do that, I want to emphasize

25 several things.

1         The number of charges is no evidence of guilt,

2    and this should not influence your decision in any way.

3    And in our system of justice, guilt or innocence is

4    personal and individual.  It is your duty to consider

5    separately the evidence against each defendant on each

6    charge and to return a separate verdict for each of them.

7    For each one, you must decide whether the government has

8    presented proof beyond a reasonable doubt that a particular

9    defendant is guilty of a particular charge.

10        Your decision on any one defendant or one charge,

11   whether it is guilty or not guilty, should not influence

12   your decision on the other defendant or charges.

13        That concludes the part of my instructions

14   explaining your duties and the general rules that apply in

15   every criminal case.  In a moment, I will explain the

16   elements of the crime that the defendants are accused of

17   committing.  But before I do that, I want to emphasize that

18   the defendants are on trial only for the particular crimes

19   charged in the indictment.  Your job is limited to deciding

20   whether the government has proven the crimes charged.

21        The indictment instruction.  The defendants,

22   Walter M. Pugh, Jr. and Tyreese D. Pugh, are charged in

23   this case on five counts.

24        An indictment is a document by which the

25   government informs a defendant of the charges that the

1  government intends to prove in a given criminal case.  It

2  is not evidence.  The information contained in the

3  indictment should not be considered by you in determining

4  the guilt or innocence of the defendants in this case.  You

5  should base your verdict solely on the evidence that you

6  heard during this trial.

7  The indictment in this case states the following:

8  Count one.  Beginning on or about an exact date unknown and

9  continuing thereafter until and through on or about April

10  24, 2002, in Butler County in the Southern District of

11  Ohio, and elsewhere, the defendants Walter Meade Pugh, Jr.

12  and Tyreese Dorran Pugh did willfully and knowingly

13  combine, conspire, and agree together and with each other

14  to commit an offense against the United States; that is, by

15  force, violence and intimidation, take from the person and

16  presence of another money belonging to and in the care,

17  custody, control, management and possession of the First

18  National Bank of Southwestern Ohio, 2299 Peck Boulevard,

19  Hamilton, Ohio, hereinafter referred to as First National

20  Bank, the deposits of which were then insured by the

21  Federal Deposit Insurance Corporation, and, in committing

22  such offense, did assault and put in jeopardy the life of

23  another person by the use of a dangerous weapon, to wit, a

24  firearm, in violation of Title 18, United States Code

25  Sections 2213 (a) and (d).

1    It was the purpose and object of the conspiracy
2  that the defendants, Walter Meade Pugh, Jr. and Tyreese
3  Dorran Pugh, did plan and did travel to the First National
4  Bank, enter and rob it, brandishing firearms and carrying a
5  bag in which to carry money from the bank.
6    Overt acts.  In furtherance of the conspiracy and
7  to effect the objects thereof, there was committed by at
8  least one of the co-conspirators in the Southern District
9  of Ohio and elsewhere at least one of the following overt
10  acts, among others.
11    One.  On or about April 24, 2002, Walter Meade
12  Pugh, Jr., having borrowed a 1988 maroon Oldsmobile Cutlass
13  Ciera from a relative, met Tyreese Dorran Pugh in order to
14  drive to and rob the First National Bank.
15    Two.  On April 24, 2002, Walter Meade Pugh, Jr.
16  and Tyreese Dorran Pugh drove to the First National Bank
17  for the purpose of robbing the bank.
18    Three.  On April 24, 2002, at approximately 2:30
19  p.m., Walter Meade Pugh, Jr. and Tyreese Dorran Pugh
20  entered the First National Bank and announced the robbery.
21  At that time -- and I'm just going to shorten their names a
22  little bit -- Tyreese Pugh, who was wearing a mask which
23  partially covered his face, was holding a shotgun.  Walter
24  Pugh, Jr. was holding a long-barreled revolver.
25    Four.  On April 24, 2002, upon entering the First

1  National Bank, Walter Pugh, Jr. immediately jumped the
2  teller counter, picked up a trash can, and ordered a victim
3  teller to remove money from the drawers and place it in the
4  trash can.
5          Five.  On April 24, 2002, after obtaining money
6  from the cash drawers, Walter Pugh, Jr. grabbed a victim
7  teller by her left arm and forceably led her to the bank
8  vault, pointing the long-barreled revolver at her body.
9  Once inside the vault, Walter Pugh, Jr. told the teller to
10 place the money in the trash can until she was told to
11 stop.  Thereafter, he left the victim teller inside the
12 vault and shut the inner door.
13         Six.  On April 24, 2002, Walter Pugh, Jr. and
14 Tyreese Pugh, while in the First National Bank, took
15 approximately $153,189 cash from several cash drawers and
16 the vault and placed money into a trash can.
17         Seven.  On April 24, 2002, Walter Pugh, Jr. and
18 Tyreese Pugh fled the First National Bank with the trash
19 can of money and entered a 1988 maroon Oldsmobile Cutlass
20 Ciera.
21         Eight.  On April 24, 2002, following the bank
22 robbery, Walter Pugh, Jr. and Tyreese Pugh fled with the
23 money stolen from the bank to Atlanta, Georgia, to avoid
24 apprehension.
25         All in violation of Title 18, United States Code

