```
 1                UNITED STATES DISTRICT COURT

 2              SOUTHERN DISTRICT OF OHIO

 3                   WESTERN DIVISION
                        -  -  -
 4

    UNITED STATES OF AMERICA,    :   CRIMINAL ACTION CR-1-02-054
 5                               :
              Plaintiff,         :   Cincinnati, Ohio
 6                               :   Monday, February 3, 2003
        -vs-                     :
 7                               :
    WALTER M. PUGH, JR.,         :   Sentencing
 8                               :
              Defendant.         :   2:00 p.m.
 9
                        -  -  -
10

                 TRANSCRIPT OF PROCEEDINGS
11        BEFORE THE HONORABLE SUSAN J. DLOTT, JUDGE

12                      -  -  -

13

    For the Plaintiff:    Wende Cross, Esq.
14                        Amul Thapar, Esq.
                          Asst. U.S. Attorney
15                        Atrium II, Suite 400
                          221 East Fourth Street
16                        Cincinnati, Ohio  45202

17  For the Defendant:    Pro Se
      (Walter Pugh, Jr.)
18                        J. Robert Andrews, Esq.
      (Legal advisor)     Schuh & Goldberg
19                        2662 Madison Road
                          Cincinnati, Ohio  45208
20
      (Tyreese Pugh)      Edward J. Felson, Esq.
21                        Felson & Felson
                          CBLD Center, Suite 1650
22                        36 East Seventh Street
                          Cincinnati, Ohio  45202.
23
    Law Clerk:  Mike Rich
24  Courtroom Deputy:  Steve Snyder
    Court Reporter:  Betty Schwab
25
```

86

```
 1                          PROCEEDINGS
 2            THE COURTROOM DEPUTY:  The first case is
 3    CR-1-02-54, defendant one, United States of America v.
 4    Walter Pugh, Jr.  Will the parties please step forward?
 5            THE COURT:  Good afternoon to everyone.
 6            MS. CROSS:  Good afternoon, Your Honor.
 7            MR. ANDREWS:  Good afternoon.
 8            THE COURT:  Will counsel please enter their
 9    appearances for the record?
10            MS. CROSS:  Wende Cross on behalf of the United
11    States.
12            MR. ANDREWS:  J. Robert Andrews on behalf of
13    Walter Pugh, acting as his standby counsel and counsel.
14            THE COURT:  All right.  And are you Walter M.
15    Pugh, Jr.?
16            THE DEFENDANT:  Yes, I am Walter M. Pugh, Jr.
17            THE COURT:  And are you representing yourself in
18    this proceeding, Mr. Pugh, along with Mr. Andrews as your
19    legal advisor?
20            THE DEFENDANT:  Yes, ma'am.  Yes, ma'am.
21            THE COURT:  On a former day, the defendant
22    pleaded not guilty to count one, conspiracy to commit a
23    bank robbery; count two, armed robbery; and count three,
24    brandishing a firearm during a crime of violence.  A jury
25    trial commenced in this case on September 3, 2002, and on
```

```
 1   September 10, 2002, the defendant was found guilty as
 2   charged on all counts in which he was named in the
 3   indictment.  At that time, the matter was referred to the
 4   United States Probation Department for a presentence
 5   investigation and report.
 6           The Court has received the presentence report
 7   prepared December 13, 2002, and the memo from the Probation
 8   Office dated October 2, 2002.
 9           Ms. Cross, have you received a copy of those
10   documents?
11           MS. CROSS:  I have, Your Honor.
12           THE COURT:  And, Mr. Andrews, have you received a
13   copy of those documents?
14           MR. ANDREWS:  Yes, I have, Your Honor.
15           THE COURT:  And, Mr. Pugh, have you received a
16   copy of those documents?
17           THE DEFENDANT:  Yes, I have.
18           THE COURT:  And have you had an opportunity to
19   discuss them with Mr. Andrews?
20           THE DEFENDANT:  No, I haven't.
21           THE COURT:  Do you want such an opportunity?
22           (Mr. Andrews and the defendant converse off the
23   record.)
24           THE DEFENDANT:  We can move on.
25           THE COURT:  I'm sorry?
```

1              THE DEFENDANT:  We can move on.

2              THE COURT:  The defendant has put forth

3    objections to the presentence report in this case

4    concerning paragraphs 46 and 47, and I'll ask you to

5    address those objections in a few moments.  First, however,

6    I would like to address the factual findings for

7    sentencing.

8              The Court will accept the presentence report as

9    part of the sentencing facts in this case and will proceed

10   to address any additional sentencing facts the parties wish

11   to present.

12             Let me ask the parties, are any of the facts,

13   other than those in the objections that are reported in the

14   presentence report, disputed by the defendant or the

15   government?

