UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Criminal No. CR-1-02-054 |
| | : | |
| Plaintiff, | : | **UNITED STATES'** |
| | : | **RESPONSE TO** |
| v. | : | **DEFENDANT'S MOTION** |
| | : | **TO PREVENT USE OF** |
| WALTER MEADE PUGH, JR. | : | **STUN BELT** |
| | : | |
| Defendant. | : | HONORABLE DAVID BUNNING |

-----------------------------------------------------------------------------------------

On November 9, 2005, the defendant in this matter, Walter Pugh, filed a motion to prevent the Use of Stun Belt Restraint During Trial (Doc. 121). The Marshal's use of a stunbelt in this matter is justified by both the facts and history of this case as well as the case law. Thus, the use of a stun belt should be allowed.

The undersigned assistants have conferred with Supervisory Deputy United States Marshal Chris Riley regarding this matter. Mr. Riley has reviewed this matter in arranging for security for the trial and has concluded that both defendants are dangerous and pose a significant threat of violence to trial participants and of escape. He believes that there is a compelling interest in having the defendants wear stun belts during the criminal trial to protect courtroom security.

Moreover, the use of the stun belt will not in any way prejudice the defendant. First, and most importantly, the Jury will not know that the defendants are wearing stun belts. It will be concealed by their clothing and will not make them look any different. Second, the stun belts will not inhibit the defendants' ability to assist in their own defense. Third, the stun belt will actually

provide the defendant more freedom from the marshals, since the existence of a stun belt allows the marshals to be farther away than arms reach. Consequently, the stun belt arguably favors, not prejudices, the defendants.

In addition to both defendants having violent criminal histories (including Tyreese Pugh's recent conviction for having a weapon while incarcerated), this case has a history that justifies the use of stun belts. During the previous trial, witnesses were threatened as they went to and came off of the stand by members of the audience that were relatives of the defendant. The Court even admonished the spectators during one of the recesses. Tr. 608-610. In addition, two of those spectators ultimately attacked a witness for the government after trial. See Attachments 1 and 2 (Plea Agreements and Statement of Facts).

Finally, the proper use of a stun belt during the criminal trial will not prejudice the defendant. A stun belt allows the potentially violent defendant to remain in court during his trial. Moreover, a stun belt is reliable, effective, and safe. If it is not activated – as it was not in the last trial – it has no physical effect on a defendant at all. Even if activated, stun belts are non-injurious to the wearer. Further, under United States Marshals Service policy, any such activation will only occur if the wearer attempts to escape or cause injury to someone else—actions that would warrant the use of the belt's non-lethal force.

For these reasons, nearly every court that has consider the use of stun belts as a means of ensuring courtroom security against potentially violent defendants has permitted their use. *See United States v. Clayton Lee Wagner,* CR-1-02-07 (S.D. Ohio 2002); *see also United States v. McKissick*, 204 F.3d 1282, 1299 (10th Cir. 2000); *United States v. Brooks*, 125 F.3d 484, 502 (7th Cir.1997); *United States v. Edelin*, 175 F. Supp. 2d 1 (D.C. 2001). This Court's decision in this case

concerning courtroom security should be no different than its decision in *Wagner*. As in the *Wagner* case, this Court should deny the defendant's motion and enter an order requiring the defendant to wear a stun belt during the upcoming trial.

Criminal defendants can pose a serious threat to courtroom security. As the case law amply demonstrates, the stress of a criminal proceeding, combined with the adversary nature of the process and the potential for conviction and punishment, can cause a defendant to lash out at the presiding judge, jurors, clerks, counsel, and others. *See King v. Rowland*, 977 F.2d 1354 (9th Cir. 1992) (defendant attacked counsel in court even though defendant in leg irons); *Hamilton v. Vasquez*, 17 F.3d 1149, 1154 (9th Cir.) (describing defendant's attacks on counsel and deputies), *cert. denied*, 512 U.S. 1229 (1994); *see also Spain v. Rushen*, 883 F.2d 731 (9th Cir. 1989) (Noonan, J., dissenting) ("[w]hat could be done in a prison could be done in a courtroom by a prisoner . . . ill-disposed to the system . . .").