1   Section 371.

2          Count two.  On or about April 24, 2002, in Butler

3   County in the Southern District of Ohio, the defendants,

4   Walter Pugh, Jr. and Tyreese Pugh, aiding and abetting each

5   other, did by force, violence and intimidation take from

6   the person and presence of another approximately $153,189

7   in money belonging to and in the care, custody, control and

8   management and possession of the First National Bank of

9   Southwestern Ohio, 2299 Peck Boulevard, Hamilton, Ohio, the

10  deposits of which were then insured by the Federal Deposit

11  Insurance Corporation, and, in committing such offense, did

12  assault and put in jeopardy the life of another person by

13  the use of a dangerous weapon, to wit:  A firearm.   In

14  violation of Title 18, United States Code Section 2113(a),

15  (2) and 2.

16         Count three.  On or about April 24, 2002, in

17  Butler County in the Southern District of Ohio, the

18  defendant Walter Pugh, Jr. did knowingly use, carry and

19  brandish a firearm, to wit:  A long-barreled revolver,

20  during and in relation to a crime of violence for which he

21  may be prosecuted in a court of the United States, that is

22  armed robbery of the First National Bank of Southwestern

23  Ohio, 2299 Peck Boulevard, Hamilton, Ohio.  In violation of

24  Title 18, United States Code Section 924(c)(1)(A)(ii).

25         Count four.  On or about April 24, 2002, in

1    Butler County in the Southern District of Ohio, the

2    defendant Tyreese Pugh did knowingly use, carry and

3    brandish a firearm, to wit:  A shotgun, during and in

4    relation to a crime of violence for which he may be

5    prosecuted in a court of the United States, that is, armed

6    robbery of the First National Bank of Southwestern Ohio,

7    2299 Peck Boulevard, Hamilton, Ohio.  In violation of Title

8    18, United States Code Section 924(c)(1)(A)(ii).

9          Count five:  On or about May 3rd, 2002, in

10   Hamilton County in the Southern District of Ohio, the

11   defendant Tyreese Dorran Pugh, having been convicted of a

12   crime punishable by imprisonment for a term exceeding one

13   year as defined by Title 18, United States Code Section

14   921(a)(20), that is drug trafficking in case number

15   CR99-030312, in the Butler County Court of Common Pleas,

16   Hamilton, Ohio, did knowingly possess in and affecting

17   commerce a firearm, to wit:  A Mossberg 12-gauge shotgun,

18   serial number L792549.  All in violation of Title 18,

19   United States Code Sections 922(g)(1) and 924(a)(2).

20         Conspiracy to commit an offense - basic

21   elements.  Count one of the indictment accuses the

22   defendants of a conspiracy to commit the crime of armed

23   bank robbery in violation of federal law.  The crime of

24   armed bank robbery will be explained later in the

25   instructions.  However, it is also a crime for two or more

1   persons to conspire or agree to commit a criminal act even
2   if they never actually achieve their goal.
3            A conspiracy is a kind of criminal partnership.
4   For you to find either of the defendants guilty of the
5   conspiracy charge, the government must prove each and every
6   one of the following elements beyond a reasonable doubt.
7        A.   First, that two or more persons conspired, or
8   agreed, to commit the crime of armed bank robbery.
9        B.   Second, that the defendant in question knowingly
10  and voluntarily joined the conspiracy.
11       C.   And third, that a member of the conspiracy did at
12  least one of the overt acts described in the indictment for
13  the purpose of advancing or helping the conspiracy.
14           You must be convinced that the government has
15  proved all of these elements beyond a reasonable doubt in
16  order to find either of the defendants guilty of the
17  conspiracy charge.
18           Agreement.  With regard to the first element, a
19  criminal agreement, the government must prove that two or
20  more persons conspired or agreed to cooperate with each
21  other to commit the crime of bank robbery.
22           This does not require proof of any formal
23  agreement, written or spoken, nor does this require proof
24  that everyone involved agreed on all the details.  But
25  proof that people simply met together from time to time and

1  talked about common interests or engaged in similar conduct

2  is not enough to establish a criminal agreement.  These are

3  things that you may consider in deciding whether the

4  government has proved an agreement, but, without more, they

5  are not enough.

6          What the government must prove is that there was

7  a mutual understanding, either spoken or unspoken, between

8  two or more people to cooperate with each other to commit

9  the crime of bank robbery.  This is essential.

10         An agreement can be proved indirectly by facts

11  and circumstances which lead to a conclusion that an

12  agreement exists, but it is up to the government to

13  convince you that such facts and circumstances existed in

14  this particular case.