16             Ms. Cross?

17             MS. CROSS:  No objections on behalf of the

18   government, Your Honor.

19             MR. ANDREWS:  There is one additional, Your

20   Honor.

21             THE COURT:  No.  This is not objections.  What

22   I'm asking about right now --

23             MS. CROSS:  We don't object to any of the facts.

24             THE COURT:  Facts in the presentence report.

25             MR. ANDREWS:  The facts are substantially

1    correct.

2         THE COURT:  All right.  Do you have any

3    additional sentencing facts you wish to present, Ms. Cross?

4         MS. CROSS:  No, Your Honor.

5         THE COURT:  Okay.  Mr. Pugh and Mr. Andrews, any

6    additional sentencing facts?

7         MR. ANDREWS:  No, Your Honor.

8         THE COURT:  All right.  Then there being no

9    objections, other than those previously mentioned in the

10   factual statements contained in the presentence report, the

11   Court adopts those statements as its finding of fact.

12        The defendant has been found guilty of all counts

13   in which he was named in the indictment.  Accordingly, the

14   defendant is adjudged guilty in case number CR-1-02-54,

15   conspiracy to commit a bank robbery in count one, armed

16   robbery in count two, and brandishing a firearm during a

17   crime of violence in count three.

18        Pursuant to 18 United States Code Section 3553,

19   the Court makes the following finding of relevant fact

20   significant to the imposition of sentence.  In count one,

21   the defendant is guilty of violating 18 United States Code

22   Section 371, which is a class B felony and subjects the

23   defendant to a maximum of 25 years imprisonment, a $250,000

24   fine, a period of supervised release of five years, and a

25   $100 special assessment.  In count two, the defendant is

1   guilty of violating 18 United States Code Section 2113(a)

2   and (d) and 18 USC Section 2, which is also a Class B

3   felony and subjects the defendant to a maximum of 25 years

4   imprisonment, a $250,000 fine, a period of supervised

5   release of five years, and a $100 special assessment.  In

6   count three, the defendant is guilty of violating 18 United

7   States Code Section 924(c)(1)(A)(i), which is a Class A

8   felony and subjects the defendant to a mandatory minimum

9   seven years imprisonment to the sentence that is already

10  imposed on the count two offense, a period of supervised

11  release of five years, and a $100 special assessment.

12          However, the Sentencing Guidelines Manual

13  controls the determination of sentence in this case.

14          Let me next deal with the issue of objections.

15  The final presentence report indicates that the defendant

16  has objected to the two-level enhancement for role in the

17  offense in paragraphs 46 and 47.

18          Are there any objections to the presentence

19  report that have not been previously raised?

20          Ms. Cross?

21          MS. CROSS:  No, Your Honor.

22          THE COURT:  Mr. Andrews and Mr. Pugh?

23          MR. ANDREWS:  Yes, there is, Your Honor.  My

24  client has drawn to my attention that in paragraph 70 --

25          THE COURT:  Hang on one second.  Let me just find

1    it in the presentence report.  Okay.

2         MR. ANDREWS:  He was assessed three criminal

3    history points on a felony conviction that took place in

4    1984, which is certainly outside the period of time for

5    which criminal history points are to be assessed.  Now, I

6    know there is further a request for an upward departure on

7    the criminal history points aside from this.  But from,

8    quite honestly, from discussing it with Mr. Pugh, I'm not

9    real sure what would bring these three points back into the

10   report.  It is clearly beyond the periods of time indicated

11   in the guidelines.

12        THE COURT:  Ms. Cross, do you want to respond to

13   that?

14        MS. CROSS:  Your Honor, I am by no means an

15   expert on the guidelines.  I would defer to Lisa Egner on

16   that regard.

17        THE COURT:  All right.

18        MS. EGNER:  Your Honor, criminal history points

19   are assessed if a defendant serves any period of time in

20   the last 15 years incarcerated on a sentence imposed under

21   that guideline, and, according to the Department of

22   Corrections, Mr. Pugh was not released until September 20,

23   1999.  And so he served incarceration, even though the

24   sentence was imposed 20 years ago or 19 -- my math is not

25   good -- 19 years ago, he did serve that.  The actual

1    imposition of sentence is outside, but the service of the

2    sentence is not.  So that's what controls here.

3            THE COURT:  Thank you, Ms. Egner.

4            MS. EGNER:  You're welcome.

5            MS. CROSS:  Your Honor, what Ms. Egner stated is

6    supported by the Sentencing Guidelines Section 4A1.1 and

7    particularly the Application Note 1.

8            THE COURT:  Anything further on that issue?

9            MR. ANDREWS:  Nothing further.  My client had

10   asked me to bring it to the Court's attention, and I have

11   in fact done that.