Conversely, it is beyond dispute that a court has a compelling interest in maintaining the security of its courtroom. *See, e.g., Holbrook v. Flynn*, 475 U.S. 560 (1986) (interest in maintaining control over defendants who had been denied bail outweighed defendants' interest in avoiding any prejudice caused by the jury's seeing four security officers seated in front row of spectator section during trial); *Hamilton v. Vasquez*, 17 F.3d 1149, 1155 (9th Cir.) (interest in maintaining courtroom security justified use of shackles on defendant, outweighing defendant's due process rights), *cert. denied*, 512 U.S. 1220 (1994); *McMorris v. Alioto*, 567 F.2d 897 (9th Cir. 1978) (interest in protecting courtroom security justifies magnetometer searches of entrants). "It is the court that is responsible for the security of the courtroom, and it decides, first, whether any special security is needed, and second, on the most appropriate security safeguards under the particular circumstances."

*United States v. Whitehorn*, 710 F. Supp. 803, 840 (D.D.C), *rev'd on other grounds*, *U.S. v. Rosenberg*, 888 F.2d 1406 (D.C. Cir. 1989); *see also Edelin*, 175 F. Supp. 2d 1-8.

In evaluating courtroom security measures, this Court must balance those security needs against the defendant's Sixth Amendment rights to a fair trial and the presumption of innocence. As the Supreme Court has instructed, "every practice tending to single out the accused from everyone else in the courtroom" need not be "struck down." *Holbrook v. Flynn*, 475 U.S. 560, 567 (1986). Rather, "when the proceedings present legitimate security concerns to which the presiding judge must respond," the defendant's constitutional rights must give way. *Id.*; *United States v. Childress*, 58 F.3d 693, 705 (D.C. Cir. 1995); *United States v. Edmond*, 52 F.3d 1080, 1090 (D.C. Cir. 1995) ("[T]he right to a presumption of innocence . . . is [not] a constitutional absolute; . . . at times, [it] must yield to the legitimate demands of trial administration and courtroom security so long as steps are taken to ensure that the defendant receives a fair trial").

Accordingly, this Court must determine if there is a "need" for special security, "consider whether the measures adopted . . . are appropriate to that end," and determine "whether there are other less burdensome alternatives . . . available." *Whitehorn*, 710 F. Supp. at 835, 838-39; *see also Edelin*, 175 F. Supp. 2d 1-8. As demonstrated herein, an analysis of those factors plainly militates in favor of using stun belts in this case.[1]

---

[1] This Court's determination will be subject to an abuse of discretion standard of review on appeal. *Childress*, 58 F.3d at 704-705. As the D.C. Circuit has instructed:

> Like the decision to empanel an anonymous jury, the trial court's choice of courtroom security procedures requires a subtle reading of the immediate atmosphere and a prediction of potential risks—judgments nearly impossible for appellate courts to second-guess after the fact. For that reason, the balancing of the competing concerns for the presumption of innocence and for the integrity of the courtroom and its proceedings is best left to the sound discretion of the trial judge.

The use of the stun belt was considered by this Court in *Wagner* and the district court in the District of Columbia in *United States v. Edelin*, 175 F. Supp. 2d 1 (D.C. 2001). Both courts held that the REACT belt did not pose an undue threat to the health of the defendants, that the belts are not subject to malfunction, and that there have been a very small number of accidental activations of the belt. *Wagner* at 3; *Edelin*, 175 F. Supp. at 3. "In fact, the United States Marshals Service has no record of any activation of a stun belt, accidental or otherwise, while worn by a prisoner or detainee." *Edelin*, 175 F. Supp at 3; *see also Wagner* at 4 ("[S]tun belts have been used without any malfunction or activation in this courthouse.").

In determining that there was a need for increased courtroom security in the *Wagner* and *Edelin* case, the courts relied on a number of factors. *See United States v. Edelin*, 175 F. Supp.2d 1, 5-7 (2001).[2] As demonstrated below, these factors make a compelling case for increased courtroom security during the upcoming trial.

---

*Id*. (*citing United States v. Scarfo*, 850 F.2d 1015, 1024 (3d Cir. 1988), and *United States v. Nicholson*, 846 F.2d 277, 279 (5th Cir.1988)).