15         Defendant's connection to the conspiracy.  If you

16  are convinced that there was a criminal agreement, then you

17  must decide whether the government has proved that the

18  defendants knowingly and voluntarily joined that agreement.

19  You must consider each defendant separately in this regard.

20  To convict either defendant, the government must prove that

21  he knew the conspiracy's main purpose and that he

22  voluntarily joined it intending to help advance or achieve

23  its goals.

24         This does not require proof that the defendant

25  knew everything about the conspiracy or everyone else

Case 1:02-cr-00054-DB   Document 85-4   Filed 07/21/2003   Page 12 of 36

1   involved or that he was a member of it from the very

2   beginning.  Nor does it require proof that the defendant

3   played a major role in the conspiracy or that his

4   connection to it was substantial.  A slight role or

5   connection may be enough.

6         But proof that the defendant simply knew about a

7   conspiracy or was present at times or associated with

8   members of a group is not enough, even if he approved of

9   what was happening or did not object to it.  Similarly,

10  just because the defendant may have done something that

11  happened to help the conspiracy does not necessarily make

12  him a conspirator.  These are all things that you may

13  consider in deciding whether the government has proved that

14  the defendant in question joined a conspiracy.  But without

15  more, they are not enough.

16        What the government must prove is that the

17  defendant knew of the conspiracy's main purpose and that he

18  voluntarily joined intending to help achieve or advance its

19  goals.  This is essential.

20        The defendant's knowledge can be proved

21  indirectly by facts and circumstances which lead to a

22  conclusion that he knew the conspiracy's main purpose, but

23  it is up to the government to convince you that such facts

24  and circumstances existed in this particular case.

25        Overt acts.  The third element that the

1  government must prove is that a member of the conspiracy

2  did one of the overt acts described in the indictment for

3  the purpose of advancing or helping the conspiracy.

4       The indictment lists eight overt acts.  The

5  government does not have to prove that all these acts were

6  committed or that any of these acts were themselves

7  illegal.  But the government must prove that at least one

8  of these acts was committed by a member of the conspiracy

9  and that it was committed for the purpose of advancing or

10  helping the conspiracy.  This is essential.

11       The nature of the offense charged in count two.

12  Count two of the indictment charges that on or about April

13  24, 2002, in the Southern District of Ohio, Defendants

14  Walter Pugh and Tyreese Pugh, by force, violence, and

15  intimidation took from the person or presence of another

16  certain monies then in the custody or possession of the

17  First National Bank of Southwestern Ohio, which was then

18  insured by the Federal Deposit Insurance Corporation, and

19  that in committing this offense Defendants Walter Pugh and

20  Tyreese Pugh assaulted or put the life of another person in

21  jeopardy by the use of a dangerous weapon or device.

22       The statute defining the offense charged.  18

23  United States Code Annotated Section 2113(a) and (d)

24  provides in part that, quote, "Whoever, by force and

25  violence or by intimidation takes or attempts to take from

1   the person or presence of another any property or money or
2   any other thing of value belonging to or in the care,
3   custody, control, management, or possession of any bank,
4   credit union or any savings and loan association; and
5   whoever, in committing, or attempting to commit, any
6   offense defined in subsection (a) of this section assaults
7   any person or puts in jeopardy the life of any person by
8   the use of a dangerous weapon or device," unquote, shall be
9   guilty of an offense against the United States.
10          The essential elements of the offense charged.
11  In order to sustain its burden of proof against each of the
12  defendants for the crime of armed bank robbery as charged
13  in count two of the indictment, the government must prove
14  the following four essential elements beyond a reasonable
15  doubt:
16      One.   The defendant in question took money from the
17  person or presence of another while that money was in the
18  care, custody, or possession of the First National Bank of
19  Southwestern Ohio.
20      Two.   The taking was by force and violence or by
21  intimidation.
22      Three.   The defendant in question deliberately
23  assaulted any person or put the life of any person in
24  jeopardy by the use of a dangerous weapon or device while
25  taking the money.

1    And four. That the deposits of the First National

2    Bank of Southwestern Ohio were then insured by the Federal

3    Deposit Insurance Corporation.

4          I hereby instruct you that the parties have

5    stipulated that on April 24, 2002, the deposits of the

6    First National Bank of Southwestern Ohio in Hamilton, Ohio,

7    were insured by the Federal Deposit Insurance Corporation.

8          "Assaults any person" defined. The phrase

9    "assaults any person" means a deliberate attempt to inflict

10   bodily harm or injury upon the person of another. The

11   phrase "assaults any person" also means a threat to inflict

12   bodily harm or injury upon the person of another when that

13   attempt or that threat is coupled with an apparent present

14   ability to do so.

15         An assault may be committed without actually

16   touching, striking, or doing bodily harm to another. Any

17   intentional display of such force that would give a person

18   reason to fear or expect immediate bodily harm may

19   constitute an assault.