12           THE COURT:  All right.  What about the objections

13   in paragraphs 46 and 47; do you wish to be heard on those

14   at all?

15           MR. ANDREWS:  Your Honor, as to 46, my client has

16   not only been given a two-point enhancement as an organizer

17   in this, a leader, manager, supervisor in this offense, but

18   has further in the later section been asked -- the Court

19   has been asked to impose an upward departure essentially on

20   the same information.

21           As the Court is well aware, because there was a

22   lengthy trial in this matter, my client and his son are

23   alleged to have robbed a bank together.  The Court has seen

24   the pictures of the individuals in the bank.  Both held

25   guns.  Both forced people to the ground or to do things.

1  Both participated fully and completely together in this

2  matter.  And to find the one is somehow more culpable than

3  the other, I think goes beyond the facts as they were

4  presented here in court.  There are things that my client

5  did or is alleged to have done that obviously facilitated

6  this offense, but, at the same time, the co-defendant

7  committed similar acts and was engaged in similar

8  activities.

9         A question of procuring, one may have procured

10  the car allegedly for this robbery, or the guns, while the

11  other may have procured a place to stay, a means of getting

12  to the place to stay.  Essentially, their roles are

13  co-equal roles, not that of leader and follower.

14         That being the case, I think it's improper under

15  46 to make one a manager over the other and assess a

16  two-point enhancement.  And, again, I would incorporate the

17  same argument as to the upward departure.

18         And as to, you know, one of the things to note is

19  possession of the money.  The money, as we know and as I

20  pointed out in closing argument, is something of great

21  dispute, because nobody knows where the money is.  And to

22  say my client had something to do with that is pure

23  speculation at this point.  And that's why we object to 46.

24         The other paragraph we objected to was --

25         THE COURT:  It was 47.

1       MR. ANDREWS:  47, which is essentially the same
2   information.

3       THE COURT:  Ms. Cross, do you wish to respond?
4       MS. CROSS:  Yes, Your Honor.  Your Honor, the
5   United States fully supports the two-level increase
6   recommended by the United States Probation Office.  We
7   believe that it is definitely warranted pursuant to Section
8   3B1.1(c) of the guidelines.  Under that Guideline
9   provision, Your Honor, and in the application note,
10  particularly number 4, it states that some of the factors
11  that the Court should look at when determining whether or
12  not to increase the base offense level for role are things
13  like the exercise of decision making, the nature of
14  participation in the commission of the offense, the nature
15  and scope of the illegal activity and degree of control and
16  authority that was exercised.

17      Your Honor, I remind the Court of the testimony
18  at trial that it was Walter Pugh that borrowed Betsy Pugh's
19  car that was the getaway car that transported both these
20  defendants to and from the scene.  Stephanie Luster
21  testified that it was Walter's idea that they go to Atlanta
22  and called all the shots during their travel, what hotel
23  they stayed in, when they left, when they got up.  It was
24  also the testimony that Walter had possession of the money
25  from the robbery and maintained control over it most of the

1   time.  It was in his room, on his bed.  And, if you recall,

2   Your Honor, Shanell Holston, the defendant's girlfriend,

3   testified -- she identified the gun that was found by

4   Tyreese Pugh.  She identified it as being Walter Pugh's

5   gun, because she had seen it at the house where they lived

6   prior to the robbery.

7          If you recall the photo during the trial, Your

8   Honor, of the two defendants in the bank, it was Walter

9   Pugh that jumped over the counter and obtained the money

10  from Jenny Tettenhorst, and it was Walter that made the

11  verbal threats.  Although they both did threatening

12  actions, it was Walter that made the verbal threats that

13  allowed them to complete this crime.

14         Regarding the degree of control and authority

15  that was exercised, it was Shanell Holston that said that

16  it was Walter who was controlling and dominated everybody

17  around him, including his sons.  And there were only two

18  individuals involved in this offense, Your Honor, father

19  and son.  And you can look at them, Your Honor, and it is

20  clear that it is Walter who is the one who appears to be

21  more likely to exercise control over Tyreese than Tyreese

22  exercising control over his father.

23         Additionally, Your Honor, I would just state for

24  the record that, when considering a plea offer by the

25  United States before trial, Tyreese wanted to consult with

1    Walter first.

2            MR. ANDREWS:  Your Honor, with all due respect,

3    we will object to discussion of plea matters at this time

4    or at any time.

5            THE COURT:  Well, anything is permissible in

6    sentencing.

7            MR. ANDREWS:  Just making my objection.

8            MS. CROSS:  It was Walter who exercised control

9    during the offense.  It was Walter who exercised control

10   after the offense.  And even when considering a plea offer,

11   Tyreese wanted to consult his father first.  So I think

12   those facts play -- warrant the enhanced role in this case.