[2] As the court held in *Edelin*, "lack of inappropriate conduct by the defendants within the courtroom should not be the deciding factor as to whether a stun belt should be used as a security measure." *Edelin*, 175 F. Supp. 2d at 3. Similarly, many cases have upheld the use of handcuffs or shackles on criminal defendants who had only threatened harm to others or whom the court predicted had a potential risk of harming trial participants. *See, e.g., Jones v. Meyer*, 899 F.2d 883, 884 (9th Cir.1990) (defendant threatened physical injury to a co-defendant, the bailiff and his own counsel); *United States v. Samuel*, 433 F.2d 663, 664 (4th Cir.1970) (court had reason to believe that defendant and co-defendant posed threat to a government informer who was to testify at trial; there was also reason to suspect that if such an attempt were made, assistance might be forthcoming from persons who were purportedly solely spectators in the courtroom); *United States v. Baker*, 10 F.3d 1374, 1401-02 (9th Cir.1993) (defendants threatened government witnesses during pretrial proceeding and while in custody several of the defendants conspired to kill a government witness and discussed the murder of the FBI agent in charge of the case); *United States v. Thompson*, 432 F.2d 997, 998 (4th Cir.1970) (the judge had information that if the defendants were not restrained that they might, aided by spectators, attack another inmate, who, in the role of informer, appeared as a witness against them). Accordingly, this Court need not wait until it actually witnesses the defendant harming someone before it takes action to ensure the security of its courtroom during trial.

As set out in the Indictment, the defendant in this case was charged by the Grand Jury with committing a bank robbery with firearms. Defendant Pugh faces a 34 year sentence an Armed Career Criminal. In the past, Defendant Pugh has been convicted of manslaughter, aggravated burglary, and felonious assault. Given the seriousness of the crimes alleged and severity of the potential sentence this defendant faces, the threat of any new charges is unlikely to deter the defendant from engaging in violent conduct during the trial and there is a strong incentive for him to escape. *Edelin*, 175 F. Supp. 2d at 6; Riley Dec. at ¶¶ 5-8. Thus, this factor weighs strongly in favor of increased courtroom security in this case.

As in the *Edelin* case, the defendant has previously been convicted of a gun charge, and other violent crimes. *Edelin*, 175 F. Supp. 2d at 6. Thus, these factors also weigh strongly in favor of increased courtroom security in this case.

Further, as in the *Edelin* case, Supervisory Deputy U.S. Marshal Chris Riley believes that defendant Walter M. Pugh presents a substantial risk of escape and a substantial threat of violence to Deputy Marshals, Court personnel, witnesses, jurors, and the public. Riley Dec. at ¶¶ 5-8; *Edelin*,175 F. Supp. 2d at 6-7 (court relying, in part, on the "knowledge and experience," and recommendation of the United States Marshal in making its security decision); *see also Whitehorn*, 710 F. Supp. at  832, 840 (same); *cf. United States v. Brooks*, 125 F.3d 484, 502 (7th Cir. 1997) (decision regarding courtroom security is the District Court's responsibility; it "may not delegate [its] discretion to another party"). Plainly, then, there is a compelling interest in increasing security during the upcoming trial in this matter.

Next this Court should consider whether the security measure proposed—in this case, a stun belt—is an appropriate means to achieve the compelling interest in increased security in this case. *Whitehorn*, 710 F. Supp. at 835-38; *Edelin*,175 F. Supp. 2d at 7-8. The belt will act as a deterrent

-6-

to misconduct by the defendant. It will not be visible to the jury or impede the defendant's movement during trial. The belt will reduce the number of Deputy U.S. Marshals in the courtroom. The belt will not interfere in any way with defendant's availability to confer with his attorney during trial.

The belt would only be activated if the defendant tampers with the belt, fails to comply with a Deputy's verbal order to halt movement, attempts to escape, takes any action which indicates he is attempting to inflict bodily harm to another person, or intentionally attempts to avoid constant visual contact with a Deputy. The belt is also equipped with an audible warning device to warn the defendant to stop what he is doing before the belt is activated.

Finally, should the Court have any questions, Deputy Riley will be available on the first day of trial.

## **Conclusion**

For the foregoing reasons, defendant Pugh's Motion to Prevent Use of Stun Belt should be denied.

Respectfully submitted,

Gregory G. Lockhart
United States Attorney


s/Amul R. Thapar
AMUL R. THAPAR (DC459489)
ANTHONY SPRINGER (0067716)
Assistant U.S. Attorneys
400 Atrium Two
221 East Fourth Street
Cincinnati, Ohio  45202-4166
(513) 684-3711
FAX (513) 684-6385

**Certificate of Service**

    This is to certify that the United States' Response to Defendant's Motion To Prevent Use of Stun Belt was served upon William R. Gallagher, Attorney for Defendant, by electronic filing on November 10, 2005.

                                        s/Amul R. Thapar
                                        AMUL R. THAPAR (DC459489)
                                        ANTHONY SPRINGER (0067716)
                                        Assistant U.S. Attorneys