20         An individual, therefore, who has the apparent

21   present ability to inflict bodily harm on another and

22   voluntarily attempts to inflict bodily harm on that person

23   may be found to have assaulted that person. Similarly, an

24   individual who threatens to inflict bodily harm on another

25   may also be found to have assaulted that person.

1            "Put in jeopardy the life of any person by the

2    use of a dangerous weapon or device" defined.  The phrase

3    "put in jeopardy the life of any person" means knowingly to

4    do an act which exposes a person to a risk of death.

5            The term "dangerous weapon or device" means any

6    object that can be used by one person to inflict severe

7    bodily harm or injury upon another person.

8            "Puts in jeopardy the life of any person by the

9    use of a dangerous weapon or device" means, therefore, to

10   expose a person to a risk of death or severe bodily harm by

11   the use of a weapon or device that is capable of inflicting

12   death or severe bodily harm.

13           "By force and violence or by intimidation"

14   defined.  The phrase "by force or violence or by

15   intimidation" means by either:  One, the use of actual

16   physical strength or actual physical violence; or, two,

17   doing some act or making some statement to put someone in

18   fear of bodily harm.

19           The intimidation must be caused by an act

20   knowingly and deliberately done or statement knowingly and

21   deliberately made by the defendant in question which was

22   done or made in such a manner or under such circumstances

23   that would produce such a reaction or such fear of bodily

24   harm in a reasonable person.  The government must not prove

25   actual fear on the part of any person.

1           The government must prove beyond a reasonable

2    doubt, however, that the defendant in question knowingly

3    and deliberately did something or knowingly and

4    deliberately said something that would cause a reasonable

5    person under those circumstances to be fearful of bodily

6    harm.

7           "Care, custody, control, management or

8    possession" defined.  The phrase "care, custody, control,

9    management, or possession" refers to money or funds that

10   are physically within the bank or within its power to

11   control.  When a bank holds the money that has been

12   deposited by its customers, for example, the bank may be

13   said to have care, custody, control, management or

14   possession of those funds.

15          Aiding and abetting.  For you to find either

16   defendant guilty of armed robbery, it is not necessary for

17   you to find that he personally committed the crime himself.

18   You may also find him guilty if he intentionally helped or

19   encouraged someone else to commit the crime.  A person who

20   does this is called an aider and abettor.  But for you to

21   find either defendant guilty of armed bank robbery as an

22   aider and abettor, you must be convinced that the

23   government has proved each and every one of the following

24   elements beyond a reasonable doubt:

25          First, that the crime of armed bank robbery was

1   committed.  Second, that the defendant in question helped

2   to commit the crime.  And, third, that the defendant in

3   question intend to help commit the crime.

4          Proof that the defendant may have known about the

5   crime, even if he was there when it was committed, is not

6   enough for you to find him guilty.  You can consider this

7   in deciding whether the government has proved that he was

8   an aider and abettor, but without more it is not enough.

9          What the government must prove is that the

10  defendant did something to help the crime with the intent

11  that the crime be committed.

12         If you can -- that doesn't read right.  If you

13  are -- I think it should be:  If you are convinced that the

14  government has proven these elements, say so by returning a

15  guilty verdict on this charge.  If you have a reasonable

16  doubt about any of these elements, then you cannot find the

17  defendant in question guilty of armed robbery as an aider

18  and abettor.

19         The nature of the offense charged in counts three

20  and four.  Count three of the indictment charges that on or

21  about April 24, 2002, within the Southern District of Ohio,

22  Defendant Walter Pugh used or carried a firearm, namely a

23  long-barreled revolver, during and in relation to the

24  commission of a crime of violence, namely armed bank

25  robbery.

1    Count four of the indictment charges that on or
2    about April 24, 2002, within the Southern District of Ohio,
3    Defendant Tyreese Pugh used or carried a firearm, namely a
4    shotgun, during and in relation to the commission of a
5    crime of violence, namely armed bank robbery.

6    The statute defining the offense charged.
7    Section 924(c) of Title 18 of the United States Code
8    provides in pertinent part:  Whoever, during and in
9    relation to any crime of violence, uses or carries a
10   firearm shall be guilty of an offense against the United
11   States.

12   The essential elements of the offense charged.
13   In order to sustain its burden of proof for the crime of
14   using or carrying a firearm during and in relation to a
15   crime of violence as charged in counts three and four of
16   the indictment, the government must prove the following two
17   essential elements beyond a reasonable doubt:  One, the
18   defendant in question committed the crime of armed bank
19   robbery as charged in count two of the indictment; and,
20   two, that during and in relation to the commission of that
21   crime, the defendant in question knowingly used or carried
22   a firearm.

23   "Uses or carries a firearm" defined.  The phrase
24   "uses or carries a firearm" means having a firearm or
25   firearms available to assist or aid in the commission of

1    the crime alleged in count two of the indictment.

2              In determining whether either Defendant Walter

3    Pugh or Defendant Tyreese Pugh used or carried a firearm,

4    you may consider all the factors received in evidence in

5    the case, including the nature of the underlying crime of

6    violence or drug trafficking alleged, the proximity of the

7    particular defendant to the firearm in question, the

8    usefulness of the firearm to the crime alleged, and the

9    circumstances surrounding the presence of the firearm.