13           THE COURT:  Thank you, Ms. Cross.

14           Anything further?

15           MR. ANDREWS:  I just note, if we're going to come

16   to that, you know, in talking about plea discussions, et

17   cetera, it's my understanding that, since the time of the

18   trial, Tyreese has independently tried to work out a deal

19   to give the money back without my client being involved.

20   So, if we're going to look at things subsequent to all of

21   this, that is a subsequent and independent act of a person

22   who obviously has some indication of where the money is, et

23   cetera, which actively chips away at this theory that

24   somehow Walter is in more control than is Tyreese.

25           The other thing is terms like "seduced" and "led

1  astray" have been used to characterize what my client has
2  done with his son, which ignores something that the Court
3  can see in looking at Tyreese's own presentence
4  investigation report, which is he has a criminal history
5  that has nothing to do with my client.  He was not a babe
6  in the woods.  He was a man who had just done several years
7  in the state pen for drug trafficking.  He engaged in an
8  activity, allegedly with my client, which you have heard
9  all the evidence on.  They are independent, adult
10  individuals who played differing roles, but played equal
11  roles in the robbery of this bank and the events that took
12  place thereafter.

13          I just find that increasing his points by two or
14  to justify an upward departure based on the fact that we
15  have two people with criminal records that are lengthy -- I
16  would even note with the addition of the contested and
17  upward departured criminal history points, my client still
18  scores lower than his son on criminal history points, and,
19  to put it bluntly, I think you have two men, if you are
20  going to accept the facts as they were found by the jury,
21  et cetera, who are co-equally involved and co-equally
22  responsible for every act that took place involving the
23  robbery of this bank and the fleeing thereafter.

24          Let me remind the Court that, while the young
25  lady did testify that the shotgun had at one time been

1    Walter's, that shotgun was found where?  In between
2    Tyreese's legs in bed with the young lady, and he rolled
3    over on top of it directly in front of the team of officers
4    who came in to make his arrest.

5          Very simply, everything that you look at as you
6    go through this shows a co-equal involvement of both
7    individuals, and just because one happens to be the father
8    and one happens to be the son does not in any way indicate
9    one exerts control over the other.

10         THE COURT:  Anything further, Ms. Cross?

11         MS. CROSS:  No, Your Honor.

12         THE COURT:  All right.  Then the Court will now
13    address the objection.  The defendant has objected to the
14    two-level enhancement for role in the offense in paragraphs
15    46 and 47 and does not believe he functioned as a leader or
16    organizer in the armed bank robbery.  It is the defendant's
17    position that he and his son are equally culpable and they
18    have the same level of involvement and responsibility and
19    neither exercised control or influence over the other one.

20         Walter Pugh and his son committed a bank robbery
21    in which both men were armed.  The defendant Walter Pugh
22    borrowed his sister's car, which he used in the robbery for
23    transportation purposes.  In addition, after fleeing the
24    area, trial testimony reflected that Walter Pugh had
25    possession of the money from the robbery and maintained

 1 | complete control over it.  It was observed by a witness to
 2 | be in the hotel room and was spent only at his direction or
 3 | with his approval.
 4 |         For those reasons and the reasons stated by
 5 | Ms. Cross, the Court is going to overrule the objection.
 6 |         Let me go over with you the applicable
 7 | guidelines.  Walter Pugh was found guilty following a trial
 8 | by jury of the following:  Count one, conspiracy to commit
 9 | bank robbery, which is a Class B felony in violation of
10 | Title 18 United States Code Section 371; count two, armed
11 | robbery, a Class A felony in violation of 18 United States
12 | Code Sections 2113(a) and (d) and Section 2; and count
13 | three, brandishing a firearm during a crime of violence,
14 | which is a Class A felony in violation of Title 18 United
15 | States Code Section 924(c)(1)(A)(i).
16 |         The instant offenses occurred on April 24, 2002.
17 | As a result, the 2002 edition of the Guidelines Manual was
18 | used in calculating the offense level.  Counts one and two
19 | are grouped together under Sentencing Guideline Section
20 | 3D1.2(b) because they represent a single course of conduct
21 | with the same criminal objective and represent one
22 | composite harm to the same victim.  Count two is the
23 | substantive offense which was the sole object of the
24 | conspiracy charged in count one.  Count three, a violation
25 | of Title 18 United States Code Sections 924(c)(1)(A)(i),

1  which specifies a term of imprisonment to be imposed and
2  requires such sentence to run consecutively to any other
3  term of imprisonment, is not grouped under any
4  circumstances.  The sentence to be imposed on the count
5  three offense is determined by statute and imposed
6  independently.