10             The government is not required to show that the

11   defendant in question actually displayed or fired the

12   weapon.  The government is required, however, to prove

13   beyond a reasonable doubt that the firearm was in the

14   defendant's possession or under the defendant's control at

15   the time that a crime of violence occurred.  I'm sorry --

16   at the time that a crime of violence was committed.

17             "Knowingly" defined.  The term "knowingly," as

18   used in these instructions to describe the alleged state of

19   mind of either defendant, means that the defendant in

20   question was conscious and aware of his actions, realized

21   what he was doing or what was happening around him, and did

22   not act because of ignorance, mistake or accident.

23             Nature of the offense charged in count five.

24   Count five of the indictment charges that on or about May

25   3rd, 2002, in the Southern District of Ohio, Defendant

1    Tyreese Pugh, a convicted felon, knowingly possessed a
2    firearm which affected commerce.

3            Statute defining the offense charged in count
4    five.   Section 922(g)(1) of Title 18 of the United States
5    Code provides in part that:  It shall be unlawful for any
6    person who has been convicted in any court of a crime
7    punishable by imprisonment for a term exceeding one year to
8    knowingly possess in or affecting commerce any firearm.

9            Essential elements of the offense charged in
10   count five.  In order to sustain its burden of proof for
11   the crime of possessing a firearm as charged in count five
12   of the indictment, the government must prove the following
13   four essential elements beyond a reasonable doubt:  One,
14   defendant Tyreese Pugh has been convicted in any court of a
15   crime punishable by imprisonment for a term exceeding one
16   year.  Two, after this conviction, Defendant Tyreese Pugh
17   knowingly possessed the firearm described in the
18   indictment.  Three, such possession was in or affecting
19   interstate or foreign commerce.  And, four, the act
20   occurred on or about the date charged in the indictment,
21   May 3rd, 2002, and in the Southern District of Ohio.

22           "Crime punishable by imprisonment of a term
23   exceeding one year" defined.  The phrase "crime punishable
24   by imprisonment for a term exceeding one year" generally
25   means a crime which is a felony.  The phrase does not

1    include any state offense classified by the laws of that
2    state as a misdemeanor and punishable by a term of
3    imprisonment of two years or less and certain crimes
4    concerning the regulation of business practices.
5            I hereby instruct you that the government and
6    Defendant Tyreese Pugh have stipulated that on May 3, 2002,
7    Defendant Tyreese Pugh was a person who had been convicted
8    in a court of a crime punishable by imprisonment for a term
9    exceeding one year.
10           "Firearm" defined.  The term "firearm" means, A,
11   any weapon, including a starter gun, which will or is
12   designed to or may readily be converted to expel a
13   projectile by the action of an explosive; B, the frame or
14   receiver of any such weapon; C, any firearm muffler or
15   firearm silencer; or, D, any destructive device.  The term
16   "firearm" does not include an antique firearm.
17           Possession.  Next I want to explain something
18   about possession.  The government does not necessarily have
19   to prove that Defendant Tyreese Pugh physically possessed
20   the firearm described in the indictment for you to find him
21   guilty of this crime.  The law recognizes two kinds of
22   possession, actual possession and constructive possession.
23   Either one of these, if proved beyond a reasonable doubt by
24   the government, is enough to convict.
25           To establish actual possession, the government

1   must prove that Defendant Tyreese Pugh had direct physical
2   control over the firearm described in the indictment and
3   knew that he had control of it.

4           To establish constructive possession, the
5   government must proved that Defendant Tyreese Pugh had the
6   right to exercise physical control over the firearm
7   described in the indictment and knew that he had this right
8   and that he intended to exercise physical control over the
9   firearm at some time either directly or through other
10  persons.

11          For example, if you left something with a friend
12  intending to come back later and pick it up or intending to
13  send someone else to pick it up for you, you would have
14  constructive possession of it while it was in the actual
15  possession of your friend.

16          But understand that just being present where
17  something is located does not equal possession.   The
18  government must prove that Defendant Tyreese Pugh had
19  actual or constructive possession of the firearm and knew
20  that he did for you to find him guilty of this crime.
21  This, of course, is all for you to decide.

22          "In or affecting commerce" defined.   The phrase
23  "in or affecting commerce" includes commerce between any
24  place in the state and any place outside of that state.
25          The government may meet its burden of proof on

1    the question of being in or affecting commerce by proving
2    to you beyond a reasonable doubt that the firearm
3    identified in the indictment had traveled at any time
4    across a state boundary line.

5         The defense theory.  That concludes the part of
6    my instructions explaining the elements of the crime.
7    Next, I will explain the defendants' positions. The defense
8    says that the defendants were not present at the bank at
9    the time of the robbery and the robbery was committed by
10   other individuals.