7          Let me go with the first group, which is counts
8  one and two.  The guideline for 18 United States Code
9  Section 2113 involving robbery is found at Sentencing
10 Guideline Section 2B3.1.  Substance (a) indicates the base
11 offense level is 20.  Sentencing Guideline Section
12 2B1.3(b)(1) provides for a two-level increase if the
13 property of the financial institution was taken.  Pursuant
14 to Sentencing Guideline Section 2B3.1(B)(2)(B), the offense
15 level is increased by six if a firearm, although not
16 discharged, was otherwise used.  However, this specific
17 offense characteristic is not applicable to avoid the
18 potential for double counting, because sentencing under
19 this guideline is being imposed in conjunction with the
20 sentencing for the underlying offense.  According to
21 Sentencing Guideline Section 2B3.1(b)(4)(B), two levels are
22 added if anyone was physically restrained to facilitate the
23 commission of the offense or escaped from the scene.
24          Would you like a cough drop?
25          MR. ANDREWS:  No.  I'm fine, Your Honor.

1           THE COURT:  Would you like some water?

2           MR. ANDREWS:  A glass of water in a moment might

3  be good.

4           THE COURT:  Sentencing Guideline Section

5  2B3.1(b)(7)(C) provides incremental increases to the

6  offense level based on the value of the property taken,

7  damaged or destroyed over $10,000.  Since the robbery

8  involved $153,189, the offense level is increased by two

9  according to Subsection C.  Although the Sentencing

10  Guideline Section 3A1.3 states the offense level is

11  increased by two if the victim was physically restrained,

12  no adjustment applies since this factor is addressed in the

13  specific offense characteristic, Sentencing Guidelines

14  Section 2B3.1 at Subsection (d)(4)(B).

15           The defendant was an organizer or leader of the

16  offense, and, pursuant to the sentencing guidelines, the

17  offense level is increased by two.

18           No other adjustments apply, making the adjusted

19  offense level or subtotal 28.

20           The defendant has not accepted responsibility for

21  his criminal behavior, and, after being convicted by a

22  jury, maintains his innocence with respect to the instant

23  offenses.  As a result, no adjustment pursuant to

24  Sentencing Guidelines Section 3E1.1 applies to this case.

25           The defendant has several -- I'm sorry.  The

1    defendant has 7 criminal history points which establish a

2    criminal history category of IV.  Based on a total combined

3    offense level of 28 and a criminal history category of IV,

4    the guideline imprisonment range is 110 to 137 months.

5    Pursuant to Sentencing Guideline Section 2K2.4(a)(2), the

6    guideline sentence for a violation of 18 USC Section

7    924(c), which was count three, the firearm, is the minimum

8    term of imprisonment required by statute, which in this

9    case is 7 years or 84 months.  The authorized term of

10   supervised release for counts one and two --

11              MR. ANDREWS:  I will get a cough drop.  Sorry,

12   Your Honor.  I apologize to the Court.

13              THE COURT:  That's all right.  Do you need

14   tissues?

15              MR. ANDREWS:  No.  I'm fine.

16              THE COURT:  The authorized term of supervised

17   release for counts one and two, as well as count three, is

18   at least three but not more than five years, because the

19   offenses are Class A or B felonies.

20              Pursuant to 18 United States Code Section

21   3561(a)(1), the defendant is not eligible for a term of

22   probation because counts one and two are Class B felonies.

23   In addition, the count three offense, which is a Class A

24   felony, requires a consecutive sentence of imprisonment.

25              According to Sentencing Guidelines Section

1    2K2.4(b)(1), where there is a federal conviction underlying

2    offense, a consolidated fine guideline is determined by the

3    offense level which would have applied to the underlying

4    offense absent a conviction under 18 USC Section 924(c).

5    In Group One, which encompasses counts one and two, the

6    adjusted offense level is 28.  Had there not been a

7    conviction under 18 United States Code Section 92(c), the

8    offense level would have been 34, which includes a

9    six-level enhancement for otherwise using a firearm.  As a

10   result, the fine range for an offender with a total

11   combined offense level of 34 is $17,500 to $175,000.

12        The First National Bank of Southwest Ohio

13   suffered a loss of $153,189.  Restitution payment should be

14   forwarded to the main branch of the bank, and the addressee

15   will be given in the judgment and conviction order.

16        A special assessment in the amount of $100 is

17   mandatory for each felony conviction.  Since Mr. Pugh was

18   convicted of three felonies, a special assessment in the

19   amount of $300 is owed and due immediately.

20        Do the parties have any questions about the

21   statutory or guideline provisions applicable to the

22   imposition of punishment in this case?