11        Presence of the defendants at the scene of the
12   crime.  One of the questions in this case is whether the
13   defendants were present at the bank at the time of the
14   robbery.  In order to find Tyreese Pugh guilty, the
15   government must prove that he was present at the time and
16   place in question.  Unless the government proves beyond a
17   reasonable doubt that Defendant Tyreese Pugh was present at
18   the bank at the time of the robbery, you must find him not
19   guilty.

20        In order to find Defendant Walter Pugh guilty,
21   the government must prove that he was present at the time
22   and place in question.  Unless the government proves beyond
23   a reasonable doubt that Defendant Walter Pugh was present
24   at the bank at the time of the robbery, you must find him
25   not guilty.

1   Introduction to special rules for considering
2   testimony and evidence.  That concludes the part of my
3   instructions explaining the defendants' position.  Next I
4   will explain some rules that you must use in considering
5   some of the testimony and evidence.

6   Defendants did not testify.  Defendants have an
7   absolute right not to testify.  The fact that Defendants
8   did not testify cannot be considered by you in any way.  Do
9   not even discuss it in your deliberations.  Remember that
10  it is up to the government to prove Defendants guilty
11  beyond a reasonable doubt.  It is not up to the defendants
12  to prove that they are innocent.

13  Impeachment of a witness other than defendant.
14  You have heard the testimony of Ra-Shay Patterson and
15  Shanell Holston.  You have also heard that Ms. Patterson
16  knows of an outstanding warrant for her arrest and that
17  before this trial she was convicted of a crime.  Further,
18  you have heard that, before this trial, Ms. Holston was
19  convicted of a crime.

20  This evidence was brought to your attention only
21  as one way of helping you decide how believable their
22  testimony was.  Do not use it for any other purpose.  It is
23  not evidence of anything else.

24  Expert testimony.  You have heard the testimony
25  of Gwen Gregory, an expert witness.  An expert witness has

1   special knowledge or experience that allows the witness to
2   give an opinion.

3           You do not have to accept an expert's opinion.
4   In deciding how much weight to give it, you should consider
5   the witness' qualifications and how she reached her
6   conclusions.  Remember that you alone decide how much of a
7   witness' testimony to believe and how much weight it
8   deserves.  Ordinarily, there is no way that the defendant's
9   state of mind can be proven directly, because no one can
10  read another person's mind and tell what that person is
11  thinking.

12          But the defendant's state of mind can be proven
13  indirectly from the surrounding circumstances.  This
14  includes things like what the defendant said, what the
15  defendant did, how the defendant acted, and any other facts
16  or circumstances in evidence that show what was in the
17  defendant's mind.

18          You may also consider the nature and probable
19  results of any act that the defendant knowingly did and
20  whether it is reasonable to conclude that the defendant
21  intended those results.  This, of course, is all for you to
22  decide.

23          Judicial notice.  I have decided to accept as
24  proved the fact that Butler County is in the Southern
25  District of Ohio, even though no evidence was presented on

1   this point.  You may accept this fact as true, but you are
2   not required to do so.

3           Jury deliberations.  Let me finish by explaining
4   some things about your deliberations in the jury room and
5   your possible verdicts.

6           The first thing that you should do in the jury
7   room is choose someone to be your foreperson.  This person
8   will help to guide your discussions and will speak for you
9   here in court.

10          Once you start deliberating, do not talk to
11  Mr. Snyder or to me or to anyone else except each other
12  about the case.  If you have any questions or messages, you
13  must write them down on a piece of paper, sign them, and
14  then give them to Mr. Snyder.  Mr. Snyder will then give
15  them to me, and I will respond as soon as I can.  I may
16  have to talk to the lawyers about what you have asked, so
17  it may take some time to get back to you.  Any questions or
18  messages normally should be sent to me through your
19  foreperson.

20          Experiments, research and investigation.
21  Remember that you must make your decision based only on the
22  evidence that you saw and heard here in court.  Do not try
23  to gather any information about the case on your own while
24  you are deliberating.

25          For example, do not conduct any experiment inside

1   or outside the jury room.  Do not bring any books, like a
2   dictionary, or anything else with you to help your
3   deliberations.  Do not conduct any independent research,
4   reading or investigation about the case, and do not visit
5   any of the places that were mentioned during the trial.
6   Make your decision based only on the evidence that you have
7   heard here in court.

8          Unanimous verdict.  Your verdict, whether it is
9   guilty or not guilty, must be unanimous.  To find either
10  defendant guilty of any charge, every one of you must agree
11  that the government has overcome the presumption of
12  innocence with evidence that proves that defendant's guilt
13  beyond a reasonable doubt.

14         To find either defendant not guilty of any
15  charge, every one of you must agree that the government has
16  failed to convince you of his guilt beyond a reasonable
17  doubt.  Either way, guilty or not guilty, your verdict must
18  be unanimous.