23        Ms. Cross?

24        MS. CROSS:  No, Your Honor.

25        MR. ANDREWS:  No.

1          THE COURT:  Okay.  Then we will now proceed to

2    the sentencing.  And at this time the Court will entertain

3    anything the parties wish to say in mitigation or

4    aggravation of sentence.

5          Mr. Andrews or Mr. Pugh or both?

6          MR. ANDREWS:  Do you want to speak?

7          Your Honor, my client was born in 1957.  One of

8    the reasons I bring this up is my client is not a young

9    man.  Imposition of the sentences that are being indicated

10   by way of the presentence investigation with the upward

11   departure would make it so that my client would be far in

12   excess of the age to collect Social Security when and if he

13   would ever be released from federal prison.

14         He obviously is the father of Tyreese Pugh.  That

15   does not, in and of itself, leave the Court to an

16   inescapable conclusion that he is the one who is

17   responsible for this offense.  As I indicated earlier,

18   terms like "seduced" and et cetera have been used to

19   portray how he related to Tyreese.

20         As I have indicated, Tyreese has a substantial

21   criminal record all on his own that had nothing to do with

22   my client because, at the time he accomplished his prior

23   criminal acts, my client was sitting in a state penal

24   institution.  There is nothing to indicate that, prior to

25   this occasion or other than the subsequent events that have

1   been testified to in the original trial, that my client

2   ever had any control over Tyreese Pugh of any type.

3          My client came from a tough background in

4   Hamilton, Ohio.  His parents are in fact deceased.  He has

5   spent a great deal of his adult life incarcerated, as the

6   Court is well aware.

7          Based on all of this, I will ask the Court not to

8   consider the upward departures.  The initial sentences

9   indicated, without the upward departures, more than fully

10  satisfy the requirements of time to be imposed on a

11  sentence of this type.  Very simply, to impose more than

12  that will lead to a situation where my client very simply

13  is having a death sentence imposed on him today, in that he

14  will not ever return to outside life.

15         Based on that, Your Honor, I would ask the Court

16  to not engage in the upward departures, to leave the

17  sentence as it would have been imposed without those upward

18  departures, and allow my client to go forth and do the

19  time.

20         THE COURT:  Mr. Pugh, anything you wish to say?

21         THE DEFENDANT:  No.

22         THE COURT:  Ms. Cross, anything you wish to say?

23         MS. CROSS:  Yes, Your Honor.  Not only does

24  the United States -- not only do we support an upward

25  departure, the United States strongly urges the Court

1    to depart upward from a criminal history category of

2    IV to a V, because his criminal history category IV

3    right now significantly under represents the

4    seriousness of his criminal history or the likelihood

5    that he will commit further crimes.

6            Your Honor, first of all, but for his February,

7    2000, drug conviction not being countable as a felony

8    offense, Defendant would have been a career offender.  And

9    I submit to you that, despite the fact that he has escaped

10   being a career offender under the technicalities of the

11   guidelines, that this defendant is a career offender.

12           Additionally, because the United States did not

13   charge a felon in possession count in violation of Title 18

14   United States Code Section 922(g) and he wasn't convicted

15   of that, the defendant would have been, if he were

16   convicted of that offense, he would have been an armed

17   career criminal.

18           I submit to you that, despite that, Your Honor,

19   this man is an armed career criminal.  He has two prior

20   adult convictions involving weapons.  Paragraph 69 of the

21   presentence report outlines one of them, and paragraph 70

22   of the presentence report outlines the other.  He also has

23   a juvenile conviction, adjudication involving a knife.  And

24   so he is an armed career criminal.

25           The likelihood of future criminal activity, this

1    defendant has been committing crimes since the age of 14,

2    Your Honor.  They have escalated in seriousness from

3    receiving stolen property to aggravated burglary, from

4    assault with a knife to involuntary manslaughter, from

5    using a knife to using a gun, and from flying solo to

6    convincing others to join him in his crimes.

7            I have no doubt in my mind, Your Honor, that had

8    Jenny Tettenhorst, the victim teller in this case, said the

9    wrong thing, looked the wrong way or made the wrong move,

10   that this defendant would have killed her.

11           As I prepared today, Your Honor, I tried to think

12   about what distinguishes these two men from one another.

13   They look alike, both in person and on paper.  If you look

14   at their criminal history, they're very similar at the same

15   ages.  They both have sons.  Tyreese has one son.  Walter

16   has three.  So I tried to figure out what distinguishes

17   those two men from each other.  And I can't help but think

18   that it's this.  For Tyreese, Walter is his dad.  For

19   Walter, Tyreese is simply a co-defendant.  To some degree,

20   I believe that Tyreese made his decision to commit these

21   offenses based on his heart.  But what distinguishes Walter

22   is that he's heartless.  And he's certainly no role model

23   for any decent human being in our society.