19         Duty to deliberate.  Once the closing arguments
20  of the government and the defendants have been completed,
21  you are free to talk about the case in the jury room.  In
22  fact, it is your duty to talk with each other about the
23  evidence and to make every reasonable effort you can to
24  reach unanimous agreement.  Talk with each other, listen
25  carefully and respectfully to each other's views and keep

1   an open mind as you listen to what your fellow jurors have
2   to say.  Try your best to work out the differences.  Do not
3   hesitate to change your mind if you are convinced that
4   other jurors are right and that your original position was
5   wrong.

6         But do not ever change your mind just because
7   other jurors see things differently or just to get the case
8   over with.  In the end, your vote must be exactly that,
9   your own vote.  It is important for you to reach a
10  unanimous agreement, but only if you can do so honestly and
11  in good conscience.

12        You were permitted to take notes during the
13  trial, and you will be able to take these notes with you
14  into your deliberations.  Remember that notes should only
15  be used to refresh the recollection of the juror who took
16  the notes.  You should not use your notes in jury
17  deliberation to prove to other jurors that your notes are
18  in fact what a witness actually said.  It is only your
19  impression of what the witness said.  We depend on the
20  judgment of all members of the jury and you're all
21  responsible for remembering the evidence in the case.

22        No one will be allowed to hear your discussions
23  in the jury room, and no record will be made of what you
24  say.  So you should all feel free to speak your minds.
25        Listen carefully to what everyone else has to say

1   and then decide for yourself if the government has proven
2   the defendant guilty beyond a reasonable doubt.

3           Punishment.  If you decide that the government
4   has proven either defendant guilty, then it will be my job
5   to decide what the appropriate punishment should be.
6   Deciding what the punishment should be is my job, not
7   yours.  It would violate your oath as jurors even to
8   consider the possible punishment in deciding your verdict.
9   Your job is to look at the evidence and decide if the
10  government has proven each defendant guilty beyond a
11  reasonable doubt.

12          I have prepared a verdict form that you should
13  use to record your verdict.  I will read over the form with
14  you in a moment.  If you decide that the government has
15  proven a charge against one of the defendants beyond a
16  reasonable doubt, say so by having your foreperson mark the
17  appropriate place on the form.  If you decide that the
18  government has not proven a charge against one of the
19  defendants beyond a reasonable doubt, say so by having your
20  foreperson mark the appropriate place on the form.

21          Once you have decided each defendant's guilt or
22  innocence on each charge, your foreperson should then date
23  and sign the verdict form in the place indicated.  After
24  your foreperson signs the form, the other jurors should
25  sign the form in the places indicated.  You should then

1    inform the jury officer that you have reached a verdict.

2         The Court has no opinion.  Let me finish by

3    repeating something that I said to you earlier.  Nothing

4    that I have said or done during this trial was meant to

5    influence your decision in any way.  You decide for

6    yourselves if the government has proven the defendants

7    guilty beyond a reasonable doubt.

8         And I'm going to save the final instruction for

9    after the arguments of council, but let me go over the

10   verdict form with you now.

11        Again, the verdict form has the same caption as

12   the jury instructions, except that it says "verdict form"

13   on the front instead of "jury instructions."  And then on

14   the second page it says:  United States versus Walter M.

15   Pugh, Jr. and Tyreese D. Pugh, case number CR-1-02-54.

16        We, the jury, in respect of the charges set forth

17   in the indictment, do find Defendant Walter M. Pugh, Jr.,

18   and then next to each charge it's got either "not guilty"

19   or "guilty," and you're to check one or the other, and it's

20   got that for where it says:  On count one as charged in the

21   indictment, and that means in violation of 18 U.S.C.

22   Section 371; Count two as charged in the indictment, 18

23   U.S.C. Sections 2113(a) and (d); and on count three as

24   charged in the indictment, 18 U.S.C. Section

25   924(c)(1)(A)(ii).  And again, those are "not guilty" and

1    "guilty" next to each one of those counts, and you're to

2    check one or the other.

3         We the jury, in respect of the charges set forth

4    in the indictment, do find Defendant Tyreese D. Pugh, same

5    form again.  You're to check either "not guilty" or

6    "guilty" next to each one of the charges.  And it says:  On

7    count one as charged in the indictment, 18 U.S.C. Section

8    371; on count two as charged in the indictment, 18 U.S.C.

9    Section 2113 (a) and (d); on count four as charged in the

10   indictment, 18 U.S.C. Section 924(c)(1)(A)(ii); and on

11   count five as charged in the indictment, 18 U.S.C. Section

12   922(g)(1).

13        When you have completed all of the verdict forms,

14   the foreperson should sign on the top line there where it

15   says "foreperson" and put the date of your decision, and

16   then each one of the other jurors should sign on the other

17   lines.

18        Is there any objection -- are there any

19   objections to the reading of the instructions?