24           Your Honor, if a maximum sentence on an upward

25   departure was ever warranted by this Court, this is the

1    case and this is the defendant.  Thank you.

2           THE COURT:  Thank you, Ms. Cross.  Do you have a

3    victim who wants to speak?

4           MS. CROSS:  I do, Your Honor.  Jenny Tettenhorst

5    is here.

6           THE COURT:  Good afternoon, Ms. Tettenhorst.

7           MS. TETTENHORST:  Good afternoon.

8           THE COURT:  Thank you for coming.  We heard your

9    name during the trial.  We appreciate your being here.

10          MS. TETTENHORST:  It's a pleasure being here.  I

11   was wondering if I can't face both of them.

12          THE COURT:  Sure.  What do you want to do?  You

13   want to face them?

14          MS. TETTENHORST:  I was wanting to face them.

15          THE COURT:  You want to come sit in the witness

16   stand?

17          MS. TETTENHORST:  Yes.

18          MR. FELSON:  Should I bring my client up?

19          THE COURT:  Can you see the other Mr. Pugh?

20          MS. TETTENHORST:  I would like to have them both

21   together.

22          THE COURT:  Yes.  That would be good, Mr. Felson.

23   I assume this statement applies to the sentence of both

24   anyway.

25          MS. TETTENHORST:  Yes.

1              THE COURT:  Have a seat.  Take your time.

2              MS. TETTENHORST:  I'm nervous.  I brought

3    something to read.

4              THE COURT:  All right.

5              MS. TETTENHORST:  It says:  I am standing here --

6    actually sitting -- before you to let you know how you have

7    affected my life, even though I know you probably won't

8    care.  Ever since the robbery, I have been scared,

9    constantly looking over my shoulder.  I haven't been able

10   to sleep very well or eat very well.  I cry a lot.

11             However, I just wanted to say I have forgiven

12   both of you.  I hope some day that you would allow the Lord

13   into your life.  I know that I can forgive you.  If I can

14   forgive you, he can.  Without him, I know that as soon as

15   you get out you will do probably exactly the same thing

16   that has happened to me and to my co-workers, and I don't

17   wish that experience on any other teller.

18             You might not think that robbing a bank is a big

19   deal.  You need for once, however, to put yourself in

20   another person's shoes and see how you would feel if you

21   were in my position.  How would you react to two people who

22   you know nothing about waving guns all around?

23             I wonder if you would have a place in your heart

24   to forgive like I have today.  I am only able to achieve

25   this by the grace of God.  I hope when you spend your days

1    in jail you have the opportunity to think about what I have

2    said and change your evil ways.

3            And I just want to say I'm not a victim no more.

4    I can live my life.  And that's all.

5            THE COURT:  Thank you very much.

6            MS. TETTENHORST:  Thank you.

7            THE COURT:  Is there anything further before the

8    Court pronounces sentence?

9            Okay.  It's the duty of the Court to sentence the

10   defendant at this time.  However, counsel will have a final

11   chance to make legal objections before the sentence is

12   actually imposed.

13           Pursuant to the Sentencing Reform Act of 1984,

14   it's the judgment of the Court that the defendant be hereby

15   committed to the custody of the Bureau of Prisons for a

16   term of 137 months on counts one and two, such sentences to

17   be served concurrently with each other.  The defendant is

18   hereby committed to the custody of the Bureau of Prisons

19   for a term of 84 months on count three, such sentence to be

20   served consecutively to the sentences imposed in counts

21   one, two and three.

22           Following the sentence of imprisonment, the

23   defendant is ordered to be placed on supervised release for

24   a period of five years on counts one, two and three, such

25   terms to be served concurrently.  Upon release from

1    incarceration, the defendant is ordered to report in person

2    to the probation office in the district in which he is

3    released within 72 hours.

4           As a condition of supervised release, the

5    defendant shall pay any unpaid balance of his monetary

6    penalties.  No interest shall accrue on any unpaid balance.

7    The defendant shall not commit another federal, state or

8    local crime and is prohibited from possessing a firearm or

9    other dangerous device.  The defendant shall not possess

10   any illegal -- I think I've got it now, Mr. Andrews.

11          MR. ANDREWS:  Would you like a mint?

12          THE COURT:  No.  The defendant -- the defendant

13   shall not possess any illegal controlled substances.  In

14   addition, the defendant shall comply with the standard

15   conditions of supervised release as adopted by the Court

16   for the Southern District of Ohio.

17          As a special condition of supervised release, the

18   defendant is ordered to refrain from any unlawful use of a

19   controlled substance and submit to one drug test within 15

20   days of release and at least two periodic drug tests

21   thereafter.