20        MS. CROSS:  Not on behalf of the United States,

21   Your Honor.

22        MR. FELSON:  Not on behalf of Tyreese Pugh.

23        MR. ANDREWS:  Not on behalf of Walter Pugh.

24        THE COURT:  All right.  Okay.  The charge has

25   gone on -- that was definitely the most unexciting part of

1   the afternoon.  The charge has gone on for the last hour.

2              Ms. Cross has indicated that she's going to take

3   about 20 minutes for her opening argument.

4              As I mentioned to you in the beginning of the

5   case, the government, because it has the burden of proof,

6   opens and closes the argument.  So it's sort of like an

7   Oreo with the defendants as the cream in the middle.  The

8   government is the top and bottom, and the defendants go in

9   the middle.

10             So we will start with Ms. Cross.  Then we will

11  have both defendants' counsel make their arguments, and

12  then we will go back to Ms. Cross.  All together, counsel

13  have said the arguments are going to take about two hours.

14             I think, because this has been a long sit for me,

15  I'm sure it must be for you.  Why don't we take -- what I'm

16  thinking of doing is probably taking, like, two ten-minute

17  breaks somewhere in between, a ten-minute break now, and I

18  think maybe a ten-minute break somewhere where it's

19  logical, because I don't think it would be fair to Ms.

20  Cross to start after having to sit for this length of time.

21  So let's take a ten-minute break until a quarter of.

22             (Recess at 1:35 p.m.)

23                         AFTER RECESS

24             THE COURT:  Counsel, is there something you want

25  to bring before the Court before we bring the jury back?

1           MR. FELSON:  Yes.  I have to renew the Rule 29

2   motion, and I guess I'll just add there is really not much

3   to add.  You have heard it all, except now I will be

4   requesting that everything be stricken, although you have

5   already overruled that, but that would be my only issue.

6           THE COURT:  Thank you, Mr. Felson.

7           MR. ANDREWS:  Your Honor, we renew our Rule 29.

8   You have heard the arguments.

9           THE COURT:  Right.

10          MR. ANDREWS:  And the state of the evidence, I

11  think, is arguably in flux.  Therefore, you know, I am

12  quite aware of what the Court's ruling would be but, for

13  the record, re-make it.

14          THE COURT:  Thank you.

15          Mr. Thapar.

16          MR. THAPAR:  We submit on the same arguments we

17  made.

18          THE COURT:  The Court will once again deny the

19  motion.  And so we will proceed with argument.

20          Ms. Cross, have you got everything set up you

21  need already?

22          MS. CROSS:  I think so, Your Honor.

23          THE COURT:  Okay.  Mr. Felson, will you need to

24  re-set up the table then?

25          MR. FELSON:  No, I don't think so.  I think --

```
 1              THE COURT:  We can do it with the jury in the
 2   box.  That's okay.
 3              (Off the record.)
 4              (Jury present.)
 5              THE COURT:  Ms. Cross, are you prepared to make
 6   opening argument on behalf of the government?
 7              MS. CROSS:  I am, Your Honor.
 8              THE COURT:  Please proceed.
 9              MS. CROSS:  Thank you.
10              May it please the Court, Counsel, ladies and
11   gentlemen of the jury, all of the evidence is in.  And it's
12   now time for you to decide this case based on the facts and
13   the evidence presented.  And, while your duty is not a
14   simple one, fortunately, the facts in this case are.
15              Before I go into my argument, I would like to
16   take this opportunity to thank you on behalf of the United
17   States for your time, your attention and your service to
18   this case.  Thank you very much.
19              So the question for you to decide today is this:
20   Has the United States presented evidence that you have seen
21   and heard in this courtroom to establish the defendants'
22   guilt beyond a reasonable doubt?  And I submit to you that,
23   based on the evidence, the answer is yes.
24              Let's look at what Walter and Tyreese Pugh are
25   charged with.  Count one charges them with conspiring to
```

1    rob the First National Bank of Southwestern Ohio.  Count
2    two charges them with armed bank robbery and aiding and
3    abetting each other in committing the armed bank robbery
4    offense.  Count three charges Walter Pugh with using,
5    carrying and brandishing a firearm during the bank robbery
6    offense.  Count four charges Tyreese Pugh with carrying,
7    using and brandishing a firearm during the commission of
8    the bank robbery.  And, finally, count five charges Tyreese
9    Pugh with being a felon in possession of a firearm at the
10   home of Cortes Renfro.

11           Now, in considering the evidence, I ask that you
12   keep your eye and your focus on the charges.  Ask yourself
13   when you're considering the evidence:  What does this have
14   to do with what the defendants are charged with?

15           Ladies and gentlemen, I submit to you that you
16   have heard evidence in this case that has absolutely
17   nothing to do with the charges in this case.  So, when you
18   look at a piece of evidence and you're considering what you
19   hear, what you heard, and what you have seen, ask yourself:
20   But what does that have to do with what the defendants are
21   charged with?

22           Now, I'm not going to stand here for long and go
23   over every detail or every piece of the evidence as if you
24   weren't here the last four or five days and heard it for
25   yourself when you did.  I think that would be insulting to