22          The Court finds that the defendant is not capable

23   of paying a fine.  Pursuant to 18 U.S. Code Section 3663,

24   the defendant its ordered to make restitution in the amount

25   of $153,189 jointly and severally with co-defendant Tyreese

1    Pugh to First National Bank of Southwestern Ohio.  The

2    restitution is due immediately.  A special assessment of

3    $300 is owed and due immediately.

4         Let me say this in response to the arguments

5    made.  Ms. Cross, what you said was very tempting in that,

6    if there ever were an upward departure, this was the case.

7    The reason I did not upward depart was that I think it's

8    just got to be extraordinary.  I think that, although

9    Walter Pugh's criminal history is not as great as his son,

10   I think the only reason for that was that he was in jail

11   for 19 years, but that's the way it falls.

12        I did go at the top of the offense level,

13   because, Mr. Pugh, I agree that I think you ought to be

14   away for a long time.  I have personally seen a number of

15   lives you have affected.  You really leave ruin in your

16   wake.  You're like a boat with a huge wake.  You've

17   affected Tyreese's life, who was only three when you went

18   to jail, or something like that.  Your two nieces ended up

19   being charged with crimes because of you.  And your other

20   son, or whatever Mr. McCullough is, was only convicted

21   because of you.  You've just wreaked havoc on so many

22   people's lives, it's time to put an end to that.

23        Do you want me no make a recommendation as to

24   what prison facility you be sent to, for instance closest

25   to Cincinnati or Hamilton or whatever?

```
 1              THE DEFENDANT:  No.  I would like to go to
 2    California if it's possible.
 3              THE COURT:  What --
 4              THE DEFENDANT:  California, State of California.
 5              THE COURT:  What -- closest to what city out
 6    there?
 7              THE DEFENDANT:  It makes no difference.
 8              THE COURT:  Okay.  All right.  Any facility in
 9    California?
10              THE DEFENDANT:  Yes, ma'am.
11              THE COURT:  Mr. Pugh and Mr. Andrews, do you have
12    any objections as to why the sentence should not be imposed
13    as stated?
14              MR. ANDREWS:  Other than those previously noted,
15    no.
16              THE COURT:  Ms. Cross, any objections?
17              MS. CROSS:  No, Your Honor.
18              THE COURT:  The sentence is thus imposed as
19    stated.
20              Let me tell you about your rights on appeal.
21    Both parties are notified by this Court that you have a
22    right to appeal this sentence, and, if you're indigent and
23    cannot retain a lawyer, you may apply, and one will be
24    appointed to represent you on your appeal.
25              You are further advised that, in accordance with
```

1    the provisions of Rule 4(b) of the Rules of Appellate

2    Procedure, you must file your notice of appeal with the

3    clerk of the United States District Court within ten days

4    of the filing of judgment.  The Court does hereby advise

5    you that, if you so request, the clerk of this Court will

6    prepare and file immediately a notice of appeal on your

7    behalf.

8            It's further ordered that the defendant shall

9    notify the United States Attorney for the Southern District

10   of Ohio within 30 days of any change in resident or mailing

11   address until all fines and special assessments imposed by

12   this judgment are fully paid.

13           If you request, Mr. Pugh, I will order the clerk

14   of courts to file your notice of appeal immediately after

15   the judgment is filed.

16           THE DEFENDANT:  I would like for the clerk to

17   file, and I would like to see my appeals attorney before I

18   leave and go to California if necessary, Judge.  I would

19   like to speak with my appeal attorney.

20           MR. ANDREWS:  Your Honor, I will ask, because of

21   the nature of my representation in this case, that I not be

22   appointed as appellate counsel.

23           THE COURT:  That's fine.  We will have someone

24   appointed, and I'll order that he make contact with you

25   before you're sent to a prison facility outside of the

```
 1   state.
 2              THE DEFENDANT:   Thank you.
 3              Is there anything further on this case before I
 4   remand Mr. Pugh to the custody of the United States
 5   Marshal?
 6              MS. CROSS:   No, Your Honor.
 7              MR. ANDREWS:   Nothing, Your Honor.
 8              THE COURT:   Thank you, Mr. Andrews.
 9              MS. CROSS:   Thank you, Your Honor.
10              THE COURT:   Good luck to you, Mr. Pugh.
11              THE DEFENDANT:   Thank you.
12                     PROCEEDINGS CONCLUDED
13
14                     C E R T I F I C A T E
15              I, Betty J. Schwab, the undersigned, do
16   hereby certify that the foregoing is a correct
17   transcript from the record of the proceedings in
18   the above-entitled matter.
19
20                            Betty J. Schwab
                            BETTY J. SCHWAB, RPR
21                          Official Reporter
22
23
24
25